**EXHIBIT A**

SPONSOR:   Sen. Marshall & Rep. Lofink

## DELAWARE STATE SENATE

## 142nd GENERAL ASSEMBLY

## SENATE BILL NO. 154

AN ACT TO AMEND TITLE 19 OF THE DELAWARE CODE RELATING TO DISCRIMINATION IN EMPLOYMENT.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE (Two-thirds of all members elected to each house thereof concurring therein):

Amend Subchapter II of Chapter 7, Title 19 of the Delaware Code, "Discrimination in Employment" by striking said Subchapter in its entirety and substituting in lieu thereof the following:

"Subchapter II Discrimination in Employment.

§ 710. Definitions.

For the purposes of this subchapter:

(1) 'Age' as used in this subchapter means the age of forty (40) or more years of age.

(2) 'Employee' means an individual employed by an employer, but does not include:

a. Any individual employed in agriculture or in the domestic service of any person,

b. Any individual who, as a part of that individual's employment, resides in the personal residence of the employer,

c. Any individual employed by said individual's parents, spouse or child, or

d. Any individual elected to public office in the State or political subdivision by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the merit service rules or civil service rules of the State government or political subdivision.

(3) 'Employer' means any person employing four (4) or more employees within the State at the time of the alleged violation, including the State or any political subdivision or board, department, commission or school district thereof.

(4) 'Employment agency' means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

(5) 'Genetic information' for the purpose of this chapter means the results of a genetic test as defined in § 2317(a)(3) of Title 18.

(6) 'Job related and consistent with business necessity' means the condition in question renders the individual unable to perform the essential functions of the position that such individual holds or desires. This includes situations in which the individual poses a direct threat to the health

or safety of himself/herself or others in the workplace

(7) 'Labor organization' includes any organization of any kind, any agency or employee representation committee, group, association or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours or other terms or conditions of employment, any conference, general committee, joint or system board or joint council so engaged which is subordinate to a national or international labor organization.

(8) 'Person' includes 1 or more individuals, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy or receivers.

(9) 'Religion' as used in this Subchapter includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that the employer is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

(10) 'Secretary' means the Secretary of the Department of Labor or the Secretary's designee.

(11) 'Charging Party' means any individual or the Department who initiates proceedings by the filing of a verified Charge of Discrimination, and who preserves a cause of action in Superior Court by exhausting the administrative remedies pursuant to the provisions of §714

(12) 'Respondent' means any person named in the Charge of Discrimination, including but not limited to employers, employment agencies, labor organizations, joint labor-management committees, controlling apprenticeship or other training programs including on-the-job training programs.

(13) 'Mediation' for the purposes of this chapter refers to an expedited process for settling employment disputes with the assistance of an impartial third party prior to a full investigation.

(14) 'Conciliation' for the purposes of this chapter refers to a process which requires the appearance of the parties after a full investigation resulting in a final determination of reasonable cause.

(15) 'No Cause Determination' means that the Department has completed its investigation and found that there is no reasonable cause to believe that an unlawful employment practice has occurred or is occurring. A no cause determination is a final determination ending the administrative process and provides the Charging Party with a corresponding Delaware Right to Sue Notice.

(16) 'Reasonable Cause Determination' means that the Department has completed its investigation and found reasonable cause to believe that an unlawful employment practice has occurred or is occurring. A reasonable cause determination requires the parties' good faith efforts in conciliation.

(17) 'Delaware Right to Sue Notice' for the purposes of this chapter refers to a final acknowledgement of the Charging Party's exhaustion of the administrative remedies provided herein and written notification to the Charging Party of a corresponding right to commence a lawsuit in Superior Court

§ 711 Unlawful employment practices; employer practices.

(a) It shall be an unlawful employment practice for an employer to:

(1) Fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin; or

(2) Limit, segregate or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin.

(b) It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment or otherwise to discriminate against any individual because of race, marital status, genetic information, color, age, religion, sex or national origin or to classify or refer for employment any individual on the basis of race, marital status, genetic information, color, religion, age, sex or national origin.

(c) It shall be an unlawful employment practice for a labor organization to:

(1) Exclude or expel from its membership or otherwise to discriminate against any individual because of race, marital status, genetic

information, color, age, religion, sex or national origin;

(2) Limit, segregate or classify its membership or to classify or fail or refuse to refer for employment any individual in any way which would deprive or tend to deprive any individual of employment opportunities or would limit such employment opportunities or otherwise adversely affect the individual's status as an employee or as an applicant for employment because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin; or

(3) Cause or attempt to cause an employer to discriminate against an individual in violation of this section.

(d) It shall be an unlawful employment practice for any employer, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual because of race, marital status, genetic information, color, age, religion, sex or national origin in admission to or employment in any program established to provide apprenticeship or other training.

