IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TARIQ BHATTI, | ) |
| | ) |
|        Plaintiff, | ) |
|   v. | ) |
| | )   C.A. No. 05-690 KAJ |
| J.P. MORGAN CHASE, a Delaware | ) |
| corporation, | ) |
| | ) |
|        Defendant. | ) |

**DEFENDANT'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Barry M. Willoughby (No. 1016)
Teresa A. Cheek, Esquire (No. 2657)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6666; (302) 571-6676
Facsimile: (302) 576-3345; (302) 576-3286
bwilloughby@ycst.com; tcheek@ycst.com
Attorneys for Defendant

DATED: February 15, 2006

TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 1

I. COUNT II MUST BE DISMISSED. ................................................................. 1

    A. The General Assembly Limited DDEA Claims to Actions in State Court. ............................................................................................................. 1

    B. The DDEA Does Not Apply to Claims That Predate the Effective Date of the Act. ................................................................................................. 3

        1. The DDEA Greatly Expanded the Penalties to Which Employer's May be Subject for Alleged Acts of Discrimination and Created a New Private Right of Action Under the State Law. .................................................................. 3

        2. The DDEA Should Not be Retroactively Applied. .......................... 6

II. THE STATUTE OF LIMITATIONS BARS CLAIMS FOR REFUSALS TO HIRE THAT AROSE MORE THAN THREE HUNDRED (300) DAYS BEFORE BHATTI FILED HIS CHARGE. ............................................... 8

CONCLUSION ............................................................................................................... 9

TABLE OF AUTHORITIES

**Cases**

*Bundy v. Corrado Brothers*,
  No. 97A-06-007, 1998 Del. Super LEXIS 184 (March 25, 1998) .................................. 6

*Chalawsky v. Sun Ref. & Marketing Co.*,
  733 F. Supp. 791 (D. Del. 1990) ........................................................................................ 4

*Cherkaoui v. ING,*
  Civil Action No. 04C-09-241 (FSS) ................................................................................... 8

*Chrysler Corp. v. State,*
  Del. Supr., 457 A.2d 345 (1982) ........................................................................................ 6

*Comer v. Getty Oil Co.,*
  Del. Super., 438 A.2d 1239 (1981) .................................................................................... 6

*Gagliardo v. Connaught Laboratories, Inc.*,
  311 F.3d 565 (3d Cir. 2002) ............................................................................................... 3

*Marcucilli v. Boardwalk Builders, Inc.,*
  No. 99C-02-007, 1999 Del. Super. LEXIS 597 (Dec. 22, 1999) ....................................... 6

*Mondzelewski v. Pathmark Stores, Inc.,*
  No. 96-359 MMS, 2000 U.S. Dist. LEXIS 6956 (D. Del. 2000) ................................... 6, 7

*Potence v. Hazleton Area Sch. Dist.*,
  357 F.3d 366 (3d Cir. 2004) ............................................................................................... 2

*Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.*,
  399 F.3d 52 (1st Cir. 2005) ................................................................................................. 3

*Rogers v. Exxon Research & Engineering Co.*,
  550 F.2d 834 (3d Cir. 1977) ............................................................................................... 2

*Shuster v. Derocili*,
  775 A. 2d 1029 (D. Del. 2001) ........................................................................................... 7

*Starceski v. Westinghouse Elec. Corp.*,
  54 F.3d 1089 (3d Cir. 1995) ............................................................................................... 2

*Trans World Airlines, Inc. v. Thurston*,
  469 U.S. 111, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985) ..................................................... 2

*Wilson v. Triangle Oil Co.*,
  Del. Super., 566 A.2d 1016 (1989) ................................................................................. 6

**Other Authorities**

19 *Del. C.* §712 (d) .............................................................................................................. 4

19 *Del. C.* § 710 .................................................................................................................. 4

19 *Del. C.* § 714(a) .......................................................................................................... 1, 7

19 *Del. C.* § 714(c) ............................................................................................................. 1

19 *Del. C.* § 715(a) .......................................................................................................... 1, 5

19 *Del. C.* §§ 710-718 ...................................................................................................... 1, 7

42 U.S.C. § 12201(b) ........................................................................................................... 3

Age Discrimination in Employment
  Act of 1967, 29 U.S.C. §§ 621-634 ............................................................................... 2

Title VII of the Civil Rights Act of 1964 ............................................................................ 5

DB02:5175644.1                                                                                                              058653.1004

