# EXHIBIT B

**Theodore J. Marcucilli and Judy G. Marcucilli, Plaintiffs, v. Boardwalk Builders, Inc., Defendant and Third-Party Plaintiff, v. Complete Restoration Contractors, Inc., Dryvit Systems, Inc., James Hricko, Goslee Roofing Company, Inc., and Weather Shield Manufacturing, Inc., Third-Party Defendants.**

Civil Action No. 99C-02-007

SUPERIOR COURT OF DELAWARE, SUSSEX

2000 Del. Super. LEXIS 137

January 20, 2000, Submitted
April 13, 2000, Decided

**SUBSEQUENT HISTORY:** [*1]

Released for Publication by the Court May 31, 2000.

**DISPOSITION:**

Motions for Reargument Denied.

**COUNSEL:** John A. Sergovic, Jr., Esquire, Sergovic, Ellis & Shirley, P.A., Georgetown, Delaware, Attorney for the Plaintiffs.

Roger D. Landon, Esquire, and Jonathan L. Parshall, Esquire, Murphy Spadaro & Landon, Delaware, Attorney for the Defendant and Third-Party Plaintiff - Boardwalk Builders, Inc.

William E. Moore, Esquire, William E. Moore & Associates, Rehoboth Beach, Delaware, Attorney for the Third-Party Defendant - Complete Restoration Contractors, Inc.

Daniel F. Wolcott, Jr., Esquire, and Matthew E. Fischer, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Attorneys for the Third-Party Defendant - Dryvit Systems, Inc.

Robert G. Gibbs, Esquire, Wilson, Halbrook & Bayard, P.A., Attorney for the Third-Party Defendant - James Hricko.

Richard S. Cobb, Esquire, Duane, Morris & Heckscher LLP, Wilmington, Delaware, Attorney for the Third-Party Defendant - Goslee Roofing Company, Inc.

Allan Wendelburg, Esquire, Hockessin, Delaware, Attorney for the Third-Party Defendant - Weather Shield Manufacturing, Inc.

**JUDGES:** Graves, Judge.

**OPINIONBY:** Graves

**OPINION:**

### MEMORANDUM OPINION [*2]

Graves, Judge

Presently before the Court is a Motion for Reargument filed by Third-Party Defendant, Dryvit Systems, Inc. ("Dryvit"). This motion asks the Court to revisit its decision of December 22, 1999, denying Dryvit's motion to dismiss. Marcucilli v. Boardwalk Builders, Inc., Del. Super., 1999 Del. Super. LEXIS 597, C.A. No. 99C-02-007, Graves, J. (Dec. 22, 1999) (Mem. Op.). For the reasons stated below, the Court denies Dryvit's motion for reargument.

### FACTUAL n1 AND PROCEDURAL HISTORY

Theodore J. Marcucilli and Judy G. Marcucilli, the Plaintiffs, reside in Bethany Beach, Delaware. On December 14, 1991, the Marcucillis contracted with the Defendant, Boardwalk, for the erection of a custom designed and built home. One requirement of that contract was that the exterior of the home was to consist of the Dryvit System as developed by Dryvit Systems, Inc. This component of the home is also known as the Exterior Insulation and Finish Surface ("EIFS").

> n1 This factual history incorporates the Statement of Facts from the Court's previous opinion.

 **[*3]**

The Dryvit System consists of the following components: Dryvit Insulation Board, installed over the plywood sheathing; Dryvit Reinforcing Mesh which is imbedded in the priming coat; Panzer Mesh, heavy-duty glass fiber reinforcing mesh at the first floor level and heavy traffic areas; Dryvit Priming/Adhesive, used to adhere insulation board to substrate and to embed reinforcing mesh on the face of the insulation board; and Dryvit Surface Finish, a synthetic plaster material with integrated color. Moreover, the "System" provided that all work must be done by a factory-approved installer in strict accordance with the Manufacturer's instructions. On July 9, 1992, Boardwalk contracted with CRC to install the Dryvit System on the Marcucillis' home. After installation, the Marcucillis received a warranty from the manufacturer covering the Dryvit System installed on their home.

