IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TARIQ BHATTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-690-MPT |
| | ) | |
| J.P. MORGAN CHASE, a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Teresa A. Cheek, Esquire (No. 2657)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6676
Facsimile: (302) 576-3286
Attorneys for Defendant

DATED: September 26, 2007

## TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................i

TABLE OF AUTHORITIES ............................................................................................iii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 2

STATEMENT OF FACTS ............................................................................................. 3

    A.   Bhatti's Work History With JPMC ................................................................... 3

    B.   Bhatti's Applications for Rehire ....................................................................... 9

        1.   Private Banking Fee Billing Positions......................................................... 10
            a.   Requisition No. 030013375, Private Banking Fee Billing Team Leader............. 10
            b.   Requisition No. 030015978, Private Banking Client Statements Quality Assurance and Rendering Manager ........................................................... 11
            c.   Temporary Assignment - Private Banking Fee Billing Processing ..................... 12
            d.   Requisition No. 040012913, Private Banking Fee Billing Quality Control Specialist................................................................................................ 13
        2.   Collateral Core Services Positions ............................................................. 14
            a.   Requisition No. 030013403, Operations Unit Manager for Collateral Core Services Teams ....................................................................................... 14
            b.   Requisition No. 030021187, Investment Bank Operations Unit Manager for the Collateral Core Services Teams ................................................................ 15
        3.   Other Manager and Supervisor Positions ................................................... 15
            a.   Requisition No. 030011636, Operations Supervisor [Non-Domestic Loan Trading] ................................................................................................ 15
            b.   Requisition No. 040000502, Manager Private Banking Reconciliations & T&I Journal ................................................................................................. 17
            c.   Requisition No. 050013769, Options Operations Supervisor Associate.............. 18
            d.   Requisition No. 040010298, Reconciliation Control Unit Manager.................... 18
        4.   Specialist Positions.................................................................................. 19
            a.   Requisition No. 030011730, Account Transition Specialist ............................. 19
            b.   Requisition No. 030018647, Trader Support Specialist................................... 19
            c.   Requisition No. 030022719, Operations Specialist ....................................... 20

ARGUMENT ............................................................................................................... 21

I.    BHATTI CANNOT ESTABLISH THAT JPMC DISCRIMINATED AGAINST HIM
      BASED ON AGE, RACE OR NATIONAL ORIGIN AND SUMMARY JUDGMENT
      SHOULD THEREFORE BE GRANTED IN FAVOR OF JPMC. ............................... 21

      A.   Summary Judgment Standard ..................................................................... 21

      B.   Analytical Framework ................................................................................ 22

II.   BHATTI CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION
      WITH REGARD TO THE CANCELED POSITIONS. ................................................ 24

III.  BHATTI CANNOT DEMONSTRATE THAT JPMC'S LEGITIMATE, NON-
      DISCRIMINATORY REASONS FOR SELECTING OTHER CANDIDATES ARE
      PRETEXTUAL. .......................................................................................................... 24

      A.   Bhatti's Limited Area of Expertise Disqualified Him from Consideration for Many of
           the Positions at Issue ................................................................................................ 25

      B.   Each of the Various Decision Makers Proffered Well-Documented, Legitimate Non-
           discriminatory Reasons for Selecting Other Candidates ..................................... 25

           1.    Private Banking Fee Billing Positions ............................................................ 26
                 a.    PBFB Team Leader (Req. No. 030013375) ...................................... 26
                 b.    PBFB Client Statements Quality Assurance and Rendering Manager (Req. No.
                       030015978) ........................................................................................ 26
                 c.    PBFB Processing (Temporary Position) ............................................ 27
                 d.    PBFB Quality Control Specialist (Req. No. 040012913) .................. 27
           2.    Collateral Core Services Positions ................................................................. 28
                 a.    Operations Unit Manager (Req. No. 030013403) .............................. 28
                 b.    Investment Bank Operations Unit Manager (Req. No. 030021187) ... 28
           3.    Other Manager and Supervisor Positions ...................................................... 29
                 a.    Operations Supervisor in Non-Domestic Loan Trading (Req. No. 030011636) .. 29
                 b.    Manager, Private Banking Reconciliations & T&I Journal (Requisition No.
                       040000502) ........................................................................................ 29
                 c.    Options Operations Supervisor Associate (Req. No. 050013769) ...... 30
                 d.    Reconciliation Control Unit Manager (Req. No. 040010298) ............ 30
           4.    Specialist Positions ........................................................................................ 31

CONCLUSION ........................................................................................................... 32

# TABLE OF AUTHORITIES

**Federal Cases**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) .......................................................................................... 21

Birkbeck v. Marvel Lighting Corp.,
    30 F.3d 507 (4th Cir. 1994)............................................................................... 23

Brewer v. Quaker State Oil Ref. Corp.,
    72 F.3d 326 (3d Cir.) .................................................................................. 21, 23

Brodsky v. Hercules, Inc.,
    966 F. Supp. 1337 (D. Del. 1977) ..................................................................... 23

Carson v. Bethlehem Steel Corp.,
    82 F.3d 157 (7th Cir. 1996)............................................................................... 23

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) .......................................................................................... 21

Doyle v. U.S. Sec'y of Labor,
    285 F.3d 242 (3d Cir. 2002)............................................................................... 22

EEOC v. Metal Serv. Co.,
    892 F.2d 341 (3d Cir. 1990).............................................................................. 22

Ezold v. Wolf, Block, Schorr & Solis-Cohen,
    983 F.2d 509 (3d Cir. 1992).............................................................................. 24

Glanzman v. Metro Mgmt. Corp.,
    391 F.3d 506, (3d Cir. 2004)........................................................................ 22, 23

Jones v. Sch. Dist. of Phila.,
    198 F.3d 403 (3d Cir. 1999).............................................................................. 22

Keller v. Orix Credit Alliance, Inc.,
    130 F.3d 1101 (3d Cir. 1997)............................................................................ 24

Kelly v. Drexel Univ.,
    94 F.3d 102 (3d Cir. 1996)................................................................................ 23

Kowalski v. L&F Prods.,
    82 F.3d 1283 (3d Cir. 1996).............................................................................. 23

McDonnell-Douglas Corp, v. Green,
    411 U.S. 792 (1973) .................................................................................... 21, 23

Reeves v. Sanderson Plumbing Prods.,
    530 U.S. 133 (2000) .......................................................................................... 23

Schoch v. First Fidelity Bancorporation,
    912 F.2d 654 (3d Cir. 1990).............................................................................. 21

Texas Dep't of Comm. Affairs v. Burdine,
    450 U.S. 248 (1981) ................................................................................................ 22

Waldron v. SL Indus., Inc.,
    56 F.3d 491 (3d Cir. 1995) .................................................................................... 23

Williams v. Borough of West Chester,
    891 F.2d 458 (3d Cir. 1989) .................................................................................. 21

**Other Authorities**

Fed. R. Civ. P. 56(c) ................................................................................................ 27

## NATURE AND STAGE OF THE PROCEEDINGS

This action by Tariq Bhatti ("Bhatti"), filed on September 20, 2005 (Dkt. 1) and amended on October 7, 2005 (Dkt. 3) and February 1, 2006 (Dkt. 20) currently alleges that defendant J.P. Morgan Chase ("JPMC") refused to rehire Bhatti because of unlawful discrimination based on his age (40 or over, date of birth September 14, 1942) in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and based on his race (Asian) and national origin (Pakistan) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Second Amended Complaint, ¶¶ 17, 18, 20 (Dkt. 20).

