IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TARIQ BHATTI                                  )
                                              )
          Plaintiff,                          )        C.A. No.: 05-690(MPT)
                                              )
          v.                                  )        TRIAL BY JURY DEMANDED
                                              )
J.P. MORGAN CHASE BANK, N.A.                  )
A National Corporation,                       )
                                              )
          Defendant.                          )


**PLAINTIFF'S ANSWERING BRIEF IN RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


                              GARY W. ABER (DSB #754)
                              Aber, Goldlust, Baker & Over
                              First Federal Plaza, Suite 600
                              702 King Street, P.O. Box 1675
                              Wilmington, DE  19899
                              302-472-4900
DATED:  November 9, 2007      Attorney for Plaintiff

# TABLE OF CONTENTS

**Page No.**

Table of Citations ................................................................ iv

Nature and Stage of the Proceedings ................................ 1

Statement of Relevant Facts .............................................. 2

      Bhatti Personal ........................................................ 2

      Bhatti's Job Performance ........................................ 3

      J.P. Morgan's Application and Hiring Process ........ 6

      1.     Operations Supervisor (No. 030011636) ...... 8

      2.     Operations Unit Manager (No. 030013403) ... 11

      3.     Private Banking Fee Billing Team Leader
           (No. 030013375) ............................................ 13

      4.     Trader Support Specialist (No. 030018647) ... 15

      5.     Manager Private Banking Reconciliations
           (No. 040000502) ............................................ 17

      6.     Private Banking Fee Billing Quality Control
           Specialist (No. 040012913) ........................... 18

      7.     Options Operation Supervisor
           (No. 050013769) ............................................ 20

Summary of Argument ........................................................ 22

Argument .......................................................................... 23

    I.     THE LEGAL STANDARD FOR A MOTION
           FOR SUMMARY JUDGMENT ........................... 24

II.    IN ORDER TO SURVIVE A MOTION FOR
       SUMMARY JUDGMENT A PLAINTIFF, CLAIMING
       EMPLOYMENT DISCRIMINATION, NEED NOT
       HAVE DIRECT EVIDENCE OF DISCRIMINATION
       BUT MAY PROVE HIS CASE BY CIRCUMSTANTIAL
       EVIDENCE DEMONSTRATING PRETEXT.                    26

       A.    The Applicable Law of Discrimination          26

       B.    Demonstrated "Pretext"                        32

Conclusion                                                 38

## TABLE OF CITATIONS

Page No.

Abramson v. William Patterson College of New Jersey
260 F.3d, 265, 278 (3d Cir. 2001)
27, 36

Accord: Lamontagne v. American Convenience Products
750 F.2d 1405, 1410 (7th Cir. 1984)
26

Aka v. Washington Hospital Ctr.
156 F.3d 1284, 1294 (D.C. Cir. 1998)
32

Aman v. Cort Furniture Rental Corporation
85 F.3d 1074, 1082 (3d Cir. 1996)
27

Anderson v. Liberty Lobby,
477 U.S. 242, 248, 106 S.CT. 2505, 2510
91 L.Ed.2d 202 (1986)
23

Armbruster v. Unysis Corporation
32 F.3d 768, 782 (3d Cir. 1994)
27

Chipollini v. Spencer Gifts, Inc.
814 F.2d 893, 896 (3d Cir. 1987)
23,26,28

Danville v. Regional Lab Corporation
292 F.3d 1246, 1252 (10th Cir. 2002)
31, 32

Ellis v. United Airlines, Inc.
73 F.3d 999, 1005 n.8 (10th Cir. 1995)
30

Fakete v. Aetna, Inc.
308 F.3d 335, 338 n.3 (3d Cir. 2002)
25

Fasold v. Justice
409 F.3d 178, 186 93d Cir. 2005)
29

Finch v. Hercules, Inc.
865 F.Supp. 1104, 117 (D.Del. 1994)
23

Fitzpatrick v. National Mobile Television
364 f.Supp.2d 43 (N.D.Pa. 2005)
26

Fuentes v. Perskie
    32 F.3d 759, 765 (3d Cir. 1994)           28, 31, 38

Furnco Construction Corp. v. Walters
    438 U.S. 567, 577, 98 S.Ct. 943
    57 L.Ed.2d 957 (1978)           29

Goodman v. Mead Johnson & Co.
    534 F.2d 566, 573 (3d Cir. 1976           23

Iadimarco v. Runyon
    190 F.3d 151, 157 (3d Cir. 1999)           28

In Re: Unisys Savings Plan Litigation,
74 F.3d 420, 433 (3d Cir. 1996)           23

Jackson v. University of Pittsburgh
    826 F.2d 203, 236 (3d Cir. 1987)           27

Kodak Co. v. Image Technical Services, Inc.
    504 U.S.__, 112 S.Ct. 2072,
    119 L.Ed.2d  265 (1992).           23

Lockridge v. Board of Trustess of the University of Arkansas
    294 F.3d 1010, 1017 (8th Cir. 2002)          26,30

Luna v. City & County of Denver
    948 F.2d 1144 (10th Cir. 1991).          31

McDonald Douglas Corp. v. Green
    411 U.S. 792, 93 S.Ct. 1817
    36 L.Ed. 2d 668 (1973)          25

Medina v. Ramsey Steel Company, Inc.
    203 F.3d 674, 681-682 (5th Cir. 2001)         30

Morris v. Communications Satellite Corporation
    773 F.Supp. 490, 494 9D.DC 1991).         32

O'Connor v. Consolidated Coin Caterers Corp.
    517 U.S. 308, 312, 116 S.Ct. 1307,
    134 L.Ed.2d 433 (1996)         26

Patterson v. McLean Credit Union

        491 U.S. 164, 217, 109 S.Ct. 2363
        105 L.Ed.2d 132 (1989) ..... 31

Price v. Delaware Department of Corrections
        40 F.Supp.21d 544, 554-555 (D.Del. 1999) ..... 28

Price Waterhouse v. Hopkins
        490 U.S. 228, 109 s.CT. 1175
        104 L.ED.2d 268 (1989) ..... 26

Privirotto v. Innovative Systems, Inc.
        191 F.3d 344 (3d Cir. 1999) ..... 26

Reeves v. Sanderson Plumbing Products, Inc.
        530 U.S. 133, 142, 120 S.Ct. 2097
        147 L.Ed.2d 105 (2000) ..... 25,29

Roebuck v. Drexel University
        852 F.2d 715 (3d Cir. 1988) ..... 28

Ryder v. Westinghouse Electric Corporation
        128 F.3d 128, 136 (3d Cir. 1997) ..... 30

St. Mary's Honor Society v. Hicks
        509 U.S. 502, 512, 113 S.Ct. 2742 ..... 28
        125 L.Ed.2d 407 (1993) ..... 28

Sempier v. Johnson and Higgins
        45 F.3d 724, 732 (3d Cir. 1995) ..... 30

Showalter v. University of Pittsburgh Medical Center
        190 F.3d 231, 234 (3d Cir. 1999) ..... 26

Smith v. Borough v. Wilkinsburg
        147 F.3d 272, 278 (3d Cir. 1998) ..... 27

Texas Department of Community Affairs v. Burdine
        450 U.S. 248, 253, 101 S.Ct. 1089
        67 L.Ed.2d 207 (1981) ..... 25,30

Transworld Airlines v. Inc. v. Thurston
        469 U.S. 11, 121, 105 S.CT. 613
        83 L.Ed.2d 523 (1985) ..... 29

Waldron v. SL Industries, Inc.
          56 F.3d 491, 494 (3d Cir. 1995)                                25, 36


**STATUTES**

29 U.S.C.§623 et.seq.                                                     25

42 U.S.C. §2000e                                                         25

## NATURE AND STAGE OF THE PROCEEDINGS

On May 19, 2004, Tariq Bhatti filed a charge of discrimination with the Delaware Department of Labor (B-1).    On July 14, 2005, the Delaware Department of Labor issued a "Final Determination and Right to Sue Notice" with a 'Reasonable Cause Determination". (B-7). [1]

A complaint in this matter was filed on September 20, 2007 (Dk-1).   With Amended Complaints being filed on October 7, 2005 (Dk-3) and on February 2, 2006 (Dk-20), charging discrimination against J.P. Morgan Chase (hereinafter referred to as "J.P. Morgan") and with violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et.seq. and the Age Discrimination Employment Act, 29 U.S.C. §621 et.seq. ("ADEA").

