IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TARIQ BHATTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-690-MPT |
| | ) |
| J.P. MORGAN CHASE, a Delaware corporation, | ) ) ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Teresa A. Cheek, Esquire (No. 2657)
Margaret M. DiBianca (No. 4539)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6676; (302) 571-5008
Facsimile: (302) 576-3286
Attorneys for Defendant

DATED: November 26, 2007

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT OF FACTS ..................................................................................................... 1

ARGUMENT .......................................................................................................................... 4

    I.    THERE IS INSUFFICIENT EVIDENCE FOR A REASONABLE JURY TO DISCREDIT THE LEGITIMATE BUSINESS REASONS IDENTIFIED BY JPMC DECISION MAKERS FOR NOT HIRING BHATTI ....................................................... 4

        A.    Operations Supervisor in Non-Domestic Loan Trading (Req. No. 030011636) ............................................................. 6

        B.    Operations Unit Manager, Collateral Core Services (Req. No. 030013403) ............................................................. 7

        C.    PBFB Team Leader (Req. No. 030013375) ............................................................. 8

        D.    Trader Support Specialist (Req. No. 030018647) ............................................................. 10

        E.    Manager, Private Banking Reconciliations & T&I Journal (Requisition No. 040000502) ............................................................. 11

        F.    PBFB Quality Control Specialist (Req. No. 040012913) ............................................................. 12

        G.    Options Operations Supervisor Associate (Req. No. 050013769) ............................................................. 12

CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Aka v. Washington Hospital Center*,
   156 F.3d 1284 (D.C. Cir. 1998) .................................................................................... 5, 7

*Brewer v. Quaker State Oil Ref. Corp.*,
   72 F.3d 326 (3d Cir. 1995)............................................................................................... 4

*Elwell v. PP&L, Inc.*,
   47 Fed. Appx. 183 (3d Cir. 2002) ................................................................................... 7

*Ezold v. Wolf, Block, Schorr and Solis-Cohen*,
   983 F.2d 509 (3d Cir. 1992)............................................................................................. 4

*Fitzpatrick v. National Mobile Television*,
   364 F. Supp. 2d 483 (E.D. Pa. 2005)............................................................................. 12

*Lewis v. Del. Dep't of Pub. Instruction*,
   948 F. Supp. 352 (D. Del. 1996) ................................................................................ 8, 13

*Miller v. Del.*,
   158 F. Supp. 2d 406 (D. Del. 2001) .............................................................................. 10

*Narin v. Lower Merion Sch. Dist.*,
   206 F.3d 323 (3d Cir. 2000)............................................................................................. 9

*Ostapowicz v. Johnson Bronze Co.*,
   541 F.2d 394 (3d Cir. 1976), cert. denied,
   429 U.S. 1041, 50 L. Ed. 2d 753 (1977)......................................................................... 4

*Robinson v. Dalton*,
   107 F.3d 1018 (3d Cir. 1997).......................................................................................... 4

*Rodriguez v. Sears Roebuck de P.R., Inc.*,
   432 F.3d 379 (1st Cir. 2005) ......................................................................................... 10

## STATEMENT OF FACTS

Plaintiff Tariq Bhatti's statement of facts includes several inaccurate statements that are unsupported by the record. At various points in his brief, Bhatti demonstrates a fundamental misunderstanding of the online system that he used to apply for the positions at issue here. For example, at page 3 of his brief, Bhatti states that after he retired from his position with defendant JP Morgan Chase ("JPMC"), JPMC "solicited" him for numerous positions. In fact, as explained in detail in JPMC's opening brief, the online system created an interactive process that preceded the submission of applications for vacant positions. In October 2002 (almost a year after Bhatti's last day of work at JPMC), Bhatti enrolled in the system by answering questions to create a profile of his job preferences and skills. (Bhatti 128-129 (C12-13).) The system compared the characteristics of new vacancies with the characteristics Bhatti had created in his profile and sent him notices of vacancies that were possible matches with his preferences. (A385-86; A301-02; A276-77.) Bhatti reviewed the notices and decided whether to apply based on his own judgment of whether he was qualified for and interested in the positions electronically linked to the notices. (Bhatti 49-50 (A303-04).)

