## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TARIQ BHATTI | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 05-690-MPT |
| | : |
| J.P. MORGAN CHASE BANK, N.A., | : |
| a National Corporation, | : |
| | : |
| Defendant. | : |

## MEMORANDUM ORDER

### 1. INTRODUCTION

This is an employment discrimination case brought by Tariq Bhatti ("Bhatti")
against his former employer, J.P. Morgan Chase Bank, N.A. ("JPMC").  Bhatti alleges
age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C.
§§ 621-634 ("ADEA") and 19 *Del. C.* § 711,[1] and discrimination due to race or national
origin pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. as
amended by the Civil Rights Act of 1991, § 704 of Title VII.[2]  Bhatti claims that JPMC
failed to re-hire him after his voluntary retirement from the company on January 31,
2002 through April 12, 2004.  As a result, he claims to have lost income and continues
to suffer damage to his earning capacity.  JPMC moves for summary judgment and

---

[1] Count II, which contained the allegations under 19 *Del. C.* § 711 was dismissed with prejudice
pursuant a stipulation between the parties.  *See* D.I. 35.

[2] Discrimination under 42 U.S.C. § 2000e was added under the Second Amended Complaint.
*See* D.I. 20.

argues that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. This opinion addresses JPMC's motion.[3]

## 2. BACKGROUND

Bhatti began his career at J.P. Morgan in New York and spent the majority of his twenty year tenure in the Foreign Exchange Processing ("FX") group.[4] In 1998, Bhatti was transferred to JPMC's facility in Newark, Delaware to assist the FX group at that site. On many occasions, Bhatti led the group to successfully troubleshoot and report on transactional problems and errors. In Delaware, Bhatti reported to Heather Blair ("Blair"). In July 1999, Bhatti told Blair and her boss William Kenny ("Kenny") that he was interested in a managerial position. In March 2000, he was offered a position as the manager of the FX group and supervised twelve JPMC employees. As a result of the merger that formed JPMC at the beginning of 2001, Bhatti's group was relocated to Bournemouth, England. Bhatti remained in Newark and continued to manage and facilitate the transition of the FX group to England for the next six months. Blair and other members of the Newark FX group transferred to other departments within JPMC. Bhatti took a temporary assignment to work for Kenny and manage two contract employees within the Global Markets Federal Funds support group. Bhatti's application

---

[3] In its opening brief, JPMC addressed fifteen of the positions that Bhatti applied for and was not hired. *See* D.I. 87. Bhatti's answering brief was directed to only seven positions. *See* D.I. 96. Specifically those positions that were time barred and cancelled as noted in JPMC's briefing, no argument as to the basis of discrimination was presented. *See* D.I. 96; D.I. 100, n.1-2 for the specific positions. Since Bhatti has withdrawn his contentions that he was wrongfully denied those positions, judgment is granted in favor of JPMC on those positions. Further, Bhatti withdrew his contention that he was wrongfully denied certain other positions. *See* D.I. 96; D.I. 100 at 3. As a result, judgment is also entered in favor of JPMC regarding those positions.

[4] Bhatti was hired by J.P. Morgan in 1981. Chase Manhattan Bank merged with J.P. Morgan and became JPMC in 2001.

for other positions within the company were unsuccessful. In Kenny's evaluation of Bhatti's performance, he mentioned that Bhatti needed to increase his visibility and be more proactive in seeking new opportunities at JPMC. Instead, in November 2001, Bhatti accepted a retirement package including a lump sum payment from JPMC. His last day of employment was January 31, 2002.

In October 2002, in an effort to regain employment at JPMC, Bhatti enrolled in JPMC's on-line recruiting system and created a profile listing his job preferences and skills. In the next two and one-half years, Bhatti was sent over 400 job opening notifications. Bhatti applied for approximately twenty-seven JPMC positions, both in Delaware and outside of the state, that were ultimately filled by other candidates. Of the twenty-seven, Bhatti claims that he was discriminated against in seven separate hiring decisions.[5]

On May 19, 2004, Bhatti filed a charge of discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission. Bhatti claimed that JPMC refused to rehire him because of unlawful discrimination based on his age, race or national origin. On July 21, 2005, the Delaware Department of Labor issued Bhatti a Notice of Right to Sue. Bhatti filed the current action on September 20, 2005.