(e) It shall be an unlawful employment practice for an employer, employment agency, labor union or joint labor-management committee controlling apprenticeship or other training or retraining, including on the job training programs to intentionally collect, directly or indirectly, any genetic information concerning any employee or applicant for employment, or any member of their family, unless:

(1) It can be demonstrated that the information is job related and consistent with business necessity; or

(2) The information or access to the information is sought in connection with the retirement policy or system of any employer or the underwriting or administration of a bona fide employee welfare or benefit plan.

(f) It shall be an unlawful employment practice for any employer, employment agency, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discharge, refuse to hire or otherwise discriminate against any individual or applicant for employment or membership on the basis of such person's race, marital status, color, age, religion, sex or national origin, because such person has opposed any practice prohibited by this subchapter or because such person has testified, assisted or participated in any manner in an investigation, proceeding, or hearing to enforce the provisions of this subchapter.

(g) Notwithstanding any other provision of this subchapter:

(1) It shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual or for an employer, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program on the basis of religion, genetic information, age, sex or national origin in those certain instances where religion, genetic information, age, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise; and

(2) It shall not be an unlawful employment practice for a school, college, university or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled or managed by a particular religion or by a particular religious corporation, association or society or if the curriculum of such school, college, university or other educational institution or institution of learning is directed toward the propagation of a particular religion.

(h) Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation or different terms, conditions or privileges of employment pursuant to a bona fide seniority or merit system or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, marital status, genetic information, color, age, religion, sex or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, marital status, genetic information, color, religion, age, sex or national origin.

(i) Nothing contained in this subchapter as it applies to discrimination because of age or sex shall be interpreted to affect or interfere with the retirement policy or system of any employer or the underwriting or administration of a bona fide employee welfare or benefit plan, provided that such policy, system or plan is not merely a subterfuge to evade the purpose of this subchapter.

(j)(1) Nothing in this subchapter shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age, and who, for the 2-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit sharing, savings or deferred compensation plan, or any combination of such plans, of the employer of such an employee, which equals, in the aggregate, at least $44,000.

(2) In applying the retirement benefit test of paragraph (1) of this subsection, if any such retirement benefit is in a form other than a straight life annuity (with no ancillary benefits), or if employees contribute to any such plan or make rollover contributions, such benefit shall be adjusted in accordance with regulations prescribed by the Secretary, United States Department of Labor, pursuant to 29 U.S.C. § 631(c)(2), so that the benefit is the equivalent of a straight life annuity (with no ancillary benefits) under a plan to which employees do not contribute and under which no rollover contributions are made.

§ 712. Enforcement provisions; powers of the Department; administrative process

(a) The Department of Labor is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in §§ 711, 723 and 724 of this title. In connection with the performance of its duties, the Department may:

(1) investigate employment practices by permitting the Department to enter any place of employment at reasonable times; inspect and copy records or documents in the possession of the employer, the employment agency or labor organization; administer oaths, certify to official acts, take and cause to be taken depositions of witnesses; issue subpoenas compelling the attendance and testimony of witnesses and the production of papers, books, accounts, payrolls, documents, and records;

(2) make, revise or rescind such rules or regulations necessary or appropriate to administer or enforce this chapter in accordance with the provisions of 29 Del. C. § 10161 (b) of the Delaware Code;

(3) commence civil actions in Superior Court for violations of this chapter, any published regulations or for civil penalties provided herein.

(b) The Department shall have jurisdiction over all cases arising under this chapter, affording review and oversight of employment practices in Delaware. The Department shall endeavor to eliminate unlawful discrimination in employment through its administrative process set forth below. This subchapter shall afford the sole remedy for claims alleging a violation of this chapter to the exclusion of all other remedies. Upon termination of the administrative process by the Department, the Charging Party may institute a civil action in Superior Court of the State of Delaware pursuant to §§ 714, 715.

(c) The administrative process requires the following:

(1) Statute of limitation and filing procedure. Any person claiming to be aggrieved by a violation of this chapter shall first file a Charge of Discrimination within 120 days of the alleged unlawful employment practice or its discovery, setting forth a concise statement of facts, in writing, verified and signed by the Charging Party. The Department shall serve a copy of the verified Charge of Discrimination upon the named Respondent by certified mail. The Respondent may file an answer within twenty (20) days of its receipt, certifying that a copy of the answer was mailed to the Charging Party at the address provided.

(2) Preliminary findings and recommendations. The Department shall review the submissions within sixty (60) days from the date of service upon the Respondent and issue preliminary findings with recommendations. The preliminary findings may recommend: (i) dismissing the Charge unless additional information is received which warrants further investigation; (ii) referring the case for mediation requiring the parties' appearance; or (iii) referring the case for investigation.