# ARGUMENT

## I. COUNT II MUST BE DISMISSED.

### A. The General Assembly Limited DDEA Claims to Actions in State Court.

Bhatti may not pursue his claims under the Delaware Discrimination in Employment Act, 19 *Del. C.* §§ 710-718 (Exhibit E) (the "DDEA"), in this Court. Bhatti has ignored the language in the General Assembly's synopsis of Senate Bill 154, stating that the bill was intended to permit "civil actions in Superior Court." Delaware Bill Summary, 2004 Reg. Sess. S.B. 154. The synopsis is consistent with the several provisions in the DDEA mandating the pursuit of DDEA exclusively in Superior Court. The DDEA provides that: "(a) A charging party may file a civil action **in Superior Court**, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same." 19 *Del. C.* § 714(a) (emphasis added). The statute could have, but does not, say that the claim may be filed in Superior Court or in federal district court. The DDEA also states: "**Superior Court shall have jurisdiction over all proceedings brought by the charging party pursuant to § 714 of this title**." 19 *Del. C.* § 715(a) (emphasis added). The statute gives only the Superior Court, rather than any court of competent jurisdiction, the authority to provide relief. 19 *Del. C.* § 715(b). Finally, 19 *Del. C.* § 714(c) states:

> (c) **The charging party shall elect a Delaware or federal forum** to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A charging party is barred by **this election of remedies** from filing cases in both Superior Court and the federal forum. If the charging party files in Superior Court and in a federal forum, the respondent may file a motion to dismiss the Superior Court action under this election of remedies provision.

(emphasis added). Read as a whole, the statute requires plaintiffs to choose between pursuit of a claim under the DDEA in state court, or pursuit of a claim under federal law in federal court. If

1

the General Assembly had intended to allow DDEA claims to be pursued in federal court simultaneously with similar claims under federal law, it would have stated so, but it did not.

As Bhatti acknowledges, the age discrimination remedies provided by the two statutes are different. Under the DDEA, the Superior Court is authorized to provide the same types of damages awards as are provided under Title VII, including compensatory and punitive damages, subject to caps based on the number of employees. 19 *Del. C.* § 715(b). On the other hand, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (the "ADEA"), provides for recovery of lost wages; it also permits recovery of liquidated damages in the amount of the economic damages recovered by the plaintiff for willful violations of the law, but it does not allow recovery of compensatory or punitive damages. 29 U.S.C. § 626(b); *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3d Cir. 1980); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir. 1977). Liquidated damages under the ADEA are punitive in nature. *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 373 (3d Cir. 2004) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 (3d Cir. 1995)). Permitting recovery of both punitive damages and liquidated damages would result in a windfall to the plaintiff and would contravene the DDEA's intent to cap compensatory and punitive damages. If plaintiff's position were accepted, and he were able to prove that he had lost wages in the amount of $300,000 as a result of willful age discrimination by the defendant in violation of the ADEA, plaintiff would be entitled to recover liquidated damages in the amount of $300,000. The jury would also, according to plaintiff, be authorized to award him punitive damages in an amount up to $300,000 under the DDEA for age discrimination. Plaintiff could conceivably, then, recover $600,000 in liquidated and punitive damages, in contravention of both the ADEA and the DDEA's intent to cap damages that are

2

meant to punish the defendant rather than to compensate the plaintiff. Rejection of plaintiff's argument would fulfill the intent of both the state and federal legislatures to prevent windfalls to discrimination plaintiffs.

*Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565 (3d Cir. 2002), cited by Bhatti, is not on point. There, the federal statute in question was the Americans with Disabilities Act, not the ADEA. The scenario described above could not occur because the damages schemes under the state and federal law in Gagliardo were compatible, not conflicting, as is the case here. Moreover, the Americans with Disabilities Act includes a provision that eschews any intent to preclude more generous awards based on state or local law. 42 U.S.C. § 12201(b) ("Nothing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State . . . that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter."). The ADEA includes no such provision. *Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.*, 399 F.3d 52 (1st Cir. 2005), also cited by plaintiff, is unpersuasive for the same reason.

Because Bhatti is attempting to pursue both state and federal law age discrimination claims and because the DDEA requires him to choose one or the other, the Court must dismiss Count II of the Amended Complaint.

    **B.**    **The DDEA Does Not Apply to Claims That Predate the Effective Date of the Act.**

        **1.**    **The DDEA Greatly Expanded the Penalties to Which Employer's May be Subject for Alleged Acts of Discrimination and Created a New Private Right of Action Under the State Law.**

Count II of Plaintiff's Second Amended Complaint must be dismissed for an additional reason. The alleged acts of discrimination and Plaintiff's filing of a Charge of Discrimination

3

predate the effective date of the DDEA. The DDEA should not be retroactively applied under settled principles of Delaware law.

On May 19, 2004 Bhatti filed a charge of discrimination with the DDOL alleging that Morgan had failed to hire him for various positions over a two year period. Second Amended Complaint, ¶ 8. In the charge, Bhatti alleged that the last act of discrimination occurred on April 28, 2004 *Id.,* Exh. 1. On September 20, 2005, although he had not yet received a Right to Sue letter from the federal EEOC, Plaintiff filed this action under the ADEA Count II of his orginal and second complaint also raised a claim of age discrimination under the DDEA. 19 *Del. C.* § 710, *et seq*.