On January 13, 1993, Boardwalk delivered a structure to the Marcucillis that was "substantially complete." There were, however, outstanding "punch-list" items that were not completed until October 6, 1997. Sometime after delivery, the Marcucillis discovered that the structure was not watertight. The roof was repaired **[*4]** several times in an effort to stop the leakage problem. In February, 1997, another leak was discovered. The installer of the original roof, who also repaired the other leaks, was called in again only to discover that the roof was not the problem this time. This leak was attributed to open caulking joints in the EIFS system around window and door openings.

The Marcucillis obtained an estimate for recaulking from an outside contractor. They were advised that all of the caulking should be removed and replaced by a specialist familiar with the Dryvit System. The Marcucillis tried to contact the original installer but were unsuccessful. Later in

1997 they contacted Dryvit's regional supplier who, in March of 1993, inspected the EIFS system on the home. Michael Donaldson, of EIFS Supply Co., Inc., inspected the home including a core sample taken from the EIFS system on the home. The core sample indicated that the mesh was not the proper color to be a Dryvit System material and that the installation board was not of a type used in the Dryvit System. Only the exterior surface coating was a Dryvit System product. The Marcucillis were now aware that the EIFS system installed on their home was **[*5]** installed incorrectly.

The Plaintiffs claim they are damaged in several ways by the incorrect installation of the EIFS system. First, they are injured in an amount equal to the cost of removing the existing EIFS system and replacing it with a correctly installed Dryvit System. Moreover, the water leaks caused by the improperly installed system have proximately caused other injuries of unknown amount to the interior framing, insulation, drywall, floors, subfloors, carpeting, and trim.

On February 4, 1999, the Marcucillis filed a complaint against their contractor, Boardwalk. The Plaintiffs' theories of recovery are grounded in negligence, breach of contract, and a misrepresentation in violation of the Consumer Fraud Act. The Defendant, Boardwalk, answered on April 16, 1999, in the Answer, the Defendant raised the following affirmative defenses:

> 1. The Statute of limitations and/or statute of repose bars plaintiffs' claims;
>
> 2. Plaintiffs' claims are barred by the doctrines of accord and satisfaction and/or release;
>
> 3. Plaintiffs' claims are barred in whole or in part by their own negligence;
>
> 4. The Complaint fails to state a cause of action upon which relief **[*6]** may be granted; and
>
> 5. Plaintiffs claims are barred in whole or in part by the economic loss doctrine.

In addition to the affirmative defenses listed above, Boardwalk filed the following Third-Party Complaints against five third-party defendants:

1. CRC. A third-party complaint was filed against CRC, the installer of the EIFS system on the Marcucillis' home. The complaint against CRC alleges breach of contract, negligence, fraud, and breach of an implied warranty to install the EIFS system in a workmanlike manner.

2. Dryvit Systems. Inc., A third-party complaint was filed against Dryvit Systems, Inc. as the manufacturer of some of the components in the EIFS system installed on the Marcucillis' home. The complaint against Dryvit alleges breach of warranty (both express and implied), negligence in the design of the system, negligent training of the installation crew, and that Dryvit negligently failed to warn that:

> - its EIFS system was inappropriate for the climate conditions of the site;

- the EIFS system should be inspected for moisture;

- regular inspections of the sealants and flashing at intersections between the EIFS system and windows, **[*7]** roofs, doors, and decks needed to be performed;

- there was a risk of water intrusion at intersections between the EIFS system and windows, roofs, doors, and decks;

- there existed a need for special flashing and sealants around widows and other potential entry points to reduce the risk of water intrusion; and

- a manufacturer's representative should be present during the installation of the EIFS system to ensure proper installation.

3. James Hricko. A third-party complaint, alleging an action in negligence, was filed against James Hricko, the architect who designed the structure.