JPMC filed answers to the Amended Complaint (Dkt. 7) and the Second Amended Complaint (Dkt. 22) as well as a Motion to Dismiss the Amended Complaint in part (Dkt. 8).  On March 9, 2006, the parties stipulated to the dismissal of all claims of refusal to hire with regard to positions for which Bhatti had applied before July 24, 2003 (Dkt. 30). On April 5, 2006, the parties stipulated to the dismissal of Count II of the Amended Complaint, which had asserted state law discrimination claims (Dkt. 35). Discovery has been completed, and JPMC has filed a motion for summary judgment. This is JPMC's opening brief in support of its motion for summary judgment.

## SUMMARY OF ARGUMENT

Bhatti may not obtain relief with regard to job openings for which the requisitions were canceled and no one was hired.

Bhatti has insufficient evidence to meet his burden to prove that the legitimate business reasons proffered by JPMC for its decisions to select other applicants for the remaining positions in question are a pretext for race, national origin or age discrimination. The undisputed evidence shows that Bhatti's subject matter expertise was in the area of Foreign Exchange ("FX") Operations, and JPMC's FX Operations unit had been relocated to England. Bhatti's efforts to obtain a position with JPMC were unsuccessful primarily because of his lack of knowledge regarding operations in other parts of the bank, not because of unlawful bias.

## STATEMENT OF FACTS

Plaintiff Tariq Bhatti was born in Pakistan on September 14, 1942, is of Asian ancestry, and is a naturalized American citizen. (Amended Complaint, ¶ 10.) On June 22, 1982, Bhatti began working for JPMC. (Amended Complaint, ¶ 12.) Bhatti obtained a bachelor's degree in mathematics and physics from Punjab University in Pakistan in 1965. (Tariq Bhatti Dep. 10, Jul. 21, 2006 and Jul. 31, 2006 (A292).) He came to the United States in 1976. (*Id*., 9 (A291).)

### A.  Bhatti's Work History With JPMC

Throughout nearly all of his career with JPMC, Bhatti worked in the area of FX Processing. (Bhatti Dep. Ex. 1, 2, 3, 4 (A307-12); Bhatti Dep. 17-21 (A293-97); D00012-13 (A278-81).) On June 22, 1981, Bhatti began working for J.P. Morgan in New York City. (D00015 (A280).) The function of the FX Processing group was to enable the firm's United States customers to pay debts they owed to persons or entities in other countries. (William Kenny Dep. 7-8, Sept. 22, 2006 (A332-33).)  To do so, the firm would trade U.S. dollars for euros or other foreign currency on behalf of the customers. (*Id*.) The trade would be booked in New York. (*Id*.) An executed trade would flow back to the back office/operations and the Delaware team would be responsible for making sure the trade was received, contacting the client and confirming the trade and insuring that it was settled and reconciled correctly. (*Id*.)

In April 1998, Bhatti transferred to JPMC's facility in Newark, Delaware to help with problems in the FX Processing Department there. (Kenny Dep. 10-11 (A343-35); D00583-587 A12-16); Bhatti Dep., 20-21 (A296-97).) Bhatti had been performing a similar role in New York in the FX options department. (Kenny Dep. 10-11 (A334-35).) Because Bhatti knew the FX business very well, the firm expected that he would be able to make an easy transition into the

new responsibilities. (Kenny Dep. 14, 23-24 (A336, 340-41).) In Delaware, Bhatti reported to

Heather Blair, who in turn reported to William Kenny. (Kenny Dep. 49-50 (A354-55).)

On September 18, 1998, Blair prepared a performance review for Bhatti. (D00583-587

(A12-16).) At that time he was a Transaction Specialist III in the FX group. (*Id.*) From April

1998, when he came from New York to Delaware, until June 1998, Bhatti had trained the

Investigation Unit staff and helped to resolve transactional problems. (*Id.*) Blair suggested that

Bhatti could improve his performance by increasing his knowledge of MS Word and MS Excel

and the FX processing applications Feirworks and IMMS. (*Id.*) She also commented: "Although

Tariq's knowledge and negotiation skills are quite good, he has a difficult time sharing his

knowledge with his team members. He has a difficult time sharing his thought processes or

sharing his experiences with others, and often becomes frustrated when a less experienced

individuals [sic] question what he is saying to them." (*Id.*) In addition, to her view that Bhatti

needed to work on his communication skills, Blair also observed that he also needed to work on

his adaptability to changes in the work process and flexibility and his willingness to listen to

others. (*Id.*) Blair further advised Bhatti that he also needed to improve  his productivity and

typing skills. (*Id.*)

In June or July 1999, at his mid-year review, Bhatti told Blair and Kenny that he was

interested in moving into management. (D00588 (A17.) On July 28, 1999, Blair wrote an email

message to Kenny documenting their discussion with Bhatti that day. (*Id.*) Bhatti had expressed

concerns regarding three areas: reward and recognition, diversity and his performance. (*Id.*) Blair

and Kenny told Bhatti that they intended to increase the participation of FX in the "Reward &

Recognition" program. (*Id.*) Kenny explained J.P. Morgan's Diversity program and reassured

Bhatti, telling him he had not been overlooked for a managerial position because of his ethnic

background. (*Id.*) Bhatti said he was satisfied with the explanation and that he had no other diversity concerns. (*Id.*) Blair and Kenny told Bhatti that they thought he had excellent problem-solving and thinking skills and was very thorough; that he had excellent negotiation skills and had saved the bank money while maintained good client relations on many occasions; that he had good knowledge of the FX business and the investigation and compensation functions; and that he was a team player, sharing his knowledge with others. (*Id.*) On the minus side, he needed to improve his PC skills, including typing and MS Office; his time management skills, moving more quickly; and his communication and training skills, teaching others how to solve problems and identify trends and raise them to management. (*Id.*) Kenny advised Bhatti that if he wanted a position in management, he would need to take initiative and make suggestions for improvements. (*Id.*)

On October 14, 1999, Blair prepared an annual performance review for Bhatti. (P22-25 (A18-21); Kenny Dep., 17 (A337).) Bhatti had been reviewing compensation cases and preparing error reports to identify the root causes of errors and bring them to the attention of management, as well as negotiating and reducing the cost of errors. (*Id.*) Blair wrote that Bhatti's strengths were his "extremely good knowledge of Foreign Exchange Business, Money Transfer, Communication System and Compensation Rules." (*Id.*)

On February 23, 2000 Kenny, who managed the FX unit, advised Bhatti of an opening for a manager of the FX Processing Group. (D00798-799 (A22-23); Kenny Dep., 30-31 (A342-43).) In February or March 2000, Bhatti became the manager of the FX Processing Department, supervising a staff of five to ten individuals. (Bhatti Dep. Ex. 1, 2, 3, 4 (A307-11).)

After Bhatti had been in this role for a few months, Blair collected performance feedback from subordinates and peers identified by Bhatti and gave him a mid-year review. (Kenny Dep.