Discovery in this matter has been completed, and the defendant has filed a Motion for Summary Judgment and an Opening Brief.

This is Tariq Bhatti's Answering Brief in Opposition to Defendant's Motion for Summary Judgment.

---

[1] The Department of Labor the primary reason for its finding, was that the defendant had given as a reason for not rehiring plaintiff for the positions that he applied was that he "lacked leadership experience" (B-206).   However, the Department of Labor noted that in his evaluations during his employment "'leadership' was one of his strongest evaluated dimensions.".

## STATEMENT OF RELEVANT FACTS

### BHATTI PERSONAL

Teriq Bhatti was born on September 14, 1942 (Bhatti 8, B-216)[2] He was born a Muslim, in Pakistan, when it was still a colony and part of the India Sub-Continent (Bhatti 8-10, B-216-218).   He received a Bachelor of Science Degree from the University of Punjab, in Pakistan, and completed two semesters of a masters program in Public Administration (Bhatti 10, B-218).   He came to the United States in 1976 (Bhatti 9, B-217), and is now an American citizen (Bhatti 11, B-219).

Mr. Bhatti began working for J.P. Morgan in 1981 as a Transaction Settlement Specialist (Bhatti 17, B-223).   He worked as both a team leader and supervisor in Foreign Exchange (Bhatti 19-20, B-224-225), he was promoted to a manager in 1999 (Bhatti 21, Bhatti Ex Nos. 2-3, B-226).   He became a manager of the Foreign Exchange Processing Group in February 2000 (Bhatti 15, B-221).   Prior to that he had managed the Inter-Bank Group/Processing Group (Bhatti 16, B-222).   In approximately 2001 there was a merger between J.P. Morgan and Chase Manhattan which resulted in an impact on 400 or 500 Delaware employees (Kenney 42, B-318).    The foreign exchange operations, where Mr. Bhatti worked closed down in July 2001 (Kenney 50, B-319).   His supervisor had two openings in a temporary position for four or five months, and he selected Mr. Bhatti for one of those positions (Kenney 50, B-319).   Eventually Mr. Bhatti was separated from J.P. Morgan in November 2001.   His last position with J.P. Morgan was as a manager of the Fed Fund Settlement Group (Bhatti 12, B-220).

---

[2] This would mean that Mr. Bhatti was between the ages of 61 and 63 during the period of time he was applying for jobs with the defendant.

After being separated from J.P. Morgan, Mr. Bhatti was solicited by J.P. Morgan Chase and did apply for numerous positions, approximately 47 positions (Defendant's Answers to Interrogatories No. 8, B-209). Most if not all of the positions that Mr. Bhatti applied for were filled by persons substantially younger than him, 62 years of age. (See Letter: J.P. Morgan to DDOL: B-206). He was surprised that he could not find a postion since both his manager and his direct reports all found new position at J.P.Morgan (Bhatti 179-180, B-14).

## BHATTI'S JOB PERFORMANCE

Mr. Bhatti's career at J.P. Morgan was characterized by regular annual reviews, which showed that he regularly was noted as having exceeded his job requirements, and in several instances, consistently exceeding those requirements (Bhatti Ex. 10/D12, B-183-198).[3]

In reviewing Mr. Bhatti's performance, J.P. Morgan used two different types of reviews. First a review prepared by and with Mr. Bhatti's managers (Kenney Ex. Nos. 1 & 3, B-189) and team reviews prepared by a peers or a member of an employee's team, in this case persons that Mr. Bhatti managed (Kenney Ex. 2, B-183).

In the managers reviews in 1999 (Kenney Ex. 1, B-183) described Mr. Bhatti as:

--"Greatest strength is his extensive knowledge".

--"Strong team player"

--"Always professional and treats all team members fairly and with respect"

---

[3] The only exception to this was in 1998 when he was noted as only "consistently meets" his job requirements. This was following a year when he had been out on sick leave (Bhatti 64, B-232).

3

--"Willingly shares his knowledge with the group"

--"Contributes to meetings with relevant ideas and process improvements"

--"Excellent problem solving skills"

--"Able to identify issues others may have overlooked"

--"Detail oriented."

--"Decisive"

--"Makes appropriate decisions."

--"Superb negotiation skills"

--"Shown development in leadership skills"

In 2001, following the merger of J.P. Morgan with Chase Manhattan his 2001 review(Kenney Ex. 3, B-198) showed the following characteristics:

--"Has excellent working relationships with Chase counterparts"

--"Contributes significantly to successful functional transition"

--"Successfully managed the day-to-day activities of the FX Processing Team".

--"Brought immediate stability to the team"

--"Excellent leadership skills"

--"Handles his staff professionally and effectively"

--"Boosts morale"

--"Able to coordinate multiple tasks".

--"Strong negotiator"

--"Excellent problem solver"

--"Makes sound business decision with little or no assistance"

4

--"Thoroughly thinks through an issue".

--"Well respected not only by his staff and peers, but also by the Front Office, who often ask for his assistance"

--(Has) results oriented approach to getting things done. (Kenney Ex. 2, B-189)

When his peer managers and persons who he managed were requested to review him (Kenney Ex. 2, B-189), Anthony Giorgi described Mr. Bhatti as follows:

--"If one word could describe Tariq in his current role, leadership would be the adjective used"

--"Helped improve the image of Delaware" (Operation)

--"Strong leadership skills has brought the team closer and have them working together as a team with fewer errors"

--"Consistently pushes to develop each member of his staff"

--"Fair and consistent with each member of the team"

--"Made sure (the team) were given the opportunity to cross train on other functions"

--"Fair when offering opportunities for development"

--"Strong negotiation skills (and) his ability to judge social and business situations with clarity"

When a project manager, Brian Schell, who worked for Mr. Bhatti, was asked to review him (Kenney Ex. 2, B-189). He was described in the following terms:

--"Thoroughly understands the process and requirements needed"

--"Knowledge is very impressive"

--"Very protective as a team as a whole and as individuals"

--"Assumes responsibility for large problems when they arise"

--"Is open to change when it clearly shows an increase in production" (Kenney Ex. 2, B-189)

Another peer/colleague, Diane Pitts-Penson described Mr. Bhatti in the following terms: (Kenney Ex. 2, B-189)

--"Very knowledgeable and experienced in the field of Foreign Exchange"

--"I was never given adequate training opportunities to advance, once Teriq arrived at his position in FX in the second quarter he provided and opportunity to cross train on more than three other functions"

--"Boosted my morale and encouraged me"

--"Always willing to assist"

--"Gives sound advice and make sure I understand"

--"Teriq improves the atmosphere by treating everyone with respect and a purpose. (Kenney Ex. 2, B-189)

Finally, another peer/colleague, Anne E. Finley (Kenney Ex. 2, B-189) described Mr. Bhatti as follows:

--"Greatest skill is team oriented approach to management"

--"Confronted mistakes and errors as an education experience for the entire team as opposed to isolating individual's errors"

--"Promoting the cross training".

## J.P. MORGAN'S APPLICATION AND HIRING PROCESS

The initial application and hiring process utilized by J.P. Morgan was computerized using a program known as "Recruit Soft" or "Job Connect" (Bowen 6, B-244). The system would offer Mr. Bhatti jobs that fit his qualifications and his profile (Bhatti 49, B-230). In applying for jobs Mr. Bhatti would complete a profile for J.P. Morgan and, as jobs became available that fit his qualifications, he would be sent

6

notices (Bhatti 45-47, B-227-229).  The The notice would describe the job and list of the qualifications and required skills (Bhatti 47 & 49, B-229, 230).  If he was interested, he would then apply online (Bhatti 49, B-230).  He received many such notifications and made applications (Bhatti 47, B-229).  In doing so he elected not to apply for jobs that did not fit his qualifications (Bhatti 50, B-231).