Bhatti spends pages 3 to 6 of his brief listing comments found in his performance evaluations. If the evaluations had been part of the record reviewed by recruiters and hiring managers, they would of course be relevant and admissible, but there is no evidence that the recruiters and hiring managers making the decisions in issue reviewed Bhatti's performance evaluations, or that they knew anything about Bhatti's performance ratings. There is no evidence that Bhatti ever provided copies of his performance reviews to recruiters or hiring managers, and he does not claim to have done so.

Bhatti argues nevertheless at page 7 of his brief that "[t]ypically an applicant's recent performance review would be requested and reviewed." However, William Kenny, the witness

whose testimony Bhatti cites in support of this proposition, was describing what he himself typically did when the applicant was an internal candidate. (B316-317.) Once Bhatti was no longer receiving severance pay from JPMC (and he had taken a lump sum payment in March 2003), he was considered an external candidate, not an internal candidate. (Harmon I 77-78 (C25-26); Gosa 20-21 (C41-42).)  Hiring managers did not have access to the Human Resources database that contained performance evaluations. (Treon 13-14 (C38-39); Gosa 27 (C45).).

JPMC's hiring software did not make judgment calls about whether an individual was qualified for a vacancy; it was up to each potential applicant to review job listings and decide whether to apply. (Harmon I at 8-16 (A387-95).)  The system collated the electronic applications as they were submitted online so that the recruiter and hiring manager could view the list of applicants and click on the links for each candidate to review their applications. (Treon 9 (C37); Bowen 6-7 (A423-24); Harmon I 78-86 (C26-34); Gosa 21-22, 25, 30 (C42-43, 44, 46); Gosa Ex. 5 (C47-49).) Submission of an application did not guarantee that the application would be reviewed by the recruiter and the hiring manager; applications were sometimes submitted after an interview list had been compiled or the successful applicant had been identified. (Harmon I 83, 89 (C31, 35).)

Bhatti has withdrawn his contentions that he was wrongfully denied the time-barred[1] and cancelled[2] positions. Bhatti has also dropped his contention that he was wrongfully denied the

---

[1] The time-barred positions are: Req. No. 020007973 (Private Banking Security International Settlements Manager); Req. No. 030000746 (Treasury Operations Supervisor (Money Market)); Req. No. 030000883 (Operations Unit Manager); Req. No. 030001884 (Operation Unit Manager); Req. No. 030001938 (Operations Document Manager); Req. No. 030002944 (Operations Unit Manager); Req. No. 030004321 (USD Clearing Product Manager); Req. No. 030006850 (Processing Manager); Req. No. 030007984 (Operations Specialist); Req. No. 030008529 (Invoice Processing Specialist); Req. No. 030009137 (Trade Support Specialist); Req. No. 030009451 (Private Banking Securities Operations / Settlements Team Leader). Summary judgment in favor of JPMC should be entered as to each of these positions.

following positions: Req. No. 030010773 (IBO NA Credit Markets Financial Control Officer); Req. No. 030011730 (Account Transition Specialist); Req. No. 030015978 (Private Banking Client Statements Q/A and Rendering Manager); Req. No. 030018134 (Collections Manager, Bucket 5); Req. No. 030021095 (Compensation Manager); Req. No. 030021187 (IB Operations Unit Manager for the Collateral Core Services Teams); Req. No. 030021768 (Senior Securities Specialist); Req. No. 030022719 (Operations Specialist); Req. No. 040008129 (Private Banking Security International Settlement Manager); Req. No. 040010298 (Reconciliation Control Unit Manager); Req. No. 040018795 (Trade Support Specialist); Temporary Assignment as PB Fee Billing Processing. As to all the foregoing positions, the Court should enter summary judgment in favor of JPMC on the ground that Bhatti has withdrawn his claims.