## 3. LEGAL STANDARD

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[5] Bhatti applied for positions as a: 1) Non-Domestic Loan Trading Operations Supervisor, 2) Collateral Core Services Teams Operations Unit Manager, 3) Private Banking Fee Billing Team Leader, 4) Trader Support Specialist, 5) Private Banking Reconciliations Manager, 6) Private Banking Fee Billing Quality Control Specialist, and 7) Options Operations Supervisor.

3

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6] The moving party bears the burden of proving that no genuine issue of material fact exists.[7] "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[8]

If the moving party has demonstrated an absence of material fact, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"[9] The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."[10] The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.[11] If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.[12]

---

[6] Fed. R. Civ. P. 56(c).

[7] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).

[8] *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

[9] *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

[10] *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995).

[11] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[12] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

4

With respect to summary judgment in discrimination cases, the court's role is "'to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff.'"[13]

## 4. POSITION OF THE PARTIES

Bhatti claims to be a victim of discrimination because JPMC failed to rehire him after his voluntary retirement in January 2002. Bhatti maintains that in all circumstances, he either met or exceeded the jobs' minimum qualifications and that other candidates were treated more favorably. JPMC argues that in each and every hiring decision, Bhatti was not hired because there were other candidates that were more qualified and that Bhatti's evidence is not sufficient to survive its motion for summary judgment.

Bhatti argues that he has twenty years of managerial experience and had regularly exceeded expectations in his evaluations, but he was still turned down for numerous positions at JPMC.[14] He claims that in many instances, the reasons provided are characterized by contradictions, inconsistencies, implausibilities and other weaknesses. He states that some decisions were made *post hoc* and without review of his qualifications and in some circumstances, the person hired did not meet the minimum required qualifications with regard to education and experience. Bhatti

---

[13] *Revis v. Slocomb Indus., Inc.*, 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987)).

[14] The evidence suggests that Bhatti spent approximately five years as a group leader and almost two years as supervisor in the FX group.

5

contends that employees in the FX group were redeployed to positions in private banking, the very same group that subsequently rejected him for his lack of skill, knowledge or experience. He opines that a victim of discrimination does not have to have direct evidence of discrimination, but may prove discrimination through circumstantial evidence via a pretext analysis.

Bhatti concludes that summary judgment should be denied because the inconsistencies in JPMC's hiring decisions support his allegations that its explanations were pretextual for discrimination. He asserts that a reasonable jury would find that either his age, national origin, or religion were factors that led to his rejection. He contends that all inferences be drawn in his favor with regard to JPMC's motion and that it is in the province of the jury to resolve any issues of fact.

JPMC argues that Bhatti has insufficient evidence to meet his burden to prove that its legitimate business reasons are pretextual for race, national origin or age discrimination. It concludes that Bhatti's attempts to be rehired were unsuccessful primarily because of his lack of knowledge of bank operations outside of the FX department, not because of unlawful bias.

JPMC contends that this is a disparate treatment case and that Bhatti is required to prove that a protected characteristic actually motivated and had a determinative influence on the adverse decision. Since it has articulated legitimate business reasons for not hiring Bhatti and rebutted the presumption of discrimination, it reasons that its burden at this stage is extremely light. It suggests that Bhatti lacks the evidence to cast

doubt on JPMC's stated reasons.[15] JPMC argues that it should be able to make business decisions without being second-guessed by the court. Even if its decision was not the best, or even a sound decision, JPMC suggests it should only be questioned if influenced by discrimination based on Bhatti's age, national origin or race.

JPMC offers two main reasons for refusing to re-hire Bhatti. First, it states that Bhatti's limited area of expertise disqualified him from consideration in many circumstances. Specifically, it contends that Bhatti's area of expertise was in the FX group and he was unsuccessful in gaining a new position because of his lack of expertise regarding operations other than FX. JPMC argues that there is evidence that Bhatti was only able to obtain work in the FX field after his retirement from JPMC.[16] Second, it suggests that each of the decision-makers provided well-documented and legitimate non-discriminatory reasons for selecting other candidates. Specifically, Bhatti's applications were rejected because of: (a) his rejection of entry level positions, (b) his occasional poor performance at job interviews; and (c) his application for a position in a distant location for which relocation assistance was not available.

## 5. DISCUSSION

Bhatti makes a *prima facie* case of discrimination by age, race or ethnic origin. There is also sufficient evidence to suggest that JPMC's business reasons for refusing to hire Bhatti were pretextual for discrimination. Finally, the evidence suggests that

---

[15] *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 331 (3d Cir. 1995) (JPMC contends Bhatti has not identified "weaknesses, inconsistencies, incoherences or contradictions in the proffered evidence such that a reasonable fact finder could find unworthy of credence.").