(3) Final determinations upon completion of investigation. After investigation, the Department shall issue a Determination of either "Reasonable Cause" or "No Reasonable Cause" to believe that a violation has occurred or is occurring. All cases resulting in a "Reasonable Cause" Determination will require the parties to appear for compulsory conciliation. All cases resulting in a "No Cause" Determination will receive a corresponding Delaware Right to Sue Letter.

(4) Confidentiality of the Department's process. The Department shall not make public the charge of discrimination or information obtained during the investigation of a charge. This provision does not apply to disclosures made to the parties, their counsel, or witnesses where disclosure is deemed necessary or appropriate. Nothing said or done during and as a part of the mediation or conciliation efforts may be made public by the Department, its officers or employees or used by any party as evidence in a subsequent proceeding without the written consent of the persons concerned.

(5) End of administrative process. In all cases where the Department has dismissed the Charge, issued a No Cause Determination or upon the parties failed conciliation efforts, the Department shall issue a Delaware Right to Sue Notice, acknowledging the Department's termination of the administrative process. Once the Department has issued its preliminary findings pursuant to subsection (2), the Department, in its discretion, may grant a Delaware Right to Sue Notice to a Charging Party.

§ 713. Civil action by the Attorney General; complaint.

(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter or subchapter III of this chapter and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the

Court of Chancery by filing with it a complaint:

(1) Signed by the Attorney General (or in the Attorney General's absence the Chief Deputy Attorney General);

(2) Setting forth facts pertaining to such pattern or practice; and

(3) Requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as the Attorney General deems necessary to insure the full enjoyment of the rights herein described

(b) The Court of Chancery shall have jurisdiction over proceedings brought pursuant to this section

§ 714 Civil action by the Charging Party; Delaware Right to Sue Notice; election of remedies

(a) A Charging Party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.

(b) The Delaware Right to Sue Notice shall include authorization for the Charging Party to bring a civil action under this Chapter in Superior Court by instituting suit within ninety (90) days of its receipt or within ninety (90) days of receipt of a Federal Right to Sue Notice, whichever is later.

(c) The Charging Party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A Charging Party is barred by this election of remedies from filing cases in both Superior Court and the federal forum. If the Charging Party files in Superior Court and in a federal forum, the Respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

§ 715 Judicial remedies; civil penalties.

Superior Court shall have jurisdiction over all proceedings brought by the Charging Party pursuant to § 714. Superior Court may excuse a Charging Party who has complied with the compulsory conciliation provisions of this chapter from the compulsory arbitration provisions of Superior Court rule.

(a) Superior Court shall have the authority to provide the following relief, including but not limited to: (1) order the Respondent to cease and desist or modify its existing employment policies; (2) order the Respondent to hire, reinstate or promote the Charging Party; (3) order the payment of compensatory damages, including but not limited to general and special damages, punitive damages when appropriate, not to exceed the damage awards allowable under Title VII of the Civil Rights Act of 1964, as amended, provided that for the purposes of this subchapter, employers with 4-14 employees shall be treated under Title VII's damage award as an employer having under 50 employees; and (4) order the costs of litigation and reasonable attorney's fees to the prevailing party.

(b) In any action brought by the Department for violation of the retaliation provision of section 711(f), the Court shall fine the employer not less than $1,000 nor more than $5,000 for each violation, in addition to any liability for damages.

§ 716 Posting of notices; penalties

(a) Every employer, employment agency and labor organization, as the case may be, shall post and keep posted in conspicuous places upon its premises where notices to employees, and applicants for employment are customarily posted, a notice to be prepared or approved by the Department setting forth excerpts from or summaries of the pertinent provisions of this subchapter and subchapter III of this chapter and information pertinent to the filing of a complaint.

(b) A willful violation of this section shall be punishable by a fine of not more than $100 for each separate offense

§ 717 Veterans' special rights or preference.

Nothing contained in this subchapter or subchapter III of this chapter shall be construed to repeal or modify any state or local law creating special rights or preferences for veterans.

§ 718. Short title, effective date, savings clause.

(a) This subchapter may be cited as the "Discrimination in Employment Act."

(b) This Act shall become effective sixty (60) days after its enactment into law

(c) This Act does not affect any cause of action or the remedy provided therefor if such cause of action accrued and suit was instituted thereon prior to the effective date of this Act.

## SYNOPSIS

This bill eliminates the Equal Employment Review Board, and creates a corresponding Delaware Right to Sue in Superior Court after exhausting Administrative remedies This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in Schuster v. Derocili, 775 A. 2d 1029 (2001).

Some definitions have been added to section 710, specifically new terms such as "No Cause Determination"; "Reasonable Cause Determination"; "Charging Party"; "Respondent"; "Delaware Right to Sue Notice"; "Mediation"; and "Conciliation". Sections 712, 714 and 715 have been repealed in their entirety and rewritten to accomplish the goals of initially pursuing informal methods of resolution through mediation and conciliation and then permitting civil actions in Superior Court.

Author: Senator Marshall