The amended DDEA, however, did not take effect until September 10, 2004. The DDEA substantially changed the law that was applicable at the time Plaintiff alleges that he was subjected to age discrimination and that was in effect at the time Plaintiff filed his charge with the DDOL. The prior law did not provide for a private right of action under state law by persons who claim to be aggrieved. Jurisdiction over state law claims was vested exclusively in a state agency known as the Equal Employment Opportunity Review Board. See *Chalawsky v. Sun Ref. & Marketing Co.*, 733 F. Supp. 791 (D. Del. 1990) (citing former 19 *Del. C.* §712 (d)) (complete copy of former statute attached as Exhibit A). Further, the Department of Labor, not the aggrieved party had the right of action. As explained in the synopsis to the DDEA Act, "This bill eliminates the Equal Employment Review Board, and creates a corresponding Delaware Right to Sue in Superior Court after exhausting administrative remedies."

Equally important, the prior law did not provide for the employee the remedies set forth in the DDEA. The DDEA greatly expanded the damages available to a successful plaintiff to include punitive as well as compensatory damages and attorney's fees, paralleling the damages

4

available under Title VII of the Civil Rights Act of 1964, as amended. 19 *Del. C.* § 715(a). The DDEA provides in 19 *Del. C.* § 715 that:

> Superior Court shall have the authority to … Order the payment of compensatory damages, including but not limited to general and special damages, punitive damages when appropriate, not to exceed the damage awards allowable under Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.], as amended, provided that for the purposes of this subchapter, employers with 4-14 employees shall be treated under Title VII's damage award as an employer with under 50 employees.[1]

The prior law provided that the Equal Employment Opportunity Review Board was limited to cease and desist awards and back pay, offset by the aggrieved person's interim earnings:

> (g) If the review board finds that the respondent has engaged in an unlawful employment practice, the review board shall issue . . . cause to be served on the respondent and the person or persons aggrieved by such unlawful employment practice an order requiring the respondent to cease and desist from such unlawful employment practice and to take such affirmative action, including reinstatement or hiring of employees, with or without back pay . . . as will effectuate the policies of this subchapter, provided, that interim earnings or amounts earnable with reasonable diligence by the aggrieved person or persons shall operate to reduce the back pay otherwise allowable. Such order may further require such respondent to make reports from time to time showing the extent to which the respondent has complied with the order. . . .

As pointed out above and in Defendant's Opening Brief, remedies under the ADEA are different than those under Title VII and the DDEA. Compensatory damages, for example, for emotional distress and punitive damages are not recoverable under the ADEA.

---

[1] Title VII includes caps on compensatory and punitive damages awards that increase with the number of the defendant's employees. 42 U.S.C. § 1981a(b)(3).

## 2.   The DDEA Should Not be Retroactively Applied.

The enactment of the DDEA made sweeping changes to the prior law. It not only created a private cause of action, but also greatly expanded the penalties to which an employer could be subjected if a violation were found. The DDEA should not be given retroactive application, absent clear legislative intent to do so.

Delaware law does not favor retroactive application of a statute:

> It is well settled law in Delaware that 'absent a clear legislative intent, Delaware courts will not infer an intention to make an act retroactive.' *Wilson v. Triangle Oil Co.*, Del. Super., 566 A.2d 1016, 1018 (1989). *See also Chrysler Corp. v. State,* Del. Supr., 457 A.2d 345, 351 (1982)('It is a time-honored principle that this Court 'will not infer an intention to make an act retrospective,' and that 'to give an act a retrospective operation would be contrary to well settled principles of law applicable to the construction of statutes unless it be plainly and unmistakably so provided by the statute.') (internal quotation marks omitted)); and *Comer v. Getty Oil Co.,* Del. Super., 438 A.2d 1239, 1242 (1981) ('it is generally recognized that a statute will not be given retroactive application which affects substantive rights, at least in the absence of language showing a clear legislative intent to give retroactive effect.')

*Marcucilli v. Boardwalk Builders, Inc.,* No. 99C-02-007, 1999 Del. Super. LEXIS 597, *14-*15 (Dec. 22, 1999). (Exhibit B). *See also*, *Bundy v. Corrado Brothers*, No. 97A-06-007, 1998 Del. Super LEXIS 184 *3 (March 25, 1998) ("It is a general rule of statutory interpretation that legislation is to be accorded prospective effect unless the General Assembly makes its intention clear to give it retroactive effect. Here, there is no such clear intention"). (Exhibit C.