4. Goslee Roofing Co., Inc., A third-party complaint was filed against Goslee Roofing Co., Inc. ("Goslee"), the roofing subcontractor on the project, asserting a claim based on negligence and a breach of the implied warranty to construct the roof in a workmanlike manner.

5. Weather Shield Manufacturing, Inc. A third-party complaint was filed against Weather Shield Manufacturing, Inc. ("Weather Shield"), the manufacturer of the windows installed in the home, asserting a cause of action founded on: (1) Weather Shield's alleged negligence in the design of the windows and failure **[*8]** to warn that the windows were unsuitable for the structure; and (2) breach of express and implied warranties.

Finally, in addition to the tort and contract claims, Boardwalk also seeks recovery from the third-party defendants based on an implied right to indemnity. The theory being that Dryvit and the others would be liable to Boardwalk because they were primarily liable for the resulting damages.

On July 12, 1999, Third-Party Defendant Dryvit filed a motion to dismiss under Superior Court Rule 12(b)(6). Third-Party Defendant CRC also filed a motion to dismiss. At a hearing before Judge Graves on September 17, 1999, Dryvit presented its Motion to Dismiss. CRC did not present its motion at this time.

On December 22, 1999, this Court denied the motions to dismiss of both Dryvit and CRC. In its motion to dismiss, Dryvit argued that the "economic loss doctrine" barred Boardwalk's claims against it. Traditionally, the economic loss doctrine was a "judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to *other* property) and, the only losses suffered are economic in nature." Danforth v. Acorn Structures. Inc., Del. Supr., 608 A.2d 1194, 1195 (1992) **[*9]** (emphasis original). The General Assembly, however, abolished this doctrine in the residential construction setting by passing the Home Owner's Protection Act. See 6 Del. C. § § 3651-52.

The Act provides:

> No action based in tort to recover damages resulting from negligence in the construction or manner of construction of an improvement to residential real property and/or in the designing, planning, supervision and/or observation of any such construc-

tion or manner of construction shall be barred solely on the ground that the only losses are economic in nature.

6 Del. C. § 3652.

The General Assembly stated its intent in passing this particular statute in the Synopsis portion of the House Bill.

> This Bill protects home owners by abolishing the economic loss doctrine adopted in Danforth v. Acorn Structures. Inc., Del. Supr., 608 A.2d 1194 (1992) as it applies to actions for negligence in the construction and/or improvement to property used as a residence. The economic loss doctrine prohibits recovery for economic losses caused by the negligent acts of others. Under this Bill, a home owner may recover for such losses. This Bill is intended **[*10]** to apply to any action, regardless of when it occurs, unless otherwise prohibited by law.

138th General Assembly, House Bill No. 519 (Apr. 24, 1996).

This Court, in denying the motions to dismiss, found that the Home Owner's Protection Act applied to the present action and barred any defense based on the economic loss doctrine. In doing so, the Court found that the Act applied retroactively and would thus apply to the action no matter when it arose. n2 In the present motion to reargue, Dryvit argues that the Act should not have been applied retroactively and asks that the Court revisit this decision.

> n2 This becomes an issue because the Act has an effective date of June 30, 1996 and significant events giving rise to this litigation occurred both before and after that date. For instance: the date of contract was December 14, 1991; the home was delivered "substantially complete" on January 13, 1993; outstanding "punch-list" items were completed on October 6, 1997; sometime after delivery, a leak developed; in February, 1997, the leak was attributed to the EIFS system; and in March, 1998, they discovered the EIFS system was installed incorrectly. In finding the statute applies retroactively, the Court need not determine which of these events causes the action to accrue.

**[*11]**

ANALYSIS

Under settled Delaware law:

> Reargument will usually be denied unless it is shown that the Court overlooked a precedent or legal principle that would have controlling effect, or that it has misapprehended the law or the facts such as would affect the outcome of the decision. A motion for reargument should not be used to merely rehash the arguments already decided by the court.