18, 20, 35-39 (A338, 339, 344-48); Kenny Dep. Ex. 4 (A358-59); D00821-824 (A25-28); D00825-826 (A34-35); D00817-820 (A30-33); D00815 (A29).) Bhatti's colleagues and subordinates generally agreed that among his greatest strengths were his FX processing knowledge and skills and among his weaknesses were his interpersonal, management and computer skills. (D00817-20 (A30-33); D00821-824 (A25-28); D00815 (A29); D00825-826 (A34-35); D00623 (A36).) On June 26, 2000, Blair wrote a "Three Plus Three Minus" performance review for Bhatti, which consisted of quotations from the feedback provided by Bhatti's subordinates and peers. (D00816 (A24).)

On November 3, 2000, Blair gave Bhatti his annual performance review. (Kenny Dep. 41 (A349); D00805-807 (A37-39).) Blair considered Bhatti's strengths to be (1) his knowledge of the FX business, including processing, investigations and compensation; (2) his consistent work to improve the process and reduce the costs of errors; (3) his fair and respectful treatment of people, including listening to their concerns, providing opportunities for training and development and providing timely and appropriate feedback; and (4) leadership skills, including clear goals, guidance regarding achievement of goals, removal of barriers using influencing and negotiating skills, and latitude for his team to generate ideas and implement solutions. His areas for improvement were (1) to continue to improve communication skills to avoid appearing accusatory or frustrated or intimidating and by being concise; (2) to continue to develop his computer skills, including using MS Word, Excel, Powerpoint, Foreign ExchangeMatch and Alert. (D00805-807 (A37-39).)

At the beginning of 2001, J.P. Morgan and Chase Bank merged and a lengthy transition period began during which the two entities consolidated their functions. (Kenny Dep. 42, 49-50 (A350, 354-55).) As a result of the merger, JPMC decided to move the FX Processing

Department, which Bhatti had been supervising, to Bournemouth, England. During the first six months of 2001, Bhatti continued to supervise the group and assisted with the transition to England. (D00592-594 (A42-44).)

Following the merger and reorganization, JPMC tried to help displaced employees find new positions within the firm. (Kenny Dep. 42-45 (A350-53).) On June 19, 2001, James Krass, manager of the FX Department, communicated with managers in the Private Banking area who had interviewed Bhatti for an opening but who did not favor his selection for the job. Manager Steve Kuplinski explained in an email to Krass:

> Jim, [w]hen we interviewed Tariq we were looking for one of two types of associates: a.) a project-oriented associate with a high level of PC skills, a high degree of flexibility to move into and out of different roles / projects, and a strong aptitude to come up to speed quickly on new topics or b.) an 'upward moving' associate who could quickly assimilate into a managerial role here with a goal (not long-term) of moving to a higher level position. Based on our interviews with Tariq, he did not display characteristics of either one of these types. The feedback from each of the interviews was very consistent: a SME [subject matter expert] in his field and very professional, but limited to a line manager role.
>
> To address the point around the concern about Tariq's ability to impact change, in my interview with Tariq I asked him to provide me with an example of how he worked with people or teams outside of his own group to affect [sic] change / improvements. His answer was that he didn't have an example that came to mind.
>
> Based on this feedback, we don't see Tariq fitting into either one of the roles we'd be creating to accommodate this situation.

(Kuplinski Dec. (A477-78); D00001-2 (A40-41).) By "project-oriented associate" Kuplinski meant that he was looking for someone who could lead a project that was not defined at the outset. (Kuplinski Dec. (A478).) That person would have to assemble a team, create a business plan, set and follow up on deadlines, reach out to constituencies, and so on. (*Id.*) Bhatti did not seem to Kuplinski to have that kind of experience; rather, his experience was in managing transactional functions, making sure they were following procedures correctly. (*Id.*) Bhatti had

not done a good job of selling himself at the interview and Kuplinski did not think Bhatti's managers should have to assume the responsibility for selling him to others. (*Id.*)

On about June 30, 2001, Blair prepared a mid-year performance review for Bhatti. (D00592-594 (A42-44).) She thought that Bhatti needed to continue to work on his oral and written communication skills, to update his development plan, obtain additional training and acquire a mentor, improve his PC skills and knowledge of other areas of the bank, and focus more attention on his job search rather than relying on others to find opportunities for him. (*Id.*)

After the relocation of the FX group to England, Bhatti found a temporary position in the Global Markets Federal Funds support group, where he reported to William Kenny.  (Kenny Dep. 49-50 (A354-55).) Bhatti's job was to supervise two people during the relocation of their function from Newark, Delaware to New York City. (*Id.*) On November 9, 2001, Kenny and Blair prepared a performance review for Bhatti. (D00595-599 (A45-49); Kenny Dep. 39 (A348).) Kenny wrote that Bhatti needed to continue to work on communication, organizing his thoughts better and focusing on catering to and delivering his message to his audience; to be more proactive in seeking opportunities to increase his visibility; to improve his MS Office skills; and to work harder on his job search, completing a comprehensive development plan and learning more about the business through formal materials and asking questions of more experienced team members. (D00595-599 (A45-49).)

As of November 30, 2001, Bhatti had not located another position into which he could transfer. He was offered and accepted a retirement severance package. (D01044 (A50).) His last day of employment with JPMC was January 31, 2002. Second Amended Complaint, ¶ 12. Bhatti decided to take the rest of his severance pay in a lump sum, so on March 7, 2002, JPMC paid Bhatti $61,205.14. (D01044 (A50).)

## B. Bhatti's Applications for Rehire

To manage its recruiting and hiring process, JPMC used computer software called "Staffing WebTop." (Althea Bowen Dep. 6-7, Aug. 9, 2007 (A423-24).) The online hiring process began with the creation and approval of a job requisition, followed by the online posting of a job vacancy. (Shayla Gosa Dep. 9-11, Aug. 22, 2007 (A445-47); Carmen Harmon Dep. 77, Oct. 4, 2006 ("Harmon Dep. I") (A404).) Potential applicants went to the JPMC website and viewed the opportunities that are open. (Harmon Dep. I, 5 (A384).) They could also create a profile by answering questions and uploading their resumes. *Id.* Candidates who created a profile could indicate if they were interested in receiving e-mail notifications of any openings that fit the profiles they have created. (*Id.*, 5-6 (A384-85).) If a candidate elected to receive notifications the system would automatically send an e-mail informing the candidate of job postings that fit their profile so that they could review the posting. (*Id.*; Bhatti Dep. 49 (A303).)

On about October 2, 2002, Bhatti enrolled in this online recruiting system and created a profile listing his job preferences and skills. (D00996-01000 (A51-55); D01046-1068 (A56-78); Harmon Dep. I, 4-18 (A383-97); Stacey Arnold Treon Dep. 8-9, Oct. 13, 2006 (A411-12); Bhatti Dep. 49-50, 148-151 (A303-04, A316-19); Bhatti Dep. Ex. 53 (A324-27).) Bhatti indicated that he was interested in jobs in any of the following areas: Customer Service, Call Center, Operations, Operations Management, Operations - Other, Securities Operations, Project Management and Project Managers. (D00996-01000 (A51-55).) He also indicated that he was interested in jobs located in Bournemouthe, England; Downey, California; West Hartford, Connecticut; Delaware; Boca Raton, Florida; Jacksonville, Florida; Sarasota, Florida; Tampa, Florida; Boston, Massachusetts; Edison, New Jersey; Woodbridge, New Jersey; Forest Hills, New York; Columbus, Ohio; Dallas, Texas; and Salt Lake City, Utah. (*Id.* at D00997 (A52).) In the "Profiler Questionnaire" section, Bhatti rated his own proficiency at various general skills

such as negotiation, client relationship management and budgeting. (*Id.*) Whenever JPMC posted

a new vacancy that matched the preferences profile Bhatti had created, the system sent him a

notification advising him of the posting so that he could review the job posting and decide

whether to apply for it. (Harmon Dep. I, 6-7 (A385-86); Bhatti Dep. 44-45 (A301-02); D00781-

782 (A276-77).)