In the hiring process, the first thing the computer system would look at is whether someone was interested in a certain position (Harmon III, 6, 15, B-295, 297).  Then the applicant's profile is reviewed as well as his experience (Harmon III, 10, B-296).  A notice of job would not be sent to an individual who did not have the skills or qualifications for a position (Harmon III, 16-17, B-298-299).[4]    All applications should be reviewed before a decision is made as to who should be brought in for an interview, which would result in an ultimate hiring (Harmon III, 89, B-307).  The review would then be sent to the hiring manager(Harmon III, 91, B-308).  The manager is supposed to pick someone based upon their skills and qualifications (Bowen 8, B-246).  Typically an applicant's recent performance review would be requested and reviewed (Kenney 15-16, B-316-317).These selections should **"absolutely" be based on the most qualified person**, and no other criteria other than skills and qualifications should be used (Bowen 8, B-246).

---

[4] A J.P. Morgan recruiter, Carmon Harmon, was deposed three times during this litigation.   The first deposition occurred on October 4, 2006, and was a 30(b)(6) deposition (Harmon I, Ex. 1, B-91).  Two more depositions of Ms. Harmon occurred on September 7, 2007, which were also 30(b)(6) depositions (B-108 & 120).  Through out this brief, references to the first Harmon deposition of October 4, 2006 will be made as (Harmon III, B-    ).   Reference to the first deposition of September 7, 2007 will be made as (Harmon II, B-  ), and references to the second deposition of September 7, 2007 will be made as (Harmon I, B-  ).

"Q.    Would I be correct to say at that point a manager should be taking the most qualified person.

A.    Absolutely.

Q.    There should not be any other criteria other than the person who has the best skills and qualifications for the job.

A.    Correct."
(Bowen 8, B-245).

The positions for which Mr. Bhatti applied, and for which he claims proof of discrimination, are as follows:

### 1. OPERATIONS SUPERVISOR
### Requisition No. 030011636

In July of 2003 J.P. Morgan Chase posted a position for an Operations Supervisor (Gosa Ex. 1, B-71). The position responsibilities would include supervising a seven person staff with a primary interface between the operations team and partner groups (Id.). The qualifications for the job required a Bachelor's of Science Degree or equivalent work experience, including supervisory work (Gosa Ex. 1, B-71). The prior knowledge required was either loan **or** trading operations. Mr. Bhatti applied for that job (Gosa Ex. 9, B-83) as did the eventual successful candidate Steven Jones (Gosa Ex. 8, B-77). Jones was an American born individual under the age of 40. (DB-16).[5]

Prior to any interviews, a list of the applicants was placed on an alphabetized list (Gosa Ex. 5, B-72). Those candidates who met a large portion of the requirements for the job were listed with a "star" next to their name (Gosa 22, B-266). Mr. Bhatti received a star, but Mr. Jones did not, presumably because while Mr. Bhatti was shown as having the necessary assets (1/1) while Mr. Jones is shown as not having the

---

[5] References to Defendant's Opening Brief will be made as (DB- ).

required assets (0/1)(See Gosa Ex. 5, B-72). The hiring manager described the position as requiring prior management to demonstrate leadership (Gosa 14, B-265). The job also required trading operations experience, with loan experience desired but not necessary (Gosa 13, B-264). Bhatti's foreign exchange experience was admitted to be equivalent to the loan trading experience that Jones had and had comparable skill sets. (Gosa 61-62, B-269-270). Nowhere in the written documentation for this position was it ever mentioned that a preference for loan operations over trading operations was going to be a deciding factor (Gosa 70-71, 72, B-271-272).Any trading experience even with securities was appropriate. (Id.). As with many other positions that Mr. Bhatti applied for, this position required candidates to fill out questionnaires showing whether they met the requirements of the job, which both Mr. Bhatti and Mr. Jones did (Gosa Ex. Nos. 8 & 9, B-77 & 83). In reviewing those questionnaires and meeting the requirements of management and operation experience, the comparison of the two candidates showed the following:

|  | **Steven Jones**(Gosa Ex. 8 ) | **Teriq Bhatti** (Gosa Ex. 9) |
|---|---|---|
| **Management Experience** | 0 years | 5 plus years |
| **Number of Employee's Supervised** | 0 | 10-12 |
| **Operations Experience** | 1-3 years | 5 plus years |

Thus, when comparing Mr. Jones to Mr. Bhatti, it is clear that Mr. Jones did not have the required management experience, for which Bhatti had a great deal of, and Mr. Jones had significantly less operations experience when compared to Mr. Bhatti's

operations experience.   Nonetheless, even though Mr. Jones did not meet the minimal required qualifications, he nevertheless was interviewed as was Mr. Bhatti.

Mr. Bhatti's interview session went very well.  His resume (Gosa Ex. 9, B-83) had the handwritten note that he had a "good interview" as well as "good knowledge". (Id.). The hiring manager was well aware of the fact that Bhatti had five years supervisory experience, as compared to Jones having none (Gosa 35, B-267), and that Mr. Bhatti had five years operations experience, as compared to Mr. Jones' one to three years (Gosa 35, B-267). Thus, it was agreed that Bhatti had more operations experience than Jones (Gosa 60-61, B-268-269). Bhatti did not lack any of the qualifications that were listed on the job application (Gosa 74, B-275).   However, Jones lacked required qualification for management experience (Gosa 74, B-275).  During the interview of Mr. Bhatti it was noted that he had prior trading operations and management experience, and was well prepared for the interview and enthusiastic. (Gosa Ex. No. 12, B-290). During Mr. Jones' interview it was noted that he did not have the required prior management experience and also had "questionable control orientation" (Gosa Ex. No. 12, B-290). It was conceded that it was clear that Mr. Bhatti had more management experience than Mr. Jones (Gosa 73, B-274).

An outside observer looking at the situation and reviewing the documents would not have anyway of determining why Jones, who had less qualifications than Bhatti, was chosen (Gosa 75-76, B-276-277).

10

## 2.  OPERATIONS UNIT MANAGER
### Requisition No. 030013403

On July 24, 2003 a position as an Operations Manager was posted by the defendant (Bhatti Ex. 46, B-27).  The required qualifications and skills for that job were two or more years of management experience, with project management experience described as a plus (Bowen Ex. 2, B-42).  Mr. Bhatti applied for the job on July 31, 2003 (Bowen Ex. 4, B-44) as was rejected on October 10, 2003 (Id.). Eventually Marie Scott, an American born individual under age 40 was hired (DB-14)(Bhatti Ex. 46, B-27).

When comparing the qualifications of the rejected Mr. Bhatti, and the hired Ms. Scott, it is clear that Ms. Scott did not have the required qualifications and skills of management experience.  As the recruiter for that job testified, Mr. Bhatti had all four management skills while Ms. Scott had no management skills (Bowen 60, B-253).  This was supposed to be an important factor for the job (Bowen 60, B-253).  In fact, Ms. Scott did not even have the minimal two years required management experience (Bowen Ex.2, B-42)(Bowen 60-61, B-253-254).

When comparing the other skills, Bhatti was, with one exception, clearly more experienced than Ms. Scott.  With regards to Process Improvement Skills, Mr. Bhatti had five years experience and Ms. Scott had one to three years (Bowen 61, B-254).  With regards to collection management experience, Mr. Bhatti had three to five years experience, and Ms. Scott had none (Bowen 61, B-254).  As to the required staff development skills, Mr. Bhatti had three to five years experience and Ms. Scott had none (Bowen 61, B-254).  Ms. Scott did have more experience than Mr. Bhatti in financial analysis (Bowen 62, B-255), but that knowledge was not shown as a

11

necessary qualification on the job posting/requisition (Bowen Ex. No. 2, B-42). By comparison, management experience was necessary, since this was a managerial job that is going to require supervision of people (Bowen 66, B-257), and those skills and experience was listed on the job posting/requisition (Bowen Ex. 4, B-44). Mr. Bhatti had such experience, Ms. Scott did not (Bowen 64, B-256). In summary, the successful chosen candidate lacked three of the required skills, management experience, collections management experience, and staff development experience, all of which Mr. Bhatti had significant experience.