With regard to the remaining 7 positions, Bhatti's claims regarding pretext have insufficient support in the record and he has ignored the evidence that undercuts his claims, as described more fully in the argument section of this brief.

---

[2] The cancelled positions are: Req. No. 030004523 (Operations Supervisor); Req. No. 030004926 (Private Banking Fee Billing Manager); Req. No. 030007982 (Operations Supervisor); Req. No. 030008900 (Team Leader / Loan Processing); Req. No. 030010981 (Operations Unit Manager); Req. No. 030011344 (Operations Unit Manager); Req. No. 030018111 (Operations Supervisor); Req. No. 030018349 (IBO-Corporate Actions Specialist); Req. No. 030019098 (IBO Prime Brokerage Settlement Specialist); Req. No. 030019100 (IBO Prime Brokerage Quality Assurance and Control); Req. No. 030020493 (Operations Unit Manager); Req. No. 030021246 (Trade Support Manager - Chase Home Finance); Req. No. 030021842 (Operations Unit Manager); Req. No. 030021888 (Operations Supervisor); Req. No. 030022211(Operations Section Manager); Req. No. 040002506 (Operations Unit Manager); and Req. No. 040002783 (Private Banking Security International Settlement Manager).

**ARGUMENT**

I. **THERE IS INSUFFICIENT EVIDENCE FOR A REASONABLE JURY TO DISCREDIT THE LEGITIMATE BUSINESS REASONS IDENTIFIED BY JPMC DECISION MAKERS FOR NOT HIRING BHATTI.**

Bhatti claims that he was discriminated against based on his race (Asian), his national origin (Pakistani) and his age (he was in his early sixties during the period when he was applying for work with JPMC) with regard to seven positions for which he was not hired.[3] JPMC has identified legitimate reasons for each decision not to hire Bhatti. The crux of this motion is whether Bhatti has identified sufficient evidence to persuade a reasonable jury that those reasons are false. Bhatti must identify evidence that "cast[s] doubt on the employer's stated reasons by identifying such weaknesses, inconsistencies, incoherencies, or contradictions" in the proffered reasons that a reasonable fact finder "could rationally find them unworthy of credence." *Brewer v. Quaker State Oil Ref. Corp.,* 72 F.3d 326, 331 (3d Cir. 1995). When reviewing the record for evidence of pretext, the Court should "focus on the qualification the employer found lacking in determining whether non-members of the protected class were treated more favorably." *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992).

Bhatti argues that, at least on paper, his qualifications were stronger in some aspects than those of the successful applicants, and that this is evidence of pretext. Bhatti relies in part on *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998), but he has misquoted it. The correct text, which provides little support to Bhatti's argument, is as follows:

---

[3] Although Bhatti states that he is, as a Muslim, a member of a protected class, neither his charge of discrimination (D00642 (B6)) nor his second amended complaint (Dkt. 20) includes a claim of religious discrimination. Such a claim would in any event be barred by the doctrine of exhaustion of administrative remedies. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976), cert. denied, 429 U.S. 1041, 50 L. Ed. 2d 753 (1977) ("The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC [or PHRC] and the receipt of the Commission's statutory notice of the right to sue.").

> In cases involving a comparison of the plaintiff's qualifications and those of the successful candidate, we must assume that a reasonable juror who might disagree with the employer's decision, but would find the question close, would not usually infer discrimination on the basis of a comparison of qualifications alone. In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call. ... But this does not mean that a reasonable juror would in every case defer to the employer's assessment. ... If a factfinder can conclude that a reasonable employer would have found the plaintiff to be **significantly better qualified** for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate--something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

156 F.3d at 1294 (emphasis added, citations and footnote omitted). The court noted, however, that employers may select candidates who on paper appear less qualified for reasons that appear during the interview. 156 F.3d at 1294, n. 10.