[16] JPMC states that Bhatti worked for Morgan Stanley as a consultant assisting with the relocation of its FX Investigations group from August 2003 through December 2003. It claims that Bhatti also started working for Citigroup in its FX Processing group in May 2006.

7

age, race or ethnic origin played a role in the disparate treatment or had a determinative influence on JPMC's hiring decisions.

Under the ADEA, it is unlawful for an employer to fail or refuse to hire any individual because of such individual's age.[17] It is similarly unlawful because of their race or national origin.[18] Bhatti must show that age, race or national origin motivated JPMC's decision. He can meet his burden: (1) by presenting direct evidence of discrimination,[19] or (2) by presenting indirect evidence of discrimination that satisfies the three-step framework of *McDonnell Douglas*.[20] Here, Bhatti has no direct evidence of discrimination, but satisfies his evidentiary hurdles under the three-step *McDonnell Douglas* analysis.

First, for a *prima facie* case, Bhatti must prove that he was: within the protected group; was qualified for the position; and despite his qualifications, he was rejected; and, after the rejection, JPMC continued to seek applicants with the same qualifications, or that he was replaced by a person outside of the protected group.[21] After the first step, a presumption of discrimination arises, which JPMC must rebut by providing a legitimate nondiscriminatory reason for the adverse employment action.[22] Finally, to "defeat a summary judgment motion based on a defendant's proffer of a

---

[17] 29 U.S.C. § 623(a)(1) (1994).

[18] 19 Del.C. § 711(a)(1).

[19] *See Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 785 (3d Cir. 2007).

[20] *See Dismore v. Seaford School Dist.*, 532 F. Supp. 2d 656 (D. Del. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[21] *See Giles v. Family Court of Delaware*, 411 A.2d 599, 601 (Del. 1980).

[22] *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995).

8

nondiscriminatory reason," Bhatti need only point to evidence "establishing a reasonable inference that the employer's proffered explanation is unworthy of credence."[23]

JPMC does not dispute Bhatti's *prima facie* case. Bhatti was sixty-two years old and of Pakistani descent when he was turned down for employment. Bhatti worked in the banking industry for JPMC for twenty years and had both group leadership and supervisory experience. Based on his qualifications, JPMC's automated job placement system approved his application for over forty separate positions at the bank. Finally, for the seven opportunities that are in dispute, JPMC filled the positions with persons that had similar qualifications, or with persons outside of the protected group.

JPMC claims that there is insufficient evidence for a reasonable jury to discredit its legitimate business reasons for failing to employ Bhatti. Bhatti argues that JPMC's reasons were pretextual and questions of fact for a jury, and inferential evidence is all that is required to deny JPMC's motion.

More than just a mere allegation of discrimination is required for a case to proceed to trial. An age and race discrimination case cannot succeed unless the employee's protected status actually played a role in the disparate treatment and "had a determinative influence on the outcome."[24] Evidence must show that a protected characteristic actually motivated the employment decision.[25] "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this

___

[23] *Id.*

[24] *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

[25] *Id.*

9

burden-shifting paradigm the ultimate burden of proving intentional discrimination

always rests with the plaintiff."[26] Once JPMC answers its "relatively light burden by

articulating a legitimate reason" for not hiring Bhatti, the "burden of production

rebounds" to Bhatti to show at trial, by a preponderance of the evidence, that JPMC's

explanation is pretextual.[27] To defeat summary judgment

> when the defendant answers the plaintiff's *prima facie* case with
> legitimate, non-discriminatory reasons for its action, the plaintiff must point
> to some evidence, direct or circumstantial, from which a fact finder could
> reasonably either (1) disbelieve the employer's articulated legitimate
> reasons; or (2) believe that an invidious discriminatory reason was more
> likely than not a motivating or determinative cause of the employer's
> action.[28]

JPMC contends that in each and every instance, Bhatti was less qualified than

the candidate chosen for that position. While the court agrees that is a legitimate

reason, that determination alone does not entitle JPMC to summary judgment.

Reviewing the facts in a light most favorable to Bhatti, the court must consider whether

inconsistencies exist such that there is a reason to disbelieve JPMC's articulated

reasons. Bhatti provides evidence that he was a suitable candidate and challenges

JPMC's reasons in each and every one of the seven instances of alleged

discrimination. Bhatti suggests that he had the expertise or experience required, and

often, more experience than the candidate chosen for the position.[29] He also contends

---

[26] *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (emphasis in original).