In *Mondzelewski v. Pathmark Stores, Inc.*, No. 96-359 MMS, 2000 U.S. Dist. LEXIS 6956, *57-*58 (D. Del. 2000) (Exhibit D),for example, a case involving the retaliation amendment to the Delaware Worker's Compensation Act, Judge Schwartz pointed out that, as in the instant case, the allegedly retaliatory conduct took place over two years before the passage of the act and all of the allegedly retaliatory acts had occurred before the effective date of the

6

amendment. The court found that, as a result, the plaintiff "cannot claim relief under this section." *Id.* The court observed that "Delaware courts have recognized the general principle that statutes will not be retroactively applied unless there is a clear legislative intent to do so." *Id.* (citations omitted).

In this case, the DDEA contains no clear declaration of retroactivity. Section 714(a) of the amended Act allows an aggrieved party to sue in Superior Court: "[A] Charging Party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right To Sue Notice acknowledging the same." 19 *Del. C.* § 714(a) (2005). Nothing in the language of Section 714(a) states or even implies that the General Assembly intended for the statute to be applied retroactively to fact situations that had already arisen at the time the amendment was enacted.

Plaintiff will no doubt argue that of the DDEA § 718(c) provides support for the view that retroactive application should be inferred. That section states: "This subchapter does not affect any cause of action or the remedy provided therefor if such cause of action accrued and suit was instituted thereon prior to September 10, 2004." Section 718(c), however, does not provide that claims for conduct that predated the effective date of the statute, but that were instituted after September 10, 2004, are subject to DDEA. In other words, § 718(c) does not provide for retroactive application of the DDEA.

It is important to remember that at the time the DDEA was enacted, the Delaware Supreme Court decision in *Shuster v. Derocili*, 775 A. 2d 1029 (D. Del. 2001) permitted common law claims under the public policy prong of the implied covenant of good faith for discrimination claims. As noted in Defendant's Opening Brief, one of the purposes of the DDEA was to restore the exclusive remedy doctrine that had existed before *Shuster*. The purpose of §

718(c), the DDEA's "savings clause," was to insure that pending common law implied covenant claims would not be dismissed because of the new statute's elimination of claims under the "public policy" exception.

The DDEA is, therefore, silent on its face with respect to retroactive application. As noted above, under settled Delaware authority, the Court cannot infer retroactive application but must have "clear" expression of legislative intent to do so.

Research has not revealed a case explicitly resolving the issue of the retroactive application of the DDEA. One Delaware Superior Court case supports Defendant's view of the statute. Although the court did not issue an opinion, in *Cherkaoui v. ING,* Civil Action No. 04C-09-241 (FSS) (Exhibit E), the court granted the Defendant's Motion to Dismiss on the ground that the DDEA should not be retroactively applied. Defendant's Motion to Dismiss setting forth arguments similar to those asserted here is attached. The Court granted the Motion through an Order. *Id.*

Since all of the facts relied upon by the Plaintiff in his Second Amended Complaint, as well as the filing of his state law charge of discrimination occurred under the prior law, and the DDEA does not clearly provide for retroactive application, Count II of Plaintiff's should be dismissed..

## II. THE STATUTE OF LIMITATIONS BARS CLAIMS FOR REFUSALS TO HIRE THAT AROSE MORE THAN THREE HUNDRED (300) DAYS BEFORE BHATTI FILED HIS CHARGE.

Bhatti has conceded that all claims that accrued more than three hundred (300) days before he filed his charge of discrimination on May 19, 2004 are barred by the statute of limitations. See Plaintiff Answering Brief at page 14.

8

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss Count II in its entirety and issue an order holding that Plaintiff may not pursue under federal law any claims of discrimination for conduct that occurred more than three hundred (300) days before he filed his Charge of Discrimination on May 19, 2004.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ Barry M. Willoughby_____
Barry M. Willoughby, Esquire (No. 1016)
Teresa A. Cheek, Esquire (No. 2657)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666; (302) 571-6676
Facsimile: (302) 576-3345; (302) 576-3286
bwilloughby@ycst.com; tcheek@ycst.com
Attorneys for Defendant, J.P. Morgan Chase

Dated: February 15, 2006

CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2006, I electronically filed a true and correct copy of the foregoing Defendant's Reply Brief in Support of Its Motion To Dismiss, with the Clerk of the Court using CM/ECF, and further caused a copy of same to be served by hand delivery on the following counsel of record:

> Gary W. Aber, Esquire
> First Federal Plaza, Suite 600
> P.O. Box 1675
> Wilmington, DE 19899

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> /s/ Barry M. Willoughby_____
> Barry M. Willoughby, Esquire (No. 1016)
> Teresa A. Cheek, Esquire (No. 2657)
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, Delaware  19899-0391
> (302) 571-6666; (302) 576-3345
> (302) 571-6676; (302) 576-3286
> bwilloughby@ycst.com, tcheek@ycst.com
> Attorneys for Defendant

Dated:  February 15, 2006