Risk Enterprise Management Ltd. v. National Union Fire Ins. Co., Del. Super., 1999 Del. Super. LEXIS 553, *1, C.A. No. 97C-04-024, Witham, J. (Dec. 8, 1999). See also Steadfast Ins. Co. v. Eon Labs Mfg., Inc., Del. Super., 1999 Del. Super. LEXIS 339, *1, C.A. No. 98C-01-058, Del Pesco, J. (Aug. 18, 1999) (Let. Op.).

Dryvit argues that Chrysler Corp. v. State, Del. Supr., 457 A.2d 345 (1983) forces the Court to ignore a clear expression of the General Assembly's intent that the Act apply "to any action, regardless of when it occurs" because the statute itself is not ambiguous. See Chrysler Corp. at 351 ("To give an act a retrospective operation would be contrary to well settled principles of law applicable to the construction of statutes unless it be plainly and unmistakably so provided by the [*12] statute."(emphasis added)) While the statute itself is not facially ambiguous, it suffers from a latent ambiguity when applied because there is no expression at all in the statute regarding retroactive application of the statute and reflecting the clear intent of the legislature in enacting the law. After a thorough review of the law on the retroactive application of statutes, including cases arising before and after Chrysler, This Court is not convinced that the Supreme Court intended a result where the clear intent of the General Assembly is ignored because the statute, as enacted, is silent as to retroactive application.

In Delaware, when applying a statute, "the fundamental rule is to ascertain and give effect to the intent of the legislature." Coastal Barge Corn. v. Coastal Zone Indus. Control Bd., Del. Supr., 492 A.2d 1242, 1246 (1985). See also Hubbard v. Hibbard Brown & Co., Del. Supr., 633 A.2d 345, 354 (1993) ("Delaware courts have recognized the general principle that statutes will not be retroactively applied unless there is a clear legislative intent to do so."); Spielberg v. State, Del. Supr., 558 A.2d 291, 293 (1989) [*13] ("In the construction of a statute, this Court has established as its standard the search for legislative intent."); Murphy v. Board of Pension Trustees, Del. Supr., 442 A.2d 950, 951 (1982) ("Our duty in construing the Statute is to find the legislative intention and to give effect to it."); State v. Paten, Del. Super., 1999 Del. Super. LEXIS 516, *9, I.D. No. 9608016007, Vaughn. J. (Aug. 31, 1999) (ORDER) ("Generally a statute will not be applied retroactively unless it appears that the General Assembly clearly intended that it be so applied."); State v. Aizupitis, Del. Super., 699 A.2d 1098, 1106 (1996) ("A fundamental goal of a court in the application and interpretation of any statute is to ascertain and give effect to the intent of the legislature."); State v. Williamson, Del. Super., 1994 Del. Super. LEXIS 378, *11, Cr. A. No. 93-05-0249, Graves, J. (July 25, 1994) (Mem. Op.) ("In construing a statute, the courts should look for legislative intent. If the unambiguous language of the statute clearly reflects the legislative intent, then the statutory language controls, and this Court does not apply the rules of statutory construction. (Citations omitted)).

In the present case, the Court [*14] is faced with a statute that is clear and unambiguous on its face. While its substantive provisions are explicit, the statute is silent on the issue of retroactive application. In such a case, as noted above, the Court is typically prohibited from applying the rules of construction. To do so in this case would, however, frustrate the clear intent of the Legislature.

This "Gordian Knot" was recognized in several Superior Court decisions. In Washington v. Christiana Service Co., Del. Super., 1990 Del. Super. LEXIS 409, *13, C.A. No. 90A-AP-9, Barron, J. (Oct. 12, 1990) (Mem. Op.) the Court stated:

> In applying these standards, it is obvious that the first step in any question involving statutory construction is to determine whether the statute on its face is ambiguous or plain and clear.