Over the next two and a half years, the system sent Bhatti 400-500 job opening

notifications. (D01046-1068 (A56-78).) Using JPMC's online application system, Bhatti

submitted applications for 48 positions at JPMC. (D00020-23 (A229-32).) As noted above, many

of the applications were submitted more than 300 days before Bhatti filed a discrimination

charge and therefore his potential claims relating to these applications are time-barred. Many of

the other requisitions for jobs for which Bhatti applied were canceled and the vacancies were

never filled. (Harmon Dec. (A480).)

The following describes the circumstances of and the decisions made regarding the

remaining 13 requisitions for which Bhatti applied within the statutory time limit.

### 1. Private Banking Fee Billing Positions

#### a. Requisition No. 030013375, Private Banking Fee Billing Team Leader

On July 31, 2003, Bhatti applied for the position of Private Banking Fee Billing Team

Leader, a position located in Newark, Delaware. (D01113-1116 (A117-20); D00358-362 (A96-

100).) Hiring manager Stacey Arnold interviewed Bhatti after he contacted her directly.

(D00843 (A123); Treon Ex. 4 (A413-16); Bhatti Dep. 68-69 (A305-06).) On Monday, August 4,

2003, Bhatti called Arnold about the opening and then sent her an email message in which he

admitted that he probably had not "fully expressed in details some of my management and team

leadership skills." (P12-13 (A125-26).) He described what he thought were the highlights of his

previous accomplishments. (*Id.*) Arnold responded by email, thanking Bhatti for his interest but advising him that they would not be offering him the job. (*Id.*) She sent a copy of her email to Bhatti to her supervisor, James Mallon. (James Mallon Dep. 5-6, Oct. 13, 2006 (A408-09); P12-13 (A125-26).) On September 3, 2003, Harmon entered the rejection of Bhatti's application in RecruitSoft and recorded as the reason "not enough functional expertise." (D01115 (A119).) Recruiter Harmon noted that there were no references to fee billing experience in Bhatti's application. (Harmon Dep. I, 107 (A405).)

Steven R. Green (American-born, white and under the age of forty (Harmon Dec. (A481).)**,** was the internal candidate who was selected for the job. He had prior fee billing experience and was at the time of his promotion already working in the fee billing department. (Harmon Dep. I, 113 (A406); D01235-1238 (A286-89); D01239-1242 (A282-85).)

### b. Requisition No. 030015978, Private Banking Client Statements Quality Assurance and Rendering Manager

On October 11, 2003, Bhatti submitted an application (D01128-1139 (A131-42).) for the position of Private Banking Client Statements Q/A and Rendering Manager in Newark, Delaware (D00399-400 (A143-44).) On October 15, 2003, hiring manager Stephen A. Kuplinski rejected Bhatti's application with a file note stating, "Experience not commensurate with position." (D00397 (A145).) Kuplinski was looking for someone with a thorough understanding of financial instruments, which Bhatti did not have. (Steve Kuplinski Dep. 5, Sept. 7, 2007 (A471).) Bhatti's experience was in line management, overseeing the transaction process and monitoring the controls and procedures. (Kuplinski Dep. 3 (A470).)

On October 29, 2003, Kuplinski decided to hire James Hamilton (American-born, white and under the age of 40 (Harmon Dec. (A481),) who had a Master's degree in Business Administration, because he understood financial instruments thoroughly, had portfolio

management experience and had worked with clients, as indicated in his application documents. (D00403-406 (A153-56); Kuplinski Dec. A478-79).)

<strong>c.    Temporary Assignment - Private Banking Fee Billing Processing</strong>

In April 2004, Dawn Harper-Smith, a recruiter working at a placement agency called Integrity Staffing Solutions, Inc., arranged for Bhatti to interview for a temporary assignment handling a Private Banking Fee Billing project. (Dawn Harper-Smith Dep. 3-6, Oct. 17, 2006 (A418-21); Andrea Hodge Dep. 4-5, Sept. 22, 2006 (A361-62).) The selectee would have to know or learn the fee billing process for opening, closing and maintaining accounts; lead a team of analysts in performing management reporting for the fee billing system; and help a fee billing processor get caught up with a backlog of unfinished processes that was putting the company at risk because the system being used was an old one that was going to be retired. (Hodge Dep. 6-7, 20-21 (A363-64, A367-68).)

Hiring managers Andrea Hodge and Stacey Arnold (who had rejected Bhatti's team leader application in 2003), interviewed Bhatti for the position. (Hodge Dep. 4, 8 (A361, A365).) During the interview Hodge concluded that Bhatti did not have the leadership qualities she was looking and showed a lack of interest in the position at the interview. (Hodge Dep. 28-29, 31-32, 41-43 (A370-71, A372-73, A379-81).) Hodge had difficulty obtaining information from Bhatti during the interview and noted he was unable to describe any process improvements he had accomplished and would not go into any detail about his experience. *Id.*

The person selected for the job, Blaise Narducci (American-born, white and age 40 or over (Harmon Dec. (A482).), in contrast, gave details of projects he had worked on and examples of ways in which he had improved processes or developed tools to assist processes. (Hodge Dep. 29-31 (A371-73).) Moreover, one of Hodge's subordinates had worked directly

with Narducci in the past and recommended him. (Hodge Dep. 33-36 (A375-78).) After interviewing Bhatti, Hodge spoke to Arnold about him and learned that Arnold had interviewed Bhatti in the past. (Hodge Dep. 13 (A366).) Arnold told Hodge that her past experience with Bhatti had been negative because she felt he had "harassed" her after the interview about the job. (Hodge Dep. 26 (A369).) Arnold also agreed with Hodge that Bhatti did not have the leadership qualities they were seeking. (Hodge Dep. 41 (A379).) On April 9, 2004, Arnold and Hodge decided against hiring Bhatti. (Hodge Dep. 32-33 (A374-75).)

> **d.    Requisition No. 040012913, Private Banking Fee Billing Quality Control Specialist**

On August 17, 2004, Bhatti submitted an online application (D01037-1039 (A238-40).) for the position of Quality Control Specialist - PB Fee Billing in Newark, Delaware (D00564-566 (A235-37).). On August 17, 2004, recruiter Carmen Harmon submitted Bhatti's application to hiring manager Stacey Arnold for her review. (D00563 (A233).) On September 8, 2004, Arnold selected Emma Graves-Davie (American-born, African-American and under age 40 (Harmon Dec. (A481).) for the position. (D00568 (A234).) Graves-Davie was already working as a consultant for the Private Banking Fee Billing Team, reporting to Arnold. (D00977-986 (A252-61); Carmen Harmon Dep. 6-8, Sept. 7, 2007, Re: Req. No. 040012913 ("Harmon Dep. II") (A466-68).) Graves-Davie had a bachelor's degree from Indiana University in Marketing and Management, a Master's degree in Business Administration from Wilmington College and a Project Management Certificate from the University of Delaware. (D00977-986 (A252-61).) Arnold rejected Bhatti's application due to "lack of relevant skills / aptitudes / experience." (D00563 (A233).)