The history of Mr. Bhatti's application shows that he was rejected by a Theodore Boris, who stated he was not interested in Mr. Bhatti because he had interviewed him previously, and Mr. Bhatti had issues with rejection and handled it in a non-professional way (Bowen Ex. 4, B-44).[6]    However, Mr. Bhatti specifically denied ever having been interviewed by Mr. Boris (Bhatti 146-147, B-239-240). Moreover, the recruiter assigned to this position was unable to determine if Mr. Bhatti's qualifications had ever actually been evaluated or whether a conclusion had been reached that his qualifications did not match the job requisition (Bowen 18-19, B-247-248).

---

[6] Even assuming that Mr. Bhatti had been interviewed previously by Mr. Boris, rejected, and that Mr. Bhatti complained about the rejection, the failure to Mr. Boris to review his qualifications and reject him because of his prior complaints of rejection might well have been retaliatory, a fact of which Mr. Bhatti was never made aware of, until the discovery in this case. That is, if Mr. Bhatti complained about his rejection based upon his belief, as he asserts in this lawsuit, that he had been rejected because of his age and/or nationality, the rejection of him without reviewing his qualifications a second time, because of such complaints would be retaliatory, in and of themselves violations of the law. See: 29 U.S.C. §623(d), and 42 U.S.C. §2000e-3.

### 3.  PRIVATE BANKING FEE BILLING TEAM LEADER
### Requisition No. 030013375

On July 29, 2003 J.P. Morgan posted a job vacancy for a "Private Banking Fee Billing Team Leader" (Harmon III, Ex. 27/D369, B-170).  The qualifications for this job were shown in the announcement. (Harmon III, Ex. 28/D716, B-178), and included a Bachelor's Degree or Associates Degree with four years experience preferred, with three to four years supervisor experience required. Mr. Bhatti applied for the job two days later on July 31, 2003 (Id./D352, B-153), and the defendant filled the position on October 29, 2003. (Id.)  The defendant rejected Mr. Bhatti stating that he did not have enough functional expertise (Harmon III, Ex. 21, B-152). However. experience in private banking was not a requisite for being hired into that department. The successful candidate for this position was a Steven R. Green who was American born and under age 40 (DB-11).

In Mr. Bhatti's last position he was a manager in the Foreign Exchange Processing Group from 1999 to 2002 (Bhatti Ex. No. 1, B-8).  There, he reported to the Vice-President of Foreign Exchange Operations and managed twelve direct reports (Id.).  When that operation closed down in 2001 his former manager, Heather Blair moved into private banking (Bhatti 68, B-234). Her new manager did not believe she had prior private banking experience (Mallon 8, B-322).  Other employees moved into private banking without experience in that department (Treon 8, B-327).  Similarly, of his several of his direct reports, moved into private banking (Bhatti Aff'd ¶ 5).  Three other former foreign exchange employees moved into private banking. (Bhatti Aff'd ¶ 6).

13

This was possible since, prior experience in private banking was not a requisite for being hired in that department (Harmon III, 125, B-313).

While the recruiter for this position claimed that the functional experience that Mr. Bhatti lacked was fee billing experience (Harmon III, 112, B-309), she did not consider his resume in making that determination (Harmon III, 113, B-310), could not describe the nature and extent of his experience (Harmon III, 117, B-311), and had never seen Mr. Bhatti's resume (Harmon III, 120, B-312). Mr. Bhatti however, did have experience in billing when he was in Foreign Exchange, when he had to supervise brokerage fee billings (Bhatti 67, 139, B-233-238).

On the list of applicants for this position, the successful candidate, Steven Green is shown as having only 8/10 of the requirements for the job, compared to Mr. Bhatt possessing 9/10 (Harmon II, Ex. 2, B-108). Using the questionnaires submitted to each of the two applicants, and filled out by them, neither applicant had experience in planning and controlling budget and expenditures (Skill No. 5)(Harmon II, Ex. Nos. 3 & 4, B-112 & 116). However, Mr. Green also lacked the skill of establishing work priorities.(Skill No. 2) (Harmon II, Ex. 4, B-116). Thus, by their mutual assessments, Green had less required skills than Bhatti (Harmon II, 11, B-285). In addition, Green did not have either Bachelor's Degree or an Associates Degree, one of the required job qualifications (Harmon II, 22-24, B-286-287). While the job required three to four years supervisory experience, Green indicated he had only one to three years experience (Harmon II, 26, B-288), thus indicating that he did not have the required three years management experience (Harmon II, 28, B-289). By comparison Bhatti showed that he had three to four years supervisory experience (Harmon II, 30-31, B-290-291). Thus it

14

became clear that while Green did not meet the minimum required qualifications for that position (Harmon III, Ex. No. 27/D356, B-157), Mr. Bhatti had all the required experience.  He had a Bachelor's Degree, three to four years supervisor experience, as well as billing experience (Bhatti 67, 139, B-233, 238) and the requisite securities experience (Harmon II, 33-34, B-292-293).  In fact, Bhatti's response to the questionnaire indicated that he had more than the required minimum "3-4 years supervisor experience", but rather five years of supervisory experience (Harmon II, Ex. 3, B-112).

### 4.  TRADER SUPPORT SPECIALIST
### Requisition No. 030018647

On October 8, 2003, J.P. Morgan created a requisition for a position of Trader Support Specialist (Bowen Ex. 6/D00435, B-49).  The job description for that job was posted on October 14, 2003 (Id.).  The outline and job description with its qualifications were provided to potential applicants (Bowen Ex. 6/D00432, B-46).  As with other jobs, questionnaires were developed and forwarded to applicants who completed them on computer and then they were reviewed by the computer (Bowen 36, B-249).  The successful applicant for this job was a Jeff Rogalski (Bhatti 86, B-237).  According to Mr. Rogalski's resume (Bhatti Ex. 19, B-19) his most recent job experience included waiting tables, acting as an intern for an IT analyst, as an intern in a Human Resources Department, and as an Administrative Assistant in a department of the Scottish government (Bhatti Ex.19, B-19).[7]

---

[7] Although in the production of documents J.P. Morgan deleted Mr. Rogalski's date of birth, since his work experience began on May 1, 2001 and continued to his last job as a waiter, in May of 2003.  It is reasonable to assume that he was "considerably

15

The recruiter for this position testified that she had not even reviewed Mr. Bhatti's application since, she stated, that he told her he was not interested in entry level jobs (Bowen 49, B-251), and that his resume had come across her desk on numerous previous occasions (Bowen 50, B-252)(the computerized version of the history of Mr. Bhatti's application for this position [Harmon Ex. 13, B-150] confirms that his application was not reviewed).    Mr. Bhatti directly disputes this contention that he was not interested in entry level positions, since he testified that because he had applied for so many jobs, when this job became available he was desperate to get any job, and was open to take a job anywhere (Bhatt 163, B-241).