JPMC submits that the reasons that its decision makers articulated are strong, appropriate, sensible and consistent, and that nothing that Bhatti has pointed to as evidence of pretext undermines these rationales. In one case, Bhatti was not selected because he had told the recruiter he was not interested in entry level jobs, and the position in question, Trader Support Specialist, was an entry-level job. In two cases, Non-Domestic Loan Trading Operations Supervisor and Private Banking Fee Billing Team Leader, the selectees were promoted from within and were more knowledgeable than Bhatti about the technical aspects of the job. In another, Private Banking Fee Billing Quality Control Specialist, the selectee was already working on the team in a related function and had better educational credentials than Bhatti. In one case, Collateral Core Services Teams Operations Unit Manager, the hiring manager had formed a negative impression of Bhatti the previous year after interviewing him for a similar position. In the remaining two positions, Manager Private Banking Reconciliations & T&I Journal and Options Operations Supervisor Associate, the selectees unarguably had more

extensive, recent and directly related experience than Bhatti. Finally, for some of the positions, the selectees (Emma Graves-Davie and Fitzpatrick Nedd) were themselves minority candidates, undermining Bhatti's claims that the decision makers were motivated by illegal bias against minority group members.

JPMC addresses Bhatti's contentions in greater detail below.

### A.   Operations Supervisor in Non-Domestic Loan Trading (Req. No. 030011636)

Hiring manager Shayla Gosa testified that she promoted Steve Jones rather than hiring Bhatti for the position of Operations Supervisor in the Non-Domestic Loan Trading unit because Jones was working in the small Loan Trading operations unit that he was promoted to supervise, and she felt it was less risky to rely on his ability to learn management skills than it was to rely on Bhatti's ability to learn the loan trading business. (Gosa Dep. 28 (A457), 58-59 (A459-60), 70-71, 74 (A462-64); (D00321 (A80).)

Bhatti argues that this explanation is not believable because: (1) the job description allegedly did not list loan trading skills as a requirement; (2) Jones allegedly did not have the alleged minimum required supervisory experience; and (3) Jones allegedly did not have the alleged required operations experience. (Ans. Br., 33-34, 37.)

Bhatti is incorrect on all three counts. First, the job description stated that the position's duties included supervising the loan trading unit and that loan or trading operations was desired. (D00302 (A87).) Since the function of the position was supervision of a loan trading operations unit, knowledge of loan trading operations would obviously be more helpful than knowledge of some other kind of trading operations. As the *Aka* court observed: "[R]easonable employers do not ordinarily limit their evaluation of applicants to a mechanistic checkoff of qualifications required by the written job descriptions. Obviously, they will take additional credentials into

account, if those credentials would prove useful in performing the job." 156 F.3d at 1297, n. 15. Bhatti's lack of technical knowledge was a legitimate reason for rejecting his application, *Elwell v. PP&L, Inc.,* 47 Fed. App. 183, 188 (3d Cir. 2002).

Second, contrary to Bhatti's argument, the job description does not specify a requirement for any minimum amount of supervisory experience. (D00302 (A87).)

Third, contrary to Bhatti's argument, there is no dispute that Jones had seven years of loan trading operations experience. (D0321 (A80).)

Bhatti argues that an outside observer looking at documents would have no way of knowing why Bhatti was not selected for the position, given his trading and management experience. However, an outside observer looking at the documents would see that Jones had several years of experience on the JPMC loan trading team and that Bhatti had none, and that this was a low-level supervisory position in the loan trading unit.