[27] *See id.*

[28] *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995) (citing *Fuentes*, 32 F. 3d at 763)

[29] D.I. 97 at B79. In one instance, JPMC required a minimum of one to three years of supervisory or team leadership experience for an Operations Supervisor position. The successful candidate chose "none" on his application questionnaire with regard to this requirement. Bhatti answered that he had five years experience to the same question. In the seven instances of alleged discrimination, there were other

10

that there were candidates chosen who did not even meet the minimum job requirements. He opines that other reasons must have motivated his rejection.[30] Evidence supports his conclusions and there are inconsistencies that would call to question JPMC's articulated reasons for rejecting Bhatti. The evidence suggests that other factors may have influenced JPMC's hiring decisions and that age, race or national origin may have played a part.[31]

Direct evidence of discrimination, which may at times be subtle, is not required when a plaintiff meets the *McDonnell Douglas Corp.* standards.[32] In reviewing the record for evidence of pretext and comparing Bhatti's qualifications with the other candidates, there is evidence that members outside of the protected class were treated more favorably.[33] In all but one hiring decision, JPMC chose similarly qualified, and in some cases less qualified candidates below the age of forty.[34] All of the successful candidates were born in the United States. None of the successful candidates were of

---

such inconsistencies.

[30] *See Aka v. Washington Hospital Center*, 156 F.3d 1284, 1293 (D.C. Cir. 1998) ("A prima facie case under *McDonnell-Douglas* raises an inference of discrimination . . . [and] when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer . . . based his decision on an impermissible consideration such as race.").

[31] D.I. 96 at 13. In one such circumstance, Bhatti was overlooked for a position requiring a college degree and three to four years of supervisory experience. The successful candidate did not meet either requirement.

[32] *Dillon v. Colles*, 746 F.2d 998, 1003 (3d Cir. 1984) ("[I]n most employment discrimination cases direct evidence of the employer's motivation is unavailable or difficult to acquire . . . .") (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[33] *See Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992).

[34] On one occasion, JPMC chose an applicant that was fifty-eight years old. Because of the insignificant difference in age between Bhatti and this successful applicant, there is no implication of age discrimination in that decision.

11

Asian or Pakistani origin. In at least one circumstance, the hiring manager showed a subjective bias against Bhatti and would not consider his application.[35] While Bhatti offers no direct evidence, the circumstantial evidence supports an "inference of unlawful discrimination."[36]

Finally, on summary judgment, "it is not the court's role to weigh the disputed evidence and decide which is more probative."[37] Bhatti produced sufficient evidence that age, race or ethnic origin discrimination may have been a factor in JPMC's decision not to rehire him. Bhatti establishes a *prima facie* case, and casts doubt upon JPMC's reasons to reject his applications. He points to several instances in which less qualified candidates were ultimately chosen by JPMC.[38] Therefore, viewing the underlying facts and making all reasonable inferences in favor Bhatti, a reasonable jury could find that Bhatti was subject to discrimination because of his age, race or national origin.

## 6. CONCLUSION

For the reasons contained herein, JPMC's motion for summary judgment (D.I. 86) on age discrimination under the ADEA, and discrimination due to race or national origin pursuant to Title VII is GRANTED in part and DENIED in part. Therefore,

---

[35] D.I. 97 Ex. B44. *See Aka*, 156 F.3d at 1298 ("[W]here a jury could reasonably find that the plaintiff was otherwise significantly better qualified than the successful applicant, an employer's asserted strong reliance on subjective feelings about the candidates may mask discrimination.").

[36] *Waldron v. SL Industries, Inc.*, 56 F.3d 491, 494 (3d Cir. 1995).

[37] *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 331 (3d Cir. 1995).

[38] *See Aka*, 156 F.3d at 1294 ("If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate-something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.").

12

IT IS ORDERED and ADJUDGED that JPMC's motion for summary

judgment (D.I. 86) is granted regarding those positions contained in its reply brief (D.I.

100) specifically noted in footnotes 1 and 2 and at page 3 of that brief.  As to the seven

positions remaining and addressed in Bhatti's answering brief (D.I. 96), JPMC's motion

for summary judgment is DENIED.

April 2, 2008

U. S. Magistrate Judge Mary Pat Thynge

13