> To apply the statute the fundamental rule is to ascertain and give effect to the intent of the legislature. . . .If the statute as a whole is unambiguous, there is no reasonable doubt as to the meaning of the words used and the Court's role is then limited to an application of the literal meaning of the words. . . .However, it is undisputed that when a statute is ambiguous and its meaning may not be **[*15]** clearly ascertained, the Court must rely on its methods of statutory interpretation and contstruction. Coastal Barge, 492 A.2d at 1246.
>
> Herein lies the paradox of this area of the law: The Court may not apply the rules of statutory interpretation and construction if the Court finds the statute to be clear and unambiguous; ambiguity may exist on its face or may arise if the literal meaning of the words does not carry out the Legislature's intent; often the Legislature's intent may only be ascertained by applying the rules of statutory interpretation and construction; and so the circle turns.
>
> To resolve this paradox, the Court must perform a two-step analysis: (1) The Court must first determine whether the statute is ambiguous by applying the rules in order to ascertain the Legislative intent and (2) if, and only if, the statute is clearly ambiguous, then the Court must apply the rules again to give practical effect to the previously ascertained legislative intent.

See also, Martin v. M. & W. Drywall Co., 1990 Del. Super. LEXIS 445, *4, C.A. No. 90A-JN4, Graves. J. (Dec. 13, 1990) (Mem. Op.), aff'd, Del. Supr., 1991 Del. LEXIS 194, No. 426, 1990, Holland, J. (May 13, 1991) (ORDER) ("Affirmed on the basis of **[*16]** and for the reasons assigned by the Superior Court."). In so affirming Martin, the Supreme Court acknowledged the efficacy of the reasoning in Martin and Washington.

Finally, illustrative is the case of Vaught v. Wortz, Del. Supr., 495 A.2d 1132 (1985). There, the Supreme Court was faced with a situation similar to that of the present case. The General Assembly had passed a statute repealing the Automobile Guest Statute. The repealer, however, contained no savings clause. Two weeks later, the General Assembly passed a concurrent resolution stating that the repeal was applicable only to causes of action arising after the effective date of the statute. Thus, there was a statute that was silent as to retroactive application and a separate espousal of clear legislative intent on the issue. The Court, citing Chrysler Corp., found this omission from the statute to be an ambiguity that was resolved by looking to the resolution. Vaught at 1133 ("The ambiguity of the Repealer is resolved by the . . . concurrent resolution which evidences a clear legislative intent that the Repealer is to be given only prospective application."). n3

> n3 While not cited by the parties, the Court, in its research, uncovered the case of Transamerica Corp. v. Reliance Ins. Co., Del. Super., 1995 Del. Super. LEXIS 424, C.A. No. 94C-10-221, Cooch, J. (August 30, 1995) (Mem. Op.). In this opinion, the Court ruled that despite the clear statement of intent in the synopsis, since the statute itself is silent on the issue of retroactive application, the Court will not look beyond the clear language of the statute.

This Court, in light of the weight of authority identified above, respectfully disagrees with the result in Transamerica Corp.

[*17]

It is clear the Legislature intended that the Home Owner's Protection Act apply retroactively to "any action, regardless of when it occurs. . . ." Because statutes normally are applied prospectively only, an ambiguity arises when looking solely at the language of this statute where there is no mention of retroactive application. The only way to give practical effect to the General Assembly's intent is to look to the synopsis of the House Bill and apply the Act retroactively.

## CONCLUSION

The Court denies Dryvit's Motion to Reargue. The Court correctly applied the law in finding that the General Assembly intended that the Act apply retroactively. Moreover, the Court's original interpretation and use of the Chrysler Corp. case is supported by Vaught, Washington, and Martin. To find otherwise would create the anomalous result where the Court has access to, and is fully aware of, the Legislature's intent in enacting a statute but frustrates that clear intent through willful blindness. This result is not required; honoring the legislative intent is.

**IT IS SO ORDERED.**