### 2. Collateral Core Services Positions

#### a. Requisition No. 030013403, Operations Unit Manager for Collateral Core Services Teams

On July 31, 2003, Bhatti received a job posting notice (D01070 (A121).) and applied online (D01117-1127 (A106-16).) for the position of Operations Unit Manager (D00378-379 (A104-05)), located in Newark, Delaware. (D00382-383 (A101-02).) The person chosen for this position would supervise the Collateral Core Services Teams (settlement and accounting). The five-person team (including the manager) would settle eligible collateral (cash, securities, equities and letters of credit) against the exposures monitored and also control, report and reconcile the holdings with custodian and tri-party accounts and re-use the collateral where possible. (D00389 (A103); D00378-379 (A104-05).) Bhatti had no prior Collateral Core Services experience. (Bhatti Dep. 145 (A314).)

On August 6, 2003, Theodore Boris reviewed and rejected Bhatti's application. Via an entry in the RecruitSoft program, Boris explained to recruiter Althea Bowen his reasons for rejecting Bhatti's application: "I am not interested in this individual. We interviewed him last year for a lower level position and were not impressed. He had issues with the rejection and handled it in a non-professional way. Please reject." (D00377 (A122).)

The successful applicant was Marie Scott (American-born, white, under age 40). (Harmon Dec. (A482), Bowen Dep. 62-63 (A429-30).) Scott was chosen instead of Bhatti for Req. No. 030013403 because of her securities experience in her role as a financial analyst. *Id.* She had global credit experience involving securitization. *Id.* According to Ms. Scott's application, she had 10 years of credit risk management experience with JPMC and had been a Vice President.  (D00962-968 (A146-52); Bowen Dep. Ex. 5 (A433).)

**b.     Requisition No. 030021187, Investment Bank Operations Unit Manager for the Collateral Core Services Teams**

On December 11, 2003, Bhatti submitted an online application (D01151-1161 (A171-81).) for the position of Investment Bank Operations Unit Manager [Collateral Core Services] in Newark, Delaware (D00464-465 (A168-69).). Theodore Boris was the hiring manager and Althea Bowen was the recruiter for this position, which was the same as the one described in Requisition No. 030013403, discussed above. (D00466 (A170).) On December 15, 2003, Bowen submitted Bhatti's application to Boris for his review. (D01160-61 (A180-81).)

On December 16, 2003, Sophia Redzaj (Albanian-born, white, age 40 or older (Harmon Dec. (A482).) applied for the position. (D00468-469 (A182-83).) At the time of her application, she was working for JPMC as a project manager for a Private Banking conversion and migration project. (*Id.*) Before that, from November 1998 until June 2002, she had managed three teams in Investment Bank Credit Operations. (*Id.*) From May 1992-November 1998, she was a Business System Analyst, supporting the production systems used by the Investment Bank loan operations. (*Id.*) She had worked for JPMC since 1983, and had been an Associate since 1991. (*Id.*)

**3.   Other Manager and Supervisor Positions**

**a.     Requisition No. 030011636, Operations Supervisor [Non-Domestic Loan Trading]**

On July 8, 2003, Bhatti applied online for the position of Operations Supervisor in the Non-Domestic Loan Trading unit, which was located in Newark, Delaware. (D00300 (A86); D00302 (A87); D00303-307 (A81-85).) This position involved supervising a small team that handles the documentation for secondary trades of commercial loans. (Gosa Dep. 3-4 (A441-42).) The hiring manager, Shayla Gosa, was looking for someone with commercial lending or

trading experience, who had previous experience interacting with traders and customer. (*Id*. at 7 (A443).)

Recruiter Althea Bowen sent his application to hiring manager Shayla Gosa for review. (D00300 (A86).) In the comment section, Bowen wrote: "prev employee with Investment banking background / management exp any interest, employee retired 1/2002."(*Id.*) Gosa reviewed the resumes of the individuals who had applied for the position and selected Bhatti, among others, to interview. (Gosa Dep. 8-20 (A444-56.) Bhatti was the only external candidate Gosa selected for an interview. (Gosa Dep. 20 (A456).)

After completing the interviews, Gosa ranked Bhatti at number 3 among the individuals she interviewed. (Gosa Dep. 58-59 (A459-60).) Gosa offered the position to the person ranked number 1 but she declined it. (Gosa Dep. 45, 59-60 (A458, A460-61).) The second person on the list was Steve Jones (American-born, white, under age 40 (Harmon Dec. (A481).), who accepted Gosa's offer. (Gosa Dep. 45 (A458).) At the time of his promotion, Jones was working for JPMC in Newark as a Loan Trading Closer. (D00321 (A80).) Unlike Jones, Bhatti had no experience in loan trading. (Gosa Dep. 58-59; (A459-60).). Jones was already reporting to Gosa, so she was very familiar with his qualifications. (Gosa Dep. 28 (A457).) The position had supervisory responsibilities and Bhatti had management experience, while Jones did not, but Gosa and her colleagues decided it was less risky to hire someone with loan trading expertise but no management experience than it was to hire someone with management experience but no loan trading knowledge. (Gosa Dep. 70-71, 74 (A462-63, A464).) As a JPMC manager pointed out, to do a good job as a manager, "you need to have a strong understanding of the business skills or the business knowledge" as well as having more generic leadership skills. (Kenny Dep. 54-55 (A356-57).)

   **b.**  **Requisition No. 040000502, Manager Private Banking Reconciliations & T&I Journal**

On January 19, 2004, Bhatti submitted an online application (D01172-1182 (A206-16)) for the position of Manager, Private Banking Reconciliations & T&I Journal in Newark, Delaware (D00517 (A195).). The function of this position was to supervise an operational group in a securities environment. (D00517 (A195).) Bhatti's experience related to this position consisted of having handled reconciliations when he worked in the FX Department. (Bhatti 165-66 (A320-21).) According to Bhatti's responses to the Pre-Screening Questionnaire for this position (D01030-1032 (A203-05); Bhatti Ex. 73 (A328)), he did not meet any of the skills requirements relating to accounting, business management, coordination of projects, leadership, and establishment of unit policies and procedures. On April 19, 2004, recruiter Carmen Harmon rejected Bhatti's application, noting as the reason "not enough functional expertise." (Harmon Dep. I, 50-53 (A398-401).) It appeared to Harmon, based on her review of Bhatti's resume, that he lacked project management experience and conversion-related work. (Harmon Dep. I, 61-62 (A402-03).)

The person selected for the position was Fitzpatrick Nedd (American-born, African-American, age 58 (Harmon Dec. (A482); D00518 (A194); D00519-520 (A199-200)).) At the time of hire, Nedd was employed by Deutsche Bank Group in New Jersey as an Assistant Vice President, Reconciliation Manager Thrift Unit. (D00518 (A194); D00519-520 (A199-200).) Nedd had more managerial experience than Bhatti, and from March 2000 through July 2001, Nedd has served as Assistant Vice President, Special Projects Manager. (D00518 (A194); D00519-520 (A199-200).)