When comparing the questionnaires of Mr. Rogalski, the successful candidate (Bhatti Ex. 19, B-19), to Mr. Bhatti's questionnaire (Bowen Ex. 7, B-56) it is shown that Mr. Bhatti clearly had either the same or greater of the assets sought out by the questionnaire.    First, Mr. Bhatti had twelve (12) of the seventeen (17) required skills (Bowen Ex. 7/D1142, B-58).    Mr. Bhatti did have experience in "Structural Finance" and Fed Funds, which Mr. Rogalski did not have.    Where experience in operations was sought out, Mr. Bhatti had more than five (5) years of experience in operations (Bowen Ex. 7, B-56), where Mr. Rogalski had no experience (Bhatti Ex. 19, B-19).    Neither Mr. Rogalski or Mr. Bhatti had securities processing experience, and both parties were somewhat knowledgeable about derivatives,[8] (Bowen Ex. 7, B-56,  Bhatti Ex. 19, B-19) when asked why he was qualified for the job, Mr. Bhatti stated he had done similar work

---

younger" than Mr. Bhatti.  He was also of Anglo-Saxon descent having been educated in Scotland, as compared to Mr. Bhatti having been born and raised in Pakistan.
[8] The defendant claims that Mr. Bhatti did not have experience in "equities".  However, such knowledge was not a requirement for the job (Bowen 44, B-250).

for many years, as well as any management experience. Bhatti had a thorough understanding of financial instruments including derivatives and options (Bhatti 80, B-236).  By contrast, Mr. Rogalski did not have the relevant experience, and his most recent job was working as a waiter.[9]

### 5.  MANAGER PRIVATE BANKING RECONCILIATIONS
### Requisition No. 04000502

The defendant posted the position of a Manager for Private Banking Reconciliation on January 13, 2004 (Harmon III, Ex. 8/D518, B-144).  The posted qualifications required for that job (Harmon III, Ex 8/D517, B-143) included five to ten years experience managing or supervising an operational group and previous project management experience. Mr. Bhatti applied for the job on February 7, 2004 (Harmon III, Ex 18/D519, B-145) and was rejected on April 19, 2004 (Id.).  On March 5, 2004, a Ned Fitzpatrick was hired (Harmon III, Ex. 8/D518, B-144).  He was a native born American (DB-17).

In response to discovery, asking which documents were relied upon in making the decision for this position, the defendant responded to interrogatories by attaching a

---

[9] Reviewing the computer history of the job, casts further doubt whether Mr. Bhatti was actually considered for this job.  According to Mr. Bhatti's computerized history (Bhatti Ex. 56, B-28) it shows that his application was rejected on November 13, 2003 at 10:00 a.m.  The computerized history of this job posting shows it was "unposted" three days earlier on November 10, 2003, and was filled almost an hour and a half **after** Mr. Bhatti's application was rejected, as not being reviewed, on November 13, 2003 at 11:18 a.m.

spreadsheet for each position (Defendant's Answers to Plaintiff's Fourth Set of Interrogatories: Harmon III, Ex. 5, B-120).[10]

Mr. Bhatti's response to the computerized questionnaire of the defendant (Bhatti Ex. 91, B-30) indicated he had more than five years experience supervising employees, had more than five years experience in bank operations, had between one and three years project management experience, had the required accounting skills, and had the required computer applications. (Defendant's did not rely upon a corresponding questionnaire for the successful candidate "Ned" See: Harmon III, Ex. 5, B-120). Nevertheless Mr. Bhatti was rejected because he did not have the "functional experience" of Project Management (Harmon III, 61 & 63, B-303-304).  This was despite the fact that the response to the questionnaire showed that he did have one to three years project management experience (Bhatti Ex. 91, Q ? No.4, B-30), and the recruiter for that position would have no reason to doubt that statement (Harmon III, 64, B-305). By comparison Ned had only one year experience as a project manager (Harmon III, 66, B-306).

### 6.  PRIVATE BANKING FEE BILLING QUALITY CONTROL SPECIALIST (Requisition No. 040012913)

This position was posted by the defendant on August 10, 2004 (Bhatti Ex. 84, B-29).  Mr. Bhatti applied for the position shortly thereafter on August 17, 2004, and was notified that he was rejected on September 15, 2004. The position was filled by Erma

---

[10] The documents relied upon by the defendant for this position were Bhatti's response to the computerized questionnaire (Bhatti 73, B-235) and Mr. Ned's Resume (Harmon III, Ex. 8/519-520, B-145-146)(See Harmon III, Ex. 5, B-120).

Graves-Davie on October 5, 2004 (Bhatti Ex. 84, B-29).  Ms. Graves-Davie was thirty-three (33) years of age (Harmon III, 126, B-314)[11]

The computerized list of applicants for this position shows that both candidates had 10/10 of the requirements and 2/2 of the assets.  The questionnaires filled out by Mr. Bhatti (Harmon I, Ex. 1, B-91) and by Ms. Graves-Davie (Harmon I, Ex. 3, B-97) show that both candidates were, almost identical.  Both had more than five (5) years experience analyzing data, both had more than five (5) years of office experience, and both had equal computer skills.  However, Mr. Bhatti was described as being "extremely proficient" in meeting deadlines, while Ms. Graves-Davie was only "very proficient".

Initially, in October 2006, at her deposition, the recruiter for this job, Carmon Harmon, noted that Mr. Bhatti was rejected because of a lack of skills, aptitude and experience (Harmon III, 42, 43 and 47, B-300, 301-302).  A year later at her second deposition on September 2007, she claimed that the reason Graves-Davie was hired was that she had system and/or billing experience which she claimed Mr. Bhatti did not have (Harmon I, 8, B-283).  However, Mr. Bhatti did have experience in billing, when he worked in foreign exchange (Bhatti 67, B-233).  In addition, he had more than five years of analyzing data and recommending actions based upon those analyses (Harmon I, 3-4, B-279-280).  Both candidates had more than five years office experience (Harmon I, 4, B-280).  It was the conclusion of the recruiter with one exception that both candidates met the requirements of the job (10/10) and both had the necessary assets (2/2)(Harmon I, 6, B-282).  Thus, both candidates were equal in all categories with the exception of the ability to deal with tight deadlines, where Mr. Bhatti's management

---

[11] The defendant concedes that she was an American born citizen (DB-13).

19

would state he was "extremely proficient" and Graves-Davie's managers would state that she was only "very proficient" (Harmon I, 5, B-281).

## 7.   OPTIONS OPERATIONS SUPERVISOR
### Requisition No. 050013769

On March 22, 2005 the defendant posted a job opening for an Options Operations Supervisor (Bowen Ex. 15, B-69). The skills and qualifications required for that position included managerial experience and knowledge of Microsoft Word, Excel, and Access.  On March 29, 2005 Mr. Bhatti applied for that position (Bowen Ex. 16, B-70), and was rejected on April 4, 2005 without his application being reviewed (Bowen Ex. 16, B-70).   The successful candidate chosen for this position was an Edward Russino, an American born individual under the age of 40 (DB-18).[12]

When comparing the questionnaires which sought out the experience and qualifications of the two candidates (Bhatti Questionnaire: Bhatti Ex. 15, B-18)(Russino Questionnaire: Bowen Ex. 14, B-67) the following is found:

|  | **Edward Russino**(Bowen Ex.14) | **Teriq Bhatti**(Bhatti Ex.91) |
|---|---|---|
| **Applications (Knowledge)** | No response | 3 of 5 |
| **Experience in Securities and Banking** | No response | 5 plus years |

---

[12] Mr. Bhatti's history shows that he was rejected on April 4, 2005 without his application being reviewed.  It is further stated that he was not reviewed since the recruiter was satisfied with **earlier** applicants. (Emphasis Added)(Bowen Ex. 16, B-69).   The successful hired candidate, Edward Russino is shown by the history of the requisition (Bowen Ex.15, B-69) as having being hired on April 4, 2005. His application (Bhatti Ex. 92, B-33)(Bowen 73-74, B-261-262) shows that he applied the same day April 4, 2005 that it was decided not to review Mr. Bhatti's application.  Query: How could Mr. Bhatti have been rejected based on "earlier applications", if the person hired submitted his application and was hired at the same time Mr. Bhatti was rejected.

| **Proficiency in Finance Calculation** | No response | Proficient |
| **Computer Skills** | No response | 4 of 4 |

In addition, one of the skills necessary for this job was management experience and strong leadership skills (Bowen 70, B-259).  However, there is nothing to indicate any management experience Russino possessed (Bowen 71, B-260).  Mr. Russino's questionnaire (Bowen Ex. 14, B-67) does indicate that "never" provided the required skill "provide investment information and service to clients". It further demonstrated that he had "never" had experience in "client account management".