    **B.**    **Operations Unit Manager, Collateral Core Services (Req. No. 030013403)**

With regard to the position of Operations Unit Manager for the Collateral Core Services Teams, Bhatti argues that there is evidence of pretext because the successful applicant, Marie Scott, did not meet the minimum requirement for management experience for this position. However, Bhatti was not a perfect fit for the position, either. It is undisputed that Bhatti had no experience in the management of collateral, and this position would have required him to supervise a four-person team engaged in management of collateral. (D00389 (A103); D00378-379 (A104-05); Bhatti Dep. 145 (A314).) In contrast, Scott had 10 years of credit risk management experience with JPMC and had reached the level of Vice President, which is a higher management level than Bhatti's former rank of Associate. (D00962-968 (A146-52); Bowen Dep. Ex. 5 (A433); Kenny Dep 4 (C21).) Superior experience is a legitimate business

reason for a hiring decision, and Scott's experience was better than Bhatti's for this position. *See Lewis v. Del. Dep't of Pub. Instruction*, 948 F. Supp. 352, 361 (D. Del. 1996) (better qualifications provided legitimate reason for promotion decision).

Moreover, Bhatti's credentials are of questionable relevance in connection with this application because hiring manager Ted Boris rejected Bhatti's application because he did not like Bhatti, explaining in the entry he made in the recruiting system at the time of the rejection: "I am not interested in this individual. We interviewed him last year for a lower level position and were not impressed. He had issues with the rejection and handled it in a non-professional way. Please reject." (D00377 (A122).) Bhatti notes that he had no recollection of interviewing with this manager, but Bhatti's failure to recall the interview does not mean it did not happen. (Ans. Br., 12.) There is no evidence to rebut the hiring manager's statement regarding the reason for his decision to reject Bhatti. *See Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 328, 333 (3d Cir. 2000) (poor performance at interview was legitimate reason for refusal to hire).

### C. PBFB Team Leader (Req. No. 030013375)

Stacey Arnold interviewed Bhatti for the position of Private Banking Fee Billing Team Leader and advised him of her opinion that his "skill set may be better suited for another opportunity within JP Morgan." (D00843 (A123); Treon Ex. 4 (A413-16); Bhatti Dep. 68-69 (A305-06); D01115 (A119).) Bhatti had no experience in Private Banking Fee Billing, and the fee billing department had very little in common with the cash operations area, where Bhatti had worked. (Harmon Dep. I, 107 (A405); Hodge Dep. 15 (C23).)

Bhatti's pretext arguments with respect to the PBFB Team Leader position are based on the contentions that the successful applicant, Steven Green: (1) did not meet the skill requirements of "establishing work priorities"; (2) did not have the requisite college degree; and (3) had less than the required amount of supervisory experience. (Ans. Br. 34-35.) The

"establishing work priorities" skill is listed in the online application questionnaire as job-related but it is not described as a requirement. (D01235 (A286).) That questionnaire also lists as a skill "plan and control budget and expenditures," a skill that neither Green nor Bhatti claimed to possess. (D01235 (A286); D01001 (C50-53).) Green, like Bhatti, had supervisory experience, and JPMC's records show he met the supervisory experience requirement. (D01235 (A286).)

While Green did not have a bachelor's degree, he had attended college for three years as a finance major and for one year as a business administration major (D01242 (A285)), and had, at the time of his promotion into the Team Leader position, been working in the fee billing department for several years. (Harmon Dep. I, 113 (A406); D01235-1238 (A286-89); D01239-1242 (A282-85).) Promoting an internal candidate because of his specific experience in the job functions in question is a legitimate business reason for not hiring an external candidate who does not have comparable experience. *Rodriguez v. Sears Roebuck de P.R., Inc.*, 432 F.3d 379, 382 (1st Cir. 2005).

Bhatti's argument rests on his opinion that on paper, he looks more qualified than Green. This argument ignores the fact that Arnold made her decision based on more than just the papers submitted by Green and Bhatti. Arnold knew Green personally because she was his supervisor, and she interviewed Bhatti before deciding against hiring him. Bhatti has identified no basis for a reasonable jury to conclude that Arnold rejected Bhatti for any reason other than his lack of functional expertise compared to that of Green.