      **c.**      **Requisition No. 050013769, Options Operations Supervisor Associate**

On March 27, 2005, Bhatti submitted an online application (D00573 (A266); D01040-1042 (A263-65).) for the position of Options Operations Supervisor Associate in Newark, Delaware. The function of this position was to handle the daily options processing and settlement for the Investment Bank. (D00578 (A262).) The selectee would manage a four-person team. (*Id.*) The position required "strong knowledge" of options processing and OCC processing and rules, and "knowledge" of MS Word, Excel and Access. (*Id.*) Bhatti testified that he had experience as an Options Operations Supervisor working for JP Morgan in New York from 1993 to 1998. (Bhatti Dep., 172-173 (A322-23).) However, in his responses to the prescreening questionnaire, he indicated that he had no experience with two of the software systems used in the Options Operations unit (SQL and OPICS Systems). (D01040 (A263).)

On April 4, 2005, Bowen rejected Bhatti's application for the position with a note stating: "Requisition filled; Did not review this candidate or the slate satisfied with earlier applicants." Hiring manager Amanda Winkelman had decided to hire Edward Russino (American-born, white, under age 40). (Harmon Dec. (A482); D00578 (A262).) Russino was at that time working as an Options Operations Supervisor at Fiserv Securities and accordingly had current directly related experience. (Bowen Dep., 69-70 (A431-32); D00987-995 (A267-75).)

      **d.**      **Requisition No. 040010298, Reconciliation Control Unit Manager**

On July 16, 2004, Bhatti submitted an online application (D01183-1193; A1-11).) for a position as Reconciliation Control Unit Manager in Dallas, Texas. (D00555-556 (A219-20).) The external job posting noted that assistance with relocation costs was not available. (D00936 (A218).) On the same date, recruiter Sally Cottingham rejected Bhatti's application because of a lack of relevant skills / aptitude / experience. (D01192-1193 (A10-11).) The person hired for the

position, Jana Jenkins (American-born, white, age 40 or over), was local. (Harmon Dec. (A481); D00969-976 (A221-28).)

### 4. Specialist Positions

#### a. Requisition No. 030011730, Account Transition Specialist

On August 4, 2003, Bhatti applied online for the position of Account Transition Specialist. (D00332 (A89); D00346-351 (90-95).) The person selected for this position would not be engaged in any management activities.

On August 11, 2003, recruiter Carmen Harmon submitted Bhatti's application to Angela Gorman, who was assisting the hiring managers with the screening of applicants. (D00332 (A89).) On August 15, 2003, Harmon conducted a telephone interview of Bhatti for the position; he withdrew his application, telling her that he felt the salary was too low. (*Id.*)

#### b. Requisition No. 030018647, Trader Support Specialist

On October 22, 2003, Bhatti submitted an online application (D01140-1150 (A157-67).) for the position of Trader Support Specialist in Newark, Delaware. (D00432 (A127); D00433-435 (A128-30).) According to Bhatti's prescreening questionnaire answers, he was not familiar with credit derivatives or fixed income products, which were requirements. (D01140-1150 (A157-67).) He also was unfamiliar with equities, mortgage-backed securities, asset-backed securities and structured finance products, and he had no securities processing experience. (*Id.*)

Recruiter Althea Bowen did not submit Bhatti's application to hiring manager Karen Donahue because this was an entry-level rather than a managerial position and Bowen, seeing that Bhatti had applied for multiple positions and had managerial experience with JPMC, had spoken to him about the types of jobs he was interested in. (Bowen Dep. 44-45, 49-50 (A425-26, A427-28).) Bhatti told her (as he had previously told Carmen Harmon) that he was interested in

jobs at the same level (associate, managerial) as he had held before, and was not interested in entry-level jobs. (*Id.*)

### c.    Requisition No. 030022719, Operations Specialist

On January 14, 2004, Bhatti submitted an online application (D01172-1182 (A206-16).) for the position of Operations Specialist in the Debt Service Billing Department in Dallas, Texas. (D00502 (A184).) This was a non-supervisory position requiring 2 years of experience in the banking industry. Its function was to ensure that monthly invoices for principle and interest payments were received by the debt issuer and paid in full in a timely manner, and to promptly process payments when they were received.

By February 24, 2004, about 228-230 people had expressed interest in the position of Operations Specialist. (D00912-919 (A185-92).) On February 24, 2004, hiring manager Christian Laurinavicius decided to promote two local internal candidates, Remigio Ayala and Kristina Williams, to the two openings. (D00503 (A193); D00504-505 (A201-02); D00511-513 (A196-98).) On the same date, recruiter Kendall A. Robinson rejected Bhatti's application on the basis of lack of relevant skills / aptitude / experience. (D01181-82 (A215-16).)

## ARGUMENT

**I.    BHATTI CANNOT ESTABLISH THAT JPMC DISCRIMINATED AGAINST HIM BASED ON AGE, RACE OR NATIONAL ORIGIN AND SUMMARY JUDGMENT SHOULD THEREFORE BE GRANTED IN FAVOR OF JPMC.**

Bhatti cannot establish the essential elements of his discrimination claims under the standard established in *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792 (1973) (detailing the burden-shifting framework to be used in Title VII discrimination claims); *see also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326 (3d Cir.) ("The ADEA is similar in text, tone, and purpose to that contained in Title VII, courts routinely look to law developed under Title VII to guide an inquiry under the ADEA"). Because Bhatti cannot satisfy the required elements, his claims should be dismissed.

### A.  Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In performing this analysis, the evidence is to be construed in the light most favorable to the non-moving party. However, if the evidence presented by the non-moving party is nothing more than a reassertion of unsupported allegations, summary judgment is appropriate. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). To that end, "[m]ere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials." *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

### B.  Analytical Framework

Bhatti's claims arise in part under Title VII of the Civil Rights Act of 1964, which states, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . [and] national origin."  42 U.S.C. § 2000e-2(a).  Bhatti also claims age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA").

This action is a disparate treatment discrimination case.  Disparate treatment discrimination cases involve claims of outright discrimination based on a statutorily prohibited characteristic.  *See Doyle v. United States Sec'y of Labor*, 285 F.3d 242, 253 (3d Cir. 2002).  In a disparate treatment, case the plaintiff must establish that he was in fact treated less favorably, or discriminated against, based on a prohibited characteristic.  *See EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990) (a disparate treatment violation is made out only when an individual is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion).  *Accord, Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410-11 (3d Cir. 1999).  In other words, a plaintiff must prove that the decision makers involved were subjectively motivated by animus against a protected characteristic when the decision in question was made.  In the present case, Bhatti's proof of discrimination falls far short of the required standard.

In a disparate treatment case brought under Title VII and/or the ADEA, the plaintiff is required to prove that a protected characteristic "actually motivated" and "had a determinative influence" on the decision to take adverse employment action against the plaintiff.  *Glanzman v. Metro Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004) (citing *Reeves v. Sanderson Plumbing*

*Prods.*, 530 U.S. 133, 141 (2000)). Plaintiff may demonstrate discrimination by a showing of either direct or indirect evidence. *Glanzman*, 2004 U.S. App. LEXIS at *12. Bhatti must prove his *prima facie* case by a preponderance of the evidence before the burden of production shifts to JPMC to "articulate a legitimate, non-discriminatory reason" for not hiring Bhatti. *McDonnell-Douglas*, 411 U.S. 792. JPMC's burden at this stage is extremely light; it need only state a non-discriminatory explanation for its action, and come forward with some evidence. *Kowalski v. L&F Prods.*, 82 F.3d 1283, 1289 (3d Cir. 1996).