While the stated reason for hiring Russino was that he was already an options supervisor (Bowen 69-70, B-258-259), Mr. Bhatti had worked as an options supervisor in the past, for almost five years (Bhatti 172, B-242).

## SUMMARY OF ARGUMENT

In this matter Tariq Bhatti, after being "retired" as a manager with J.P. Morgan, when his department was merged and moved out of Delaware, applied for numerous positions which were made known to him because J.P. Morgan's personnel department had matched his qualifications and interests to those available positions. Despite his twenty years of managerial experience, and having been evaluated regularly as "exceeded" his expectations, as evidenced by his evaluations, he did not receive any offers of employment. In numerous instances, as outlined herein, the reasons for his non-selection, as either described by the defendant in its brief, or by its personnel, were characterized by contradictions, inconsistencies, implausibilities, and other weaknesses. Specifically in numerous cases it was noted that supposedly Mr. Bhatti did not have the requisite skills, knowledge, or experience for positions of which his application was never even reviewed, and thus the reasons appear to be *post hoc.*. In many other instances, the person selected for the job did not have the minimum required qualifications, such as education, or experience, where, Mr. Bhatti met or exceeded those minimum qualifications.

It is axiomatic that a victim of discrimination, seeking relief with the courts does not have to have direct evidence of discrimination, but may prove discrimination through circumstantial evidence, commonly referred to as a "Pretext" analysis. Given the inconsistencies, and contradictions in the defendant's claimed reasons for not hiring Mr. Bhatti, it is reasonable that a fact finder, here, a jury, could conclude that Mr. Bhatti's age, 62 years, or his national origin and religion, Pakistani and Muslim, provided a basis on numerous occasions for not rehiring him. This is especially true since numerous

22

persons in the department in which he acted as a manager, and where his manager and/or his direct report, having the same knowledge and experience as Mr. Bhatti, were in fact rehired by J.P. Morgan.    Many of the rehires were moved to the same department to which Mr. Bhatti applied, but was denied employment because he lacked the skill, knowledge, or experience.

## I. THE LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT.

Summary Judgment is governed Rule 56, F.R.C.P, and this may be ordered only when:

> "...the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, Federal Rules of Civil Procedure.

The United States Supreme Court has determined that "...if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), a genuine issue of fact exists. The burden of proving that there is no issue of material fact remains at all times with the moving party, here the Defendant, even if that party would not have the burden of proof at trial. Finch v. Hercules, Inc., 865 F.Supp. 1104, 1117 (D. Del. 1994) citing Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.) en banc, cert. denied, 483 U.S. 1052 (1987).

The Court must examine all the evidence, in a light most favorable to the non-moving party. Finch at 1118, citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert denied, 429 U.S. 1038 (1977). If there is any dispute concerning issues of material fact, the non-moving party's version, must be presumed correct. Kodak Co. v. Image Technical Services, Inc., 504 U.S. - -, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Even where certain facts are undisputed "...summary judgment may not be granted where there is disagreement over inferences that can be reasonably drawn from those facts." In Re: Unisys Savings Plan Litigation, 74 F.3d 420, 433 (3d Cir. 1996). It remains the province of the fact finder to resolve any issues of

believability and the weight of the evidence. Id., at ftn. 10.  Here, the plaintiff is to receive the benefit of the doubt whenever his assertions conflict with those of the defendants' and have all inferences drawn in his favor. Id., at ftn. 10.

II.   **IN ORDER TO SURVIVE A MOTION FOR SUMMARY A PLAINTIFF, CLAIMING EMPLOYMENT DISCRIMINATION, NEED NOT HAVE DIRECT EVIDENCE OF DISCRIMINATION BUT MAY PROVE HIS CASE BY CIRCUMSTANTIAL EVIDENCE DEMONSTRATING PRETEXT.**

A.    <u>**The Applicable Law of Discrimination:**</u> The claims in this matter are brought for violations of Title VII, 42 <u>U.S.C.</u> §2000e, alleging discrimination based upon national origin and/or religion.   Alternatively, the plaintiff claims discrimination based upon his age, under the "ADEA", 29 <u>U.S.C.</u> §623 et.seq.

In order to establish a claim under Title VII, a plaintiff must establish a prima facie case, essentially, that he was a member of a protected class, here, a foreign born American citizen, of Pakastani Origin and an individual of the Muslim faith.   Secondly, he must establish that he was qualified for the positions for which he applied, and, that he was not hired for the positions for which he was qualified "Under circumstances that give rise to an inference of unlawful discrimination." <u>Waldron v. SL Industries, Inc.</u>, 56 F.3d 491, 494 (3d Cir. 1995)(citing: <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

The Third Circuit has recognized generally that matters involving age discrimination can be demonstrated under the *McDonald Douglas* framework, as described by the United States Supreme Court. <u>McDonald Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See:  <u>Reeves v. Sanderson Plumbing Products, Inc.</u> 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); as explained in <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 338 n.3 (3d Cir. 2002).

To demonstrate a prima facie case of age discrimination, similar proof is required that the plaintiff was a member of a protected class, over forty years of age, was

26

qualified for the position in question, and suffered an adverse employment decision. Showalter v. University of Pittsburgh Med. Ctr., 190 F.3d 231, 234 (3d Cir. 1999). The sometimes mentioned fourth element, that the plaintiff must prove that he was replaced by somebody younger than him is no longer a requirement. O'Connor v. Consolidated Coin Caterers Corp. 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)(Justice Scalia writing that such a requirement "...lacks probative value (and) the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonald Douglas prima facie case."). See also: Pivirotto v. Innovative Systems, Inc., 191 F.3d 344 (3d Cir. 1999); Fitzpatrick v. National Mobile Television, 364 F.Supp.2d 43 (N.D.Pa. 2005).

It is now well recognized, especially in discrimination matters, that plaintiffs rarely if ever have direct evidence of discrimination so as to bring a "mixed motive" case under Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)(recognizing that employees bringing such a suit face difficulty in amassing direct evidence of discrimination). As the Third Circuit has stated:

> "We reemphasize that we do not require direct proof of age discrimination, because it is often unavailable or difficult to find. Dillon v. Coles, 746 F.2d at 1003. As the Supreme Court explained, '[t]here will seldom be eyewitness testimony as to the employer's mental processes.' Aikens, 460 U.S. at 716, 103 S.Ct. at 1482. This is true in part because age discrimination, like other forms of discrimination is often subtle Accord: Lamontagne v. American Convenience Products, 750 F.2d 1405, 1410 (7th Cir. 1984). In addition '[e]ven an employer who knowingly discriminates on the basis of age may leave no written records revealing the forbidden motive and may communicate it orally to no one.' Id." Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 899 (3d Cir. 1987) cert. dismissed 483 U.S. 1052 (1987).

It was further recognized that "...discrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered." Jackson v. University of Pittsburgh, 826 F.2d 203, 236 (3d Cir. 1987). Thus, in order to assure that the plaintiff has his day in court, despite the unavailability of direct evidence, the Third Circuit has, as have other Courts, developed a "sensible and orderly" method of evaluation using circumstantial evidence. Smith v. Borough v. Wilkinsburg, 147 F.3d 272, 278 (3d Cir. 1998). This analysis is known as a **pretext** analysis.

At this stage, the plaintiff is left to use circumstantial evidence to demonstrate a pretext, since it has never been required that a plaintiff to present direct proof of discrimination, Abramson v. William Patterson College of New Jersey, 260 F.3d, 265, 278 (3d Cir. 2001), and has recognized:

> "The type of evidence required in a pretext case is not overt or '[e]xplicit evidence' of discrimination- -i.e. the 'smoking gun,'" as it is in a Price Waterhouse case. Ezold, 983 F.2d at 523; See also Griffiths, 988 F.2d at 470 Rather what is required has been termed "circumstantial" evidence by the Courts or 'competent' evidence that the presumptively valid reason [ ] for [the alleged unlawful employment action] [was] in fact a cover up for a...discriminatory decision.'" Armbruster v. Unysis Corporation, 32 F.3d 768, 782 (3d Cir. 1994).