Bhatti also argues that private banking fee billing experience was not required for an individual to be transferred or promoted into the private banking fee billing area, pointing to various subordinates and superiors as examples. There is no evidence that any of these individuals were sufficiently similarly situated to Bhatti to create a material question of fact,

because there is no evidence regarding who they were, the positions for which they applied, the nature of their qualifications, the reasons for their selections, or the identity of the decision makers who selected them. *See Miller v. Del.*, 158 F. Supp. 2d 406, 411 (D. Del. 2001) ("In order for an employee to be considered similarly situated, for the purpose of showing disparate treatment in Title VII cases, 'the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the . . . employees whom he alleges were treated more favorably.'")

        D.       **Trader Support Specialist (Req. No. 030018647)**

At page 35 of his brief, Bhatti claims that JPMC's articulated reason for rejecting his application for the position of Trader Support Specialist was that he did not have the required skills. To the contrary, JPMC's rationale for rejecting Bhatti's application for this position was that he had advised the recruiter that he was not interested in entry level positions, and this was an entry level position. (Bowen Dep. 44-45, 49-50 (A425-26, A427-28).)

Bhatti argues that there is a factual dispute regarding whether he had withdrawn his application for this position, pointing to his testimony that he was desperate for any job and claiming that he would not have made this comment to the recruiter. (Ans. Br. 16.) Closer attention to the testimony he cites in support of his "desperation" argument shows that his comment related to an application he submitted three months later, on January 14, 2004, for a different position, Req. No. 0322719, Operations Specialist, which was located in Dallas, Texas. (Bhatti Dep. 162-164 (C17-19); D00500 (C1).) When Bhatti applied for the Dallas Operations Specialist position, his consulting job at Morgan Stanley was ending. (Bhatti Dep. 24 (A298); D01194-1204 (A241-51); (Bhatti Dep. Ex. 3) (A309).) However, on October 8, 2003, when Bhatti applied for the Trader Support Specialist position, he was still working for Morgan Stanley, a circumstance that evidently caused him to feel secure enough to reject entry level

positions. In addition, when questioned about the recruiter's note describing their conversation, Bhatti's response was that he did not remember it, not that it did not happen. (Bhatti Dep. 128 (C12).) Accordingly, there is no basis for disputing the fact that Bhatti advised JPMC that he was not interested in this entry level job.

### E. Manager, Private Banking Reconciliations & T&I Journal (Requisition No. 040000502)

Bhatti's application for the position of Manager, Private Banking Reconciliations & T&I Journal was rejected by recruiter Carmen Harmon, who concluded that Bhatti did not have enough "functional expertise." (Harmon Dep. I, 50-53 (A398-401).) Although Bhatti stated on his application questionnaire that he had project management experience, Harmon explained that when she reviewed Bhatti's resume, she found no description of any project management experience. (Harmon Dep. I, 61-62 (A402-03).) Even now, Bhatti has failed to describe his alleged project management experience by affidavit or otherwise. Moreover, according to Bhatti's answers to the application questionnaire, he also lacked several other skills related to this position, including skills in the areas of accounting, business management, leadership, and establishment of unit policies and procedures. (D01030-1032 (A203-05); Bhatti Ex. 73 (A328).)

The selectee, Fitzpatrick Nedd, had been a project manager from March 2000 to June 2001 and his experience managing people had begun in 1991 and continued through February 2004, when he applied for the position in question. (D00518 (A194); D00519-520 (A199-200).) Nedd clearly had more extensive experience managing both people and projects than Bhatti did. (D01104-D01112 (C2-10); D01172-01181 (A206-15).)

Bhatti has failed to address JPMC's argument that he cannot carry his *prima facie* burden for his claims of race and age discrimination because the successful candidate, Fitzpatrick Nedd, a 58-year-old African-American, was both a minority group member and not significantly

younger than Bhatti. *See Fitzpatrick v. National Mobile Television*, 364 F. Supp. 2d 483 (E.D. Pa. 2005) (in age discrimination case, hiring of 47-year-old after termination of 51-year-old did not raise inference of age discrimination). As a matter of law, Bhatti's claim on this position must be limited to national origin discrimination.