In response to JPMC's articulation of the legitimate business reason for its decisions, Bhatti must prove that "the employer's proffered reason or reasons were pretextual – that is, they are false and that the real reason for the employment decision was discriminatory." *Waldron v. SL Indus., Inc.*, 56 F.3d 491 (3d Cir. 1995). The plaintiff always bears the ultimate burden of persuasion that discriminatory reasons motivated the employment decision. *See Brodsky v. Hercules, Inc.*, 966 F. Supp. 1337 (D. Del. 1977). The plaintiff must provide additional evidence to demonstrate that discrimination was the real reason why he was not hired or to otherwise "cast doubt on the employer's stated reasons by identifying such weaknesses, inconsistencies, incoherencies, or contradictions" in the proffered reasons that a reasonable fact finder "could rationally find them unworthy of credence. *Brewer*, 72 F.3d at 331.

The court will not substitute its judgment for that of the employer when business decisions are made. *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996). The employer is entitled to make a business decision without fear of being second guessed by a court. *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994). The question is not whether the employer made the best, or even a sound, business decision: it is whether the real reason is discrimination. *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996). Bhatti

cannot meet his burden of establishing pretext simply by disagreeing with JPMC's action.

*Fuentes*, 32 F.3d at 765; *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 533 (3d Cir.

1992).  The question is not whether JPMC made the best, or even a sound, business decision; it is

whether its real reason for failing to hire Bhatti was discrimination based on his age, national

origin or race.  *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1009 (3d Cir. 1997).

## II.    BHATTI CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION WITH REGARD TO THE CANCELED POSITIONS.

As stated in *McDonnell Douglas*, it is Bhatti's burden to establish a *prima facie* case:

> The complainant in a Title VII trial must carry the initial burden under the
> statute of establishing a prima facie case of racial discrimination. This may
> be done by showing (i) that he belongs to a racial minority; (ii) that he
> applied and was qualified for a job for which the employer was seeking
> applicants; (iii) that, despite his qualifications, he was rejected; and (iv)
> that, after his rejection, the position remained open and the employer
> continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802.  The reason that Bhatti cannot prove a prima facie case of discrimination with

regard to the canceled positions is that the undisputed evidence shows that JPMC did not keep

those positions open and did not continue to seek applicants after rejecting Bhatti's applications

for these positions.

## III.   BHATTI CANNOT DEMONSTRATE THAT JPMC'S LEGITIMATE, NON-DISCRIMINATORY REASONS FOR SELECTING OTHER CANDIDATES ARE PRETEXTUAL

Bhatti has insufficient evidence to meet his burden to prove that the legitimate business

reasons proffered by JPMC for its decisions to select other applicants for the remaining

positions in question are a pretext for race, national origin or age discrimination. Bhatti's

proffered evidence must permit a reasonable inference that "*each* of the employer's proffered

non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually

motivate the employment action."  *Marione v. Metropolitan Life Ins. Co.*, No. 05-2359, 2006

U.S. App. LEXIS 19345, *15 (3d Cir. July 31, 2006) (emphasis in original) (internal citations omitted).

### A. Bhatti's Limited Area of Expertise Disqualified Him from Consideration for Many of the Positions at Issue

The undisputed evidence shows that Bhatti's subject matter expertise was in the area of FX Operations. After the 2000 Merger, the newly formed JPMC moved the FX Operations Department to England. Bhatti assisted in that transition and then transferred into a temporary position in the Treasury Operations Department, where he reported to a former manager. When that position also was moved from Delaware, Bhatti took a generous severance package and retired. As described above in the Statement of Facts, in many cases Bhatti's efforts to obtain a new position with JPMC were unsuccessful because of his lack of expertise regarding operations in areas other than FX.

The importance of Bhatti's functional expertise in obtaining new work is demonstrated by the fact that when Bhatti obtained other work after retiring from JPMC, his jobs were in the FX field. From August 2003 until December 2003 or January 2004, Bhatti worked as a consultant for Morgan Stanley, assisting with the relocation of its FX Investigations and Compensation groups from Brooklyn, New York, to Baltimore, Maryland. (D01194-1204 (A241-51); Bhatti Dep. I, 24 (A298).) On May 30, 2006, Bhatti began working for Citigroup in the FX Processing Group. (Bhatti Dep. I, 30, 34 (A299, A300).)

### B. Each of the Various Decision Makers Proffered Well-Documented, Legitimate Non-discriminatory Reasons for Selecting Other Candidates

Bhatti's applications were also rejected because of (a) his rejection of entry-level positions; (b) his occasional poor performance at job interviews; and (c) his application for a position in a distant location for which relocation assistance was not available. The specifics of the legitimate reasons for the various rejections of Bhatti's applications are as follows:

### 1.    Private Banking Fee Billing Positions

Bhatti was interviewed for four positions in the Private Banking Fee Billing Department ("PBFB").  In each case, he was rejected in favor of other candidates for legitimate, non-discriminatory reasons.

### a.    PBFB Team Leader (Req. No. 030013375)

Bhatti was interviewed for the position of Private Banking Fee Billing Team Leader by hiring manager Stacey Arnold. Arnold rejected Bhatti's application because he did not have the requisite functional expertise. He had no fee billing experience.

An internal candidate, Steven R. Green, was selected for the job.  Green, who was working in PBFB at the time and reporting to Arnold, did have fee billing experience. Promoting an internal candidate because of his specific experience in the job functions in question is a legitimate business reason for not hiring an external candidate who does not have comparable experience.  *Rodriguez v. Sears Roebuck de P.R., Inc.*, 432 F.3d 379, 382 (1st Cir. 2005).

### b.    PBFB Client Statements Quality Assurance and Rendering Manager (Req. No. 030015978)

Bhatti's application for the position of Client Statements Q/A and Rendering Manager was unsuccessful because, again, he lacked the requisite level of functional expertise. The hiring manager wanted someone knowledgeable about financial instruments, how they operate and how they differ.  Bhatti did not have the needed experience with financial instruments.  James Hamilton, the successful applicant, had a Master's degree in Business Administration, understood financial instruments thoroughly, had portfolio management experience and had real client interaction. Superior experience and education are legitimate business reasons for hiring decisions.  *See e.g., Taylor v. Cherry Hill Bd. of Ed.*, 85 Fed. Appx. 836 (3d Cir. 2002).

### c.    PBFB Processing (Temporary Position)

Bhatti also applied to work on a temporary PBFB assignment.  His poor performance during the interview caused him to be rejected for the position.  One of the hiring managers, Andrea Hodge, noted that Bhatti was unenthusiastic during the interview.  Additionally, Bhatti did not communicate well about his ability to improve processes or lead teams. When questioned, he was at a loss to provide information about any process improvements he had made and failed to discuss his experience in any detail.  The successful candidate gave details of projects he had worked on and examples of ways in which he had improved processes or developed tools to assist processes.

From his overall lackluster performance during the interview, Hodge concluded that Bhatti did not have the desired leadership skills.  Stacey Arnold, the other hiring manager, concurred with Hodge's conclusions.  Bhatti was equally unimpressive during an earlier interview with Arnold.  Poor performance during the interview process is a legitimate reason for rejecting an applicant.  *Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 328 (3d Cir. 2000).