Since "...discrimination is 'often simply masked in more subtle forms' it is often difficult to discern discriminatory animus. Aman v.Cort Furniture Rental Corporation, 85 F.3d 1074, 1082 (3d Cir. 1996)" Abramson v. William Patterson College of New Jersey, supra, at p. 278, (recalling that the Supreme Court has recognized that employers who do discriminate will almost never announce a discriminatory animus so as to provide

28

direct evidence of discriminatory animus to the employees or the courts). Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999).

Disputed factual matters, in and of themselves, may justify a denial of the defendant's motion for summary judgment.   A jury's disbelief of the defendant's argument, together with the elements of a prima facie case suffices to show intentional discrimination. Price v. Delaware Department of Corrections, 40 F.Supp.2d 544, 554-555 (D.Del. 1999), citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 512, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), holding that such disbelief when accompanied by suspicion of "mendacity" will suffice the requisite proof of intentional discrimination. Hicks, supra 509 U.S. at 511.   A plaintiff may first demonstrate that a defendant's alleged non-discriminatory reasons for its actions are "unworthy of credence" Fuentes v. Perskie, 42 F.3d 759, 765 (3d Cir. 1994) by convincing the jury that the defendant's explanation is not to be believed.

Proof of the defendant's proffered claims for legitimate non-discriminatory reasons for an adverse employment action may be disposed of indirectly by showing that such reasons are not worthy of belief. Roebuck v. Drexel University, 852 F.2d 715 (3d Cir. 1988); Chipolloni v. Spencer Gifts, Inc. 814 F.2d 893, 897 (3d Cir. 1987).

> "If the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment, the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case...". Fuentes v. Perskie, supra at p. 764.

To permit this matter to be dismissed on the motion for summary judgment in the face of such obvious conflicts of fact, would be inconsistent with St. Mary's Honor

Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407(1993), Sheridan,

supra at p. 1071, citing Hicks at 509 U.S. 511.

> "The shifting of burdens of proof set forth in McDonald-Douglas are
> designed to assure the plaintiff has a day in Court despite the
> unavailability of direct evidence." Transworld Airlines, Inc. v. Thurston, 469
> U.S. 11, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), cited with approval in
> Sheridan, supra at p. 1071 (Emphasis Added).

Thus, the Supreme Court has stated, if a prima facie case of discrimination is

established, and is unexplained, or could be disbelieved, the wrongful acts:

> "...`are more likely than not based on consideration of impermissible
> factors'...".    Furnco Construction Corp. v. Walters, 438 U.S. 567, 577,
> 98 S.Ct. 943, 57 L.Ed.2d 957 (1978), cited with approval, Sheridan,
> 101 F.3d 1061, 1071 (3d Cir. 1996 (en banc).

The U.S. Supreme Court has rejected the discredited doctrine of the necessary

proof of "pretext plus".  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133,

148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), where it held that the fact-finder's

disbelief of an employer's explanation in conjunction with proof of the elements of a

prima facie case, would be enough for a fact-finder to infer the ultimate fact of

discrimination.  Reeves v. Sanderson, supra, 530 U.S. at 146-147. See also: Fasold v.

Justice, 409 F.3d 178, 186 (3d Cir. 2005).   Thus, a plaintiff, in an employment

discrimination case, and especially in an age discrimination case, need not provide any

direct evidence of discrimination, such as statements that indicate discriminatory

animus.

Thus, evidence of pretext, sufficient to withstand a motion for summary judgment,

can be shown by a mere combination of the evidence sufficient to demonstrate a prima

facie case, and by circumstantial evidence showing:

> "This proof of pretext then *may* be combined by the fact-finder with the evidence used to support the plaintiff's *prima facie* of age discrimination, and from this union, the fact finder *may* reasonably infer that the defendant discriminated against the plaintiff because of his age. <u>Hicks</u>, 509 U.S. at 511, 113 S.Ct. at 2749." <u>Ryder v. Westinghouse Elec. Corp.</u>, 128 F.3d 128, 136 (3d Cir. 1997)

It has long been recognized that use of wholly subjective criteria may act as a subterfuge for discriminatory animus. <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1991).   The use of subjective criteria makes it particularly easy for an employer to mask discrimination. <u>Ellis v. United Airlines, Inc.</u>, 73 F.3d 999, 1005 n.8 (10th Cir. 1995) (cert. denied 517 U.S. 1245), and the use of subjective selection criteria may in itself permit a reasonable jury to conclude that the selection was conducted in a discriminatory manner. <u>Lockridge v. Board of Trustees of the University of Arkansas</u>, 294 F.3d 1010, 1017 (8th Cir. 2002). The use of subjective criteria such as "interpersonal skills", "ability to network", "adaptability", and "flexibility" has been held to specifically require an evaluation of the credibility of the proffer of subjective criteria. <u>Medina v. Ramsey Steel Company, Inc.</u>, 230 F.3d 674, 681-82 (5th Cir. 2001), recognizing:

> "[D]instinguishing legitimate employer decisions based entirely on subjective criteria and those in which **subjective criteria serves as a pretext for discrimination** can only be made by weighing the employer's credibility." <u>Medina</u>, supra, at p. 681 (Emphasis Added) (holding that an employer cannot defeat an employee's claim using summary judgment, by relying upon subjective employment criteria).

To discredit the employer's articulated reasons, Mr. Bhatti need not have produced evidence that necessarily leads this Court to the conclusion that the employer acted for a discriminatory reason. <u>Sempier v. Johnson and Higgins</u>, 45 F.3d 724, 732

(3d Cir. 1995).  Nor does Mr. Bhatti need to produce additional evidence beyond his prima facie case. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  What is required is that Mr. Bhatti present evidence, which contradicts J.P. Morgan's proffered legitimate reasons, such that a reasonable fact finder could rationally find J.P. Morgan's reasons are characterized by weakness, implausibilities, inconsistencies, or contradictions, making them "unworthy of credence" and hence able to infer that the proffered non-discriminatory reason was a pretext for discrimination. Fuentes v. Perskie, supra, at p. 764-765.

B.    **Demonstrated "Pretext"**: Turning to the specific positions for which Mr. Bhatti was rejected, numerous of those positions have demonstrated evidence of the requisite inconsistency, contradictions and weaknesses, which would make the stated reasons for the rejection of Mr. Bhatti "unworthy of credence".  Numerous courts have held where unqualified persons are selected over a victim of discrimination, a fact finder or jury could find evidence of pretext, and thus discrimination.  In Luna v. City & County of Denver, 948 F.2d 1144 (10th Cir. 1991) the Court held that an aggrieved plaintiff is capable of proving pretext "...by showing that the employer has promoted white employees who lack qualifications the employer relies upon..." (citing: Patterson v. McLean Credit Union, 491 U.S. 164, 217, 109 S.Ct. 2363, 105 L.Ed.2d, 132 (1989)[Brennan J. concurring in part] quoting *McDonald Douglas* 411 U.S. at 804-805, 93 S.Ct. at 1825). In Danville v. Regional Lab Corporation, 292 F.3d 1246, 1252 (10th Cir. 2002), the Circuit Court reversed a granting of summary judgment noting that when reviewing the evidence in a comparison of the qualifications of the plaintiff, as compared to the candidates selected for a position:

32

> "...one could draw a reasonable inference that (the selected candidates) qualifications were unreasonably inflated by the committee, while the plaintiff's were unreasonably denigrated." Danville v. Regional Lab Corporation, supra, at p. 1252

The Court then concluded that when not using objective standards (as, in this case a lack of leadership) "...discrimination is more likely where subjective rather than objective criteria are used to reject a candidate's application." (Id. at p. 1252).

Where there is a clear divergence of qualifications it was held:

> "If a fact finder can conclude that a reasonable employer would have found the plaintiff to be significantly qualified for job, but his employer did not, the fact finder can legitimately infer that the employer consciously selected a less qualified candidate--something that employers do not usually do, unless some other strong consideration, such as discrimination enters into the picture." Aka v. Washington Hospital Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998)(en banc)(footnote omitted).

Similarly, in Morris v. Communications Satellite Corporation, 773 F.Supp. 490, 494 (D.DC. 1991) the Court found that a successful applicants qualifications, when compared to a plaintiff complaining of discrimination it is shown that there was a "...failure to meet minimum qualifications for the positions...", (Id,at p. 494) there was a basis for denying an employer defendant's motion for summary judgment.

Turning to each position individually as follows:

**1.    JOB: OPERATIONS SUPERVISOR**
**Requisition No. 030011636 (p. 8, supra)**

**Defendant's Reasons:**

--Mr. Bhatti had no experience in loan trading (DB-16)

**Plaintiff's Evidence of Pretext:**

--Loan trading not listed as a required skill (Gosa Ex. 1, Gosa 13, B-71, 90) thus *post hoc*.

33

--Selectee he did not have required minimum supervisory experience (Gosa Ex. Nos. 8 & 9, B-77, 83.   ).

--Selectee he did not have required operations experience (Gosa Ex. Nos. 8&9, B-77, 83)

2.    **JOB: OPERATIONS UNIT MANAGER**
      Requisition No. 030013403 (p. 10, supra)

**Defendant's Reasons:**

--Manager Boris interviewed plaintiff in past and was not interested (DB-14)

--Selectee had securities experience.(DB-14)

**Plaintiff's Evidence of Pretext**:

--Bhatti denied ever being interviewed by Boris (Bhatti 146-147, B-233-238)

--Financial experience not required for job (Mallon Ex. 2/D379, B-203)

--Selectee did not have the required skills in management (Bowen Ex. 4, Bowen 64-66, B-44).

3.    **JOB: PRIVATE BANKING FEE BILLING TEAM LEADER**
      Requisition No. 030013375 (p. 12, supra)

**Defendant's Reasons:**

--No functional experience/no billing experience (DB-11)

**Plaintiff's Evidence of Pretext**:

--Mr. Bhatti had prior billing experience (Bhatti 67, 139, B-233, 238)

--Selectee did not meet minimal qualifications required, Skill No. 5 of establishing work priorities (Harmon II, Ex. Nos. 3 & 4, B-112-116)

--Selectee did not have required college degree (Harmon I Ex. 2, 22-24, B-94).

34

--Selectee had less than the required supervisory experience (Harmon I Ex. 2, 26 & 28, B-94).

### 4.    JOB: TRADER SUPPORT SPECIALIST
Requisition No. 030018647 (p. 14, supra)

**Defendant's Reasons:**

--Mr. Bhatti did not have all the required skills (DB-19)

**Plaintiff's Evidence of Pretext**:

--Bhatti application never reviewed (Bowen 49, B-251).

--Bhatti possessed 12 of the 17 required skills (Bowen Ex. 7/D1142, B-58)

--Selectee did not have the required operations experience and securities experience (Bhatti Ex. 19, B-19).

--Selectee's most recent job experience was waiting tables (Bhatti Ex. 19, B-19), as compared to Mr. Bhatti's 20 years of experience in the banking industry.

### 5.    JOB: MANAGER PRIVATE BANKING RECONCILIATIONS
Requisition No. 04000502 (p. 16, supra)

**Defendant's Reasons:**

--Lack of functional experience/project management experience (DB-17)

--Lacked leadership skills (DB-17)

**Plaintiff's Evidence of Pretext**:

--Mr. Bhatti had between 1 and 3 years project management experience (Bhatti Ex. 73, Q #4/D1031, B-29) Selectee had only 1 year experience as   a   project manager (Harmon III, 66, B-306).

--Mr. Bhatti had 5+ years of supervisory experience (Bhatti Ex. 73, Q ? No. 1 & 2, B-29); Mr. Bhatti's supervisors highly complimented his leadership skills  (Kenney Ex. Nos. 1 & 2, B-183).

35

### 6.    JOB: PRIVATE BANKING FEE BILLING QUALITY CONTROL SPECIALIST
### Requisition No. 040012913 (p. 18, supra).

**Defendant's Reasons:**

--Lacked relevant skills/aptitude/experience (DB-13)

--Selectee had billing experience (Harmon I, 8, B-283)

**Plaintiff's Evidence of Pretext**:

--Opposite lacked relevant skills/aptitude/experience (defendant's brief does not specify what skills/aptitude/experience Mr. Bhatti lacked).

--Mr. Bhatti had billing experience (Bhatti 67, B-233)

--Both parties.  Equal in response to questionnaires except Mr. Bhatti was more proficient in meeting deadlines (Harmon I, Ex. Nos. 1 & 3, B-91).

### 7.    JOB: OPTIONS OPERATION SUPERVISOR
### Requisition No. 050013769 (p. 19, supra)

**Defendant's Reasons:**

--Lacked relevant skills/aptitude/experience (DB-13) (without specifying what relevant skills/aptitude/experience were lacking)

**Plaintiff's Evidence of Pretext**:

--Mr. Bhatti's application was not even reviewed (Bowen Ex. 16, B-70)

--Mr. Bhatti had "current" experience in providing investment information service to clients, as well as managing client accounts requires skills, which the selectee had "never" used. (Bhatti Ex. 91, Bowen Ex. 14, B-30, 67).

In comparing the defendant's alleged non-discriminatory rationales for denying Mr. Bhatti the jobs and for hiring the persons they did, it seems that the positions described here fall in to one of two categories. First, the candidates selected did not

36

meet the minimal posted/stated qualifications for the job (No. 1, Operations Supervisor, No. 2, Operations Unit Manager, No. 3, Private Banking Fee Billing Team Leader, No. 4, Trader Support Specialist, No. 5, Manager Private Banking Reconciliation, No. 6 Private Banking Fee Billing Quality Control Specialist , and No. 7, Options Operations Supervisor).  Alternatively the described positions clearly demonstrate that Mr. Bhatti was more qualified than the persons selected (No. 2, Operations Unit Manager and No. 6 Private Banking Fee Billing Quality Control Specialist).

Since in several cases Mr. Bhatti's application was not even reviewed, (No. 2 Operations Unit Manager, No. 4 Trader Support Specialist, and No. 7, Options Operation Supervisor).   Thus, any claim that Mr. Bhatti did not have the necessary qualifications, skill or experience for those positions would clearly seem to be an attempt at *post hoc* rationalization.  Evidence of *post hoc* rationale, for a discriminatory action, is in of itself evidence of pretext. Abramson v. William Patterson College of New Jersey, 260 F.3d 263 (3d Cir. 2001); Waldron v. SL Industries, Inc., 56 F.3d 491 (3d Cir. 1995).

Accordingly, there are substantial issues of material fact in this matter.  First, in several instances, the defendant has alleged non-discriminatory rationales, as express in its brief or by its personnel, appear to be *post hoc*, since, for those positions Mr. Bhatti's applications were not even reviewed.  In other cases, where his applications were reviewed and he was denied employment, in those cases the person selected did not have or meet the minimum required qualifications for those positions.  Thus, the defendant's alleged non-discriminatory reasons are characterized by weaknesses, implasibilities, inconsistencies, and contradictions, making them "unworthy of credence"

37

and providing sufficient evidence to resist and deny the defendant's motion for summary judgment. <u>Fuentes v. Perskie</u>, supra, at p. 764-765.

## CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment should be denied and this matter set for trial on the merits.

Respectfully Submitted,

GARY W. ABER (DSB #754)
Aber, Goldlust, Baker & Over
First Federal Plaza, Suite 600
702 King Street, P.O. Box 1675
Wilmington, DE  19899
302-472-4900
Attorney for Plaintiff

DATED:  November 9, 2007

39

## CERTIFICATE OF SERVICE

This certifies that the undersigned served two copies of the attached pleadings by hand delivery to the below-named Counsel, on November 9, 2007:

Teresa A. Cheek, Esquire
Young, Conaway, Stargatt & Taylor
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899


_____ /s/ Melissa A. Chionchio_____
Melissa  A. Chionchio
Secretary to
Gary W. Aber, Esquire