F.    **PBFB Quality Control Specialist (Req. No. 040012913)**

Bhatti argues that his qualifications for the position of Quality Control Specialist – Private Banking Fee Billing were nearly identical to those of the selectee, Emma Graves-Davie. What gave Graves-Davie an edge over Bhatti was that she was already working as a consultant for the Private Banking Fee Billing Team, reporting to the hiring manager, Stacey Arnold. (D00977-986 (A252-61); Carmen Harmon Dep. 6-8, Sept. 7, 2007, Re: Req. No. 040012913 ("Harmon Dep. II") (A466-68).) On the other hand, as noted above, Bhatti had no experience in Private Banking Fee Billing, and his experience in the cash operations area had little in common with the work in Private Banking Fee Billing. (Harmon Dep. I, 107 (A405); Hodge Dep. 15 (C23).) Graves-Davie also had better educational credentials than Bhatti; Bhatti had only a bachelor's degree, while Graves-Davie had an M.B.A. and a Project Management Certificate from the University of Delaware. (D00977-986 (A252-61).) Arnold rejected Bhatti's application due to "lack of relevant skills / aptitudes / experience." (D00563 (A233).)

Superior experience and education are legitimate business reasons for hiring decisions. *Lewis v. Del. Dep't of Pub. Instruction*, 948 F. Supp. 352, 361 (D. Del. 1996).

G.    **Options Operations Supervisor Associate (Req. No. 050013769)**

As Bhatti observes, his application for the position of Options Operations Supervisor was rejected without review by the recruiter, Althea Bowen. Bhatti questions, in a footnote, why Bowen selected "slate satisfied with earlier applicants" when Bhatti submitted his application before Russino did. The answer is that the option selected by the recruiter was "Requisition

filled; Did not review this candidate **or** the slate satisfied with earlier applicants." [emphasis added] (D00573 (A266).)

It is undisputed that the selected candidate, Edward Russino, was at the time of hire working as an Options Operations Supervisor at another company and therefore had current directly related experience. (Bowen Dep., 69-70 (A431-32); D00987-995 (A267-75).) In Bowen's opinion, this made Russino a more highly qualified candidate than Bhatti. (Bowen Dep. 69-70 (A431-32).)

Bhatti argues that because he had five years of experience in the mid-1990s as an Options Operations Supervisor, he should have been selected for this similar position in 2005. However, Bhatti's application indicates that he had no experience with two of the software systems used in the Options Operations unit (SQL and OPICS Systems). (D01040 (A263).) Bhatti argues that JPMC's rationale, that he was less qualified than the selectee, Edward Russino, is false because Russino supposedly lacked certain qualifications for the position. There is no dispute that Russino was working **as an Options Operations Supervisor** at the time he was hired. There is also no dispute that Bhatti's options operations experience dated back to the mid-1990s, and that Bhatti lacked knowledge of the software used in options operations. Russino's current directly related experience was a legitimate reason for his selection and there is no evidence that Bhatti's application was rejected for any other reason.

## CONCLUSION

JPMC has met its burden of persuasion by articulating the legitimate, non-discriminatory reasons for each of its decisions not to hire Bhatti. To defeat summary judgment, Bhatti must produce evidence from which a fact finder could reasonably disbelieve JPMC's stated reasons for these decisions or find that JPMC was more likely than not motivated by discrimination. Bhatti has not satisfied his burden, and summary judgment should, therefore, be granted to JPMC.

For all the foregoing reasons, Defendant respectfully requests that the Court enter judgment in its favor.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Teresa A. Cheek*
Teresa A. Cheek, Esquire (No. 2657)
Margaret M. DiBianca (No. 4539)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6676
Facsimile: (302) 576-3286
Attorneys for Defendant J.P. Morgan Chase

Dated: November 26, 2007