### d.    PBFB Quality Control Specialist (Req. No. 040012913)

Bhatti also submitted an application for the entry-level position of Quality Control Specialist.  Arnold, who had already rejected Bhatti's applications for two other positions, selected Emma Graves-Davie for the position. Graves-Davie was already working as a consultant for PBFB, reporting to Arnold, and already had first-hand knowledge of the necessary processes. Graves-Davie's credentials were also superior to Bhatti's.  While Bhatti had only a bachelor's degree, Grave-Davie had an M.B.A. and a Project Management Certificate.  Graves-Superior experience and education are legitimate business reasons for hiring decisions.  *Lewis v. Del. Dep't of Pub. Instruction*, 948 F. Supp. 352, 361 (D. Del. 1996). In addition, as noted above,

Bhatti had indicated to JPMC recruiters that he was not interested in non-management specialist positions.

### 2.     Collateral Core Services Positions

Bhatti applied for and was rejected from two positions in the Collateral Core Services unit ("CCS").

### a.     Operations Unit Manager (Req. No. 030013403)

Bhatti's application for the position of Operations Unit Manager was rejected by Hiring Manager Ted Boris, who explained: "I am not interested in this individual. We interviewed him last year for a lower level position and were not impressed.  He had issues with the rejection and handled it in a non-professional way.  Please reject."

Bhatti had left a poor impression with the Hiring Manager and his qualifications for the position were equally unimpressive.  Bhatti had no prior CCS experience.  His only qualification for this position was his previous management experience in the FX Department. The successful applicant, Marie Scott, had previous securities experience as a financial analyst.  She also had global credit experience, specifically relating to securitization.

Superior experience and education of the selected candidate and poor performance in an interview on the part of the plaintiff are legitimate business reasons for hiring decisions.  *See Lewis,* 948 F. Supp. at 361*; Narin*, 206 F.3d at 328.

### b.     Investment Bank Operations Unit Manager (Req. No. 030021187)

Bhatti also applied for the position of Investment Bank Operations Unit Manager, for which Theodore Boris was also the hiring manager. The successful candidate, Sophia Redzaj, had experience managing three credit operations teams.  She also had experience supporting the Investment Bank loan operations production systems.  Boris had had positive interactions with

Redzaj and had been pleased with her work.  Redzaj's experience with loan operations was clearly superior to that of Bhatti.  Preference for more relevant experience is a legitimate reason for a hiring decision.  *See e.g., Ford v. Dep't of Servs. for Children*, 93-57-SLR, 1995 U.S. Dist. LEXIS 7570, at *17-18 (D. Del. May 5, 1995).

### 3.    Other Manager and Supervisor Positions

#### a.    Operations Supervisor in Non-Domestic Loan Trading (Req. No. 030011636)

Bhatti applied for the position of Operations Supervisor in the Non-Domestic Loan Trading unit, supervising a small team that handled the documentation for secondary trades of commercial loans. As was the case with the collateral core services team positions, Bhatti lacked subject matter expertise because he had no loan operations experience. Although hiring manager Gosa was favorably impressed with Bhatti and ranked him third among the individuals she interviewed, the second person, Steve Jones, accepted Gosa's offer. Jones had directly related experience; in his new position, he supervised the group in which he had been working. Once again, Bhatti's failure to obtain the job was the result of his lack of technical expertise. Lack of technical knowledge is a legitimate reason for rejecting an application.  *See Elwell v. PP&L, Inc.,* 47 Fed. Appx. 183 at *13 (3d Cir. 2002).

#### b.    Manager, Private Banking Reconciliations & T&I Journal (Requisition No. 040000502)

Bhatti also applied for the position of Manager, Private Banking Reconciliations & T&I Journal, which also involved operations relating to securities. Bhatti did not meet the skills requirements relating to accounting, business management, coordination of projects, leadership, and establishment of unit policies and procedures. Bhatti's application was rejected due to "not [having] enough functional expertise."

With regard to his claim for this position, Bhatti cannot carry his *prima facie* burden because the successful candidate was position was Fitzpatrick Nedd, an African-American, age 58. Nedd's qualifications were superior to those of Bhatti, he was over the age of 40, and he was a member of a minority group.

### c.    Options Operations Supervisor Associate (Req. No. 050013769)

Bhatti applied for the position of Options Operations Supervisor Associate, in which he would have handled the daily options processing and settlement for the Investment Bank and managed a four-person team. Although Bhatti testified that he had worked as an Options Operations Supervisor from 1993 to 1998, he indicated in his application that he had no experience with two of the software systems used in the Options Operations unit (SQL and OPICS Systems).

Edward Russino, the successful applicant, was working as an Options Operations Supervisor at Fiserv Securities at the time he was hired. Accordingly, he had current directly related experience. Russino's more current experience made him a more qualified candidate when compared to Bhatti and is a legitimate, non-discriminatory reason for the hiring decision.

### d.    Reconciliation Control Unit Manager (Req. No. 040010298)

Bhatti applied for a position as Reconciliation Control Unit Manager in Dallas, Texas. Assistance with relocation costs was not available. The person hired for the position, Jana Jenkins, was local. Giving preference to a local candidate rather than causing a distantly located candidate to incur relocation costs is a legitimate, nondiscriminatory reason for making a hiring decision. *See Monks v. Bell & Howell Mail Processing Sys. Co.*, No. 97-C-4410, 1998 U.S. Dist. LEXIS 13483 (N.D. Ill. Aug. 26, 1998).

### 4.     Specialist Positions

Bhatti applied for three specialist positions in addition to the Private Banking position discussed above: Account Transition Specialist (Req. No. 030011730), Trader Support Specialist (Req. No. 030018647), and Debt Service Operations Specialist (Req. No. 030022719). These were entry-level positions that did not involve any managerial responsibilities. Bhatti advised at least two recruiters, Carmen Harmon and Althea Bowen, that the specialist salary was too low and that he was interested in a supervisory position at the same level at which he had been working (the associate level) when he retired.  The recruiters had no reason to doubt this information, in view of Bhatti's prior managerial experience. Obviously, an applicant's stated disinterest in the salary and responsibility level of a position is a legitimate reason for rejecting his application.

As described above, in general, the individuals selected were as qualified as or more qualified than Bhatti for the position. In many cases the selectee was promoted from within and was already thoroughly acquainted with the technical aspects of the job. Finally, for some of the positions, another minority candidate was selected, undermining Bhatti's claims of discrimination. JPMC has met its burden of persuasion by articulating the legitimate, non-discriminatory reasons for each of its decisions not to hire Bhatti. To defeat summary judgment, Bhatti must produce evidence from which a fact finder could reasonably disbelieve JPMC's stated reasons for these decisions or find that JPMC was more likely than not motivated by discrimination. Bhatti is unable to produce any evidence that JPMC's many different decision makers selected others rather than himself based on a discriminatory motive. Summary judgment should, therefore, be granted to JPMC.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court enter

judgment in its favor.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ *Teresa A. Cheek*
Teresa A. Cheek, Esquire (No. 2657)
Margaret M. DiBianca (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6676
Facsimile: (302) 576-3286
Attorneys for Defendant J.P. Morgan Chase

Dated:  September